**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| MYLAN LABORATORIES INC. and<br>MYLAN PHARMACEUTICALS INC.,<br><br>        Plaintiffs,<br><br>and<br><br>MUTUAL PHARMACEUTICAL CO., INC.,<br><br>        Intervenor-Plaintiff,<br><br>        v.<br><br>MICHAEL O. LEAVITT,<br>in his official capacity as<br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>ANDREW C. VON ESCHENBACH, M.D.,<br>in his official capacity as<br>COMMISSIONER OF FOOD AND DRUGS,<br><br>and<br><br>UNITED STATES FOOD AND DRUG<br>ADMINISTRATION,<br><br>        Defendants,<br><br>and<br><br>TEVA PHARMACEUTICALS USA, INC.,<br><br>and<br><br>APOTEX INC.,<br><br>        Intervenor-Defendants. | Civil Action No. 07-cv-579 (RMU) |

**OPPOSITION TO APOTEX'S AMENDED EMERGENCY MOTION TO SET BOND**

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ ii

I.   INTRODUCTION ........................................................................................................ 1

II.   AUTHORITY AND ANALYSIS ................................................................................. 1

    A.   Apotex Does Not Have Standing to Demand Security. ....................................... 1

    B.   Even if the Preliminary Injunction Is Later Found To Have Been Improvidently Granted, Apotex Would Have No Claim for Damages. ............................................................. 5

    C.   The $78 Million in Security Demanded by Apotex Is Excessive. ....................... 7

III.   CONCLUSION ............................................................................................................. 8

**TABLE OF AUTHORITIES**

**Federal Cases**

*Buddy Systems, Inc. v. Exer-Genie, Inc.*,
  545 F.2d 1164 (9th Cir. 1976),
  *cert. denied*, 431 U.S. 903 (1977) ................................................................................... 5

*CollaGenex Pharms., Inc. v. Thompson*,
  No. 03-1405, 2003 U.S. Dist. LEXIS 12523 (D.D.C. July 22, 2003) ................................. 2, 3

*CollaGenex Pharms., Inc. v. Thompson*,
  No. 03-1405, 2003 U.S. Dist. LEXIS 25228 (D.D.C. Aug. 26, 2003) ................................. 2, 3

*Federal Prescription Service, Inc. v. American Pharmaceutical Association*,
  636 F.2d 755 (D.C. Cir. 1980) ................................................................................................ 2

*Louisiana Wholesale Drug Co. v. Biovail Corp.*,
  437 F. Supp. 2d 79 (D.D.C. 2006) .......................................................................................... 3

*McGregor Printing Corp. v. Kemp*,
  No. 91-3255, 1992 U.S. Dist. LEXIS 6717 (D.D.C. May 14, 1992) ..................................... 3, 4

*Middlewest Motor Freight Bureau v. United States*,
  433 F.2d 212 (8th Cir. 1970) ............................................................................................... 4, 5

*Powelton Civic Home Owners Association v. Department of Housing & Urban Development*,
  284 F. Supp. 809 (E.D. Pa. 1968) ....................................................................................... 3, 4

*PPG Industries, Inc. v. United States*,
  11 C.I.T. 5 (Ct. Int'l Trade 1987) ........................................................................................ 4, 6

*Sanofi-Synthelabo v. Apotex, Inc.*,
  No. 02 Civ. 2255, 2006 U.S. Dist. LEXIS 65127 (S.D.N.Y. 2006) ......................................... 7

*The Commonwealth of Puerto Rico v. Price Commission*,
  342 F. Supp. 1311 (D.P.R. 1972) ........................................................................................ 3, 4

*The Timken Co. v. United States*,
  569 F. Supp. 65 (Ct. Int'l Trade 1983) .................................................................................... 4

*W.R. Grace & Co. v. Local Union 759, International Union of the United Rubber, Cork, Linoleum and Plastic Workers of America*
  461 U.S. 757 (1983) ................................................................................................................ 5

## Federal Rules

Federal Rule of Civil Procedure 65(a)(1) ................................................................................. 2

Federal Rule of Civil Procedure 65(c) ............................................................................. 1, 2, 3, 5

## Federal Regulations

21 C.F.R. § 314.94(a) .................................................................................................................. 7

## Other Authorities

11A Wright & Miller, Federal Prac. & Proc., § 2954 ................................................................ 2, 4

11A Wright & Miller, Federal Prac. & Proc., § 2973 .................................................................. 5

13 Moore's Federal Practice, § 65.53 ........................................................................................... 5

18 Moore's Federal Practice, § 134.02 ......................................................................................... 3

## I.    INTRODUCTION

Intervenor Apotex Inc. ("Apotex") moves pursuant to Federal Rule of Civil Procedure 65(c) to require that plaintiffs Mylan Laboratories Inc. and Mylan Pharmaceuticals Inc. (collectively "Mylan") post a bond in the amount of at least $78 million dollars "to cover any costs and damages that may be incurred by intervenor-defendant Apotex if it is later found to have been wrongfully enjoined or restrained . . . ." Apotex's Amended Emergency Motion to Set Bond [Dkt. No. 35], superseding Apotex Inc.'s Emergency Motion to Require Plaintiffs Mylan Laboratories Inc., et al., to Post Bond [Dkt. No. 31], (hereinafter "Am. Motion") at 1-2. Rule 65(c) on its face and as interpreted by this and other courts, provides that an injunction bond is *only* available to the party who has been enjoined. This Court's March 26, 2007 preliminary injunction, however, only enjoins and restrains the FDA, and then for only a 48-hour period. Moreover, an injunction bond is only intended to secure the payment of damages that are compensable if a preliminary injunction is later determined to have been improvidently granted. Here, Apotex will have no cause of action against Mylan if the injunction is later lifted. For both of these reasons, and because Apotex has submitted no evidence to support the enormous dollar amount of the bond it seeks, its motion should be denied in its entirety.[1]

## II.    AUTHORITY AND ANALYSIS

### A.    Apotex Does Not Have Standing to Demand Security.

The Court has not enjoined Apotex and Mylan has not asked the Court to do so. Under the language of Rule 65(c) and the heavy weight of authority, that alone means the motion must fail.

Rule 65(c) requires security "for the payment of such costs and damages as may be incurred or suffered *by any party who* is *found to have been wrongfully enjoined or restrained.*" Fed. R. Civ.

P. 65(c) (emphasis added). The Court actually may dispense with "any security requirement whatsoever" where, as here, the party sought to be enjoined or restrained does not show that it would suffer "material damage" or "where there has been no proof of likelihood of harm." *Federal Prescription Serv. v. American Pharmaceutical Ass'n*, 636 F.2d 755, 759 (D.C. Cir. 1980) (citations, ellipses, and parentheses omitted); 11A Wright & Miller, Federal Prac. & Proc., § 2954 ("Indeed, it has been held that the court may dispense with security altogether if the grant of an injunction carries no risk of monetary loss to the defendant."). Here, the only party enjoined by the Court's preliminary injunction is the FDA, which has not asked for a bond. Apotex does not have standing to do so in its stead.

This district has twice confirmed that conclusion. In circumstances identical to those at bar, Judge Sollyer enjoined the FDA from approving any ANDA for any generic version of Periostat "until such time as FDA has submitted the administrative record and the Court has ruled on CollaGenex's request for final relief with respect to these counts." *CollaGenex Pharms., Inc. v. Thompson*, No. 03-1405, 2003 U.S. Dist. LEXIS 12523, at *36 (D.D.C. July 22, 2003). An intervenor pharmaceutical company demanded that the plaintiff pharmaceutical company "post a bond of $8.2 million to cover [intervenor's] costs and damages for the first six months of time it takes the Court to rule on [plaintiff's] request for final relief." *CollaGenex Pharms., Inc. v. Thompson*, No. 03-1405, 2003 U.S. Dist. LEXIS 25228, *2 (D.D.C. Aug. 26, 2003). Judge Sollyer denied the request, ruling that "[t]he preliminary injunction issued by the Court enjoins and restrains only the federal defendants. [Intervenor] therefore has no standing to demand security in this matter under the text of Fed. R. Civ. P. 65(c)." *Id*.

---

[1] The bulk of Apotex's motion is irrelevant to the security issue and is more appropriately reserved for Apotex's opposition to Mylan's injunction application. For example, Apotex argues that Mylan should have provided Apotex notice of the initial application for a preliminary injunction. Am. Motion at 2, 4-5. Rule 65(a)(1), however, requires notice be provided to "the adverse party," here the FDA, and the issue has nothing to do with whether Apotex has standing to demand security or whether security is necessary. Apotex's arguments about the likelihood of success of Mylan's injunction application similarly are irrelevant to the security issue.

2

Judge Revercomb also found that Rule 65(c) "clearly indicates" that a party who is not enjoined "is without standing to demand security for possible damages incurred as a result of such restrainment or enjoinment." *McGregor Printing Corp. v. Kemp*, No. 91-3255, 1992 U.S. Dist. LEXIS 6717, at *21-22 (D.D.C. May 14, 1992) (citations omitted). In *McGregor*, the court enjoined defendant Committee for Purchase from the Blind and Other Severely Handicapped from implementing a final rule placing tabulating machine paper on a list of items for federal government procurement from the blind. *Id.*, at *24. Co-defendant, the National Industries for the Blind ("NIB"), moved for an order requiring McGregor to post a security bond in the amount of $4,589,754. *Id.*, at *20. The NIB claimed that this security was to compensate it for "losses to the six workshops for the blind designated to produce . . . paper in the event it is determined that the Committee had been wrongfully enjoined." *Id*. The court rejected this contention because "Rule 65(c) looks only to damages and costs suffered and incurred 'by any party who is found to have been wrongfully enjoined or restrained'" and that, consequently, the NIB lacked standing to move for a security bond "because neither it nor the workshops have been enjoined." *Id.*, at *20, *22.

This district's decisions are conclusive of Apotex's motion. "A court should give considerable weight to its own previous decisions unless and until they have been overruled or undermined by the decision of a higher court or a statutory overruling." *Louisiana Wholesale Drug Co. v. Biovail Corp.*, 437 F. Supp. 2d 79, 83 n.3 (D.D.C. 2006) (quoting 18 Moore's Federal Practice, §§ 134.02[1][a], [d]). Moreover, *CollaGenex* and *McGregor* are consistent with the weight of authority in other jurisdictions. *See Puerto Rico v. Price Com.*, 342 F. Supp. 1311, 1312-1313 (D.P.R. 1972) ("[I]t is necessary that the party seeking a protective bond be a party restrained or enjoined by the Court. . . . It is crystal clear to this Court that a party against which a temporary restraining order does not run, has no standing to demand security"); *Powelton Civic Home Owners Ass'n v. Department of Housing & Urban Development*, 284 F. Supp. 809, 815 (E.D. Pa. 1968) ("It is clear that the Redevelopment Authority has *not* been enjoined by this Court; thus it cannot have been *wrongfully* enjoined; and therefore it is not entitled to demand security under F.R.Civ.P. No. 65(c).") (emphasis in original); *PPG Industries, Inc. v. United States*, 11 C.I.T. 5, 9-10 (Ct. Int'l

Trade 1987) (refusing to grant defendant-intervenors' demand for security under Rule 65(c) "[s]ince the injunctive order in this case runs to the defendant United States, and not the defendant-intervenors. . . ."); 11A Wright & Miller, Federal Prac. & Proc., § 2954 n.41 (quoting *Puerto Rico* and citing *Powelton* for this proposition).

By contrast, Apotex relies on a 1983 decision by the Court of International Trade interpreting its own rules "[i]n the somewhat unique circumstances arising under United States trade law," *Timken Co. v. United States*, 569 F. Supp. 65, 72 (Ct. Int'l Trade 1983), and not interpreting the Federal Rules of Civil Procedure.[2] The Court of International Trade based *Timken* on a compromise between the need for security and the balance of hardships factor (*i.e.*, whether to issue an injunction). *Id.* at 71 ("The court believes, however, that the posting of security will ameliorate, if not eliminate, this hardship."). But as Judge Revercomb noted in *McGregor*, "[u]nlike the balance of harms inquiry undertaken by the Court in deciding whether to grant an injunction, Rule 65(c) looks only to damages and costs suffered and incurred 'by any party who is found to have been wrongfully enjoined or restrained.'" *McGregor*, 1992 U.S. Dist. LEXIS 6717, at *21-22.

The other decision cited by Apotex on standing, *Middlewest Motor Freight Bureau v. United States*, 433 F.2d 212 (8th Cir. 1970), is inapposite. There, the Eighth Circuit did not address standing to seek security; instead, it answered a "relatively narrow" question in the rate-setting

---

[2] Subsequent Court of International Trade decisions undermine *Timkin*. In *PPG Industries*, the Court of International Trade cites to *Timkin* four times, but then concludes:

> To offset this harm, defendant-intervenors seek to require plaintiff to give security for the costs or damages that might be incurred or suffered by the defendant-intervenors as a result of the injunction that directs the government not to liquidate the subject entries. . . . It is also doubtful that defendant-intervenors are entitled to this remedy under the Rules of this Court. Rule 65(c) requires the giving of security by an applicant seeking injunctive relief for costs and damages as "may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained." Since the injunctive order in this case runs to the defendant United States, and not the defendant-intervenors, and since the damages asserted by the defendant-intervenors appear speculative, the Court will not require the posting of security.

*PPG Industries*, 11 C.I.T. at 9-10.

4

context, "namely whether the [intervenor] shippers [were] entitled to restitution from the [plaintiff] carriers for the rates which were charged during the existence of the temporary restraining order, which rates were higher than those which could have been charged had the cancellation order gone into effect at the original compliance date of September 13." *Id*. at 218. This unique situation (where the temporary restraining order basically determined the amount that the plaintiff carriers could charge to the intervenor shippers) created the possibility of a refund. *Id*. at 216-17. This case has nothing to do with rate-setting and Apotex has not paid and will not pay anything to Mylan. Thus, Apotex is not eligible for restitution.

### B. Even if the Preliminary Injunction Is Later Found To Have Been Improvidently Granted, Apotex Would Have No Claim for Damages.

Apotex also would not be entitled to any damages, even if the preliminary injunction is later found to have been improvidently granted. Rule 65(c) provides that security is to be given "for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained." Because Apotex cannot request a bond, it has no action for damages against Mylan. *See W.R. Grace & Co. v. Local Union 759,* 461 U.S. 757, 770 n.14 (1983) ("A party injured by the issuance of an injunction later determined to be erroneous has no action for damages in the absence of a bond."); *Buddy Systems, Inc. v. Exer-Genie, Inc.*, 545 F.2d 1164, 1167 (9th Cir. 1976), *cert. denied*, 431 U.S. 903 (1977) ("It is a well-settled rule that there can be no recovery for damages sustained by a wrongful issuance of a preliminary injunction in the absence of a bond. . . ."); 11A Wright & Miller, Federal Prac. & Proc., § 2973 ("The absence of a bond usually precludes an aggrieved party from recovering damages for the issuance of an injunction."); 13 Moore's Federal Practice, § 65.53 ("In the absence of a bond, a party may not be able to recover damages incurred in the wrongful issuance of a restraining order or temporary injunction.").[3] Thus, Mylan has no underlying duty to recompense damages allegedly caused to Apotex by an improvident preliminary injunction against the FDA.

---

[3] Apotex has suggested no independent basis for a cause of action against Mylan for damages caused by its inability to obtain FDA approval while this action is pending, and Mylan is aware of

5

The current preliminary injunction, at most, will only last two days: from April 18, 2007 until April 20, 2007. Order [Dkt. No. 29], at 2 (ordering that the FDA was enjoined to "from April 18, 2007, until April 20, 2007 at 5:00 p.m."). Any other delay in the FDA approving Apotex's ANDA was not due to an injunction, but to the FDA's own decision not to act before it had solicited comments and had an opportunity to decide the questions presented by Mylan's filing. *See, e.g.*, Order [Dkt. No. 6], at 1 ("Government counsel has represented to the court that the FDA will now solicit the views of other interested parties on this matter by April 4, 2007 and will render an agency decision on April 11, 2007. Pursuant to this representation, the court need not enjoin agency action during the pendency of this matter at the agency."). Apotex's ANDA could not be approved before April 18 and the current preliminary injunction merely prevents the FDA from approving it for two more days.

Apotex speculates that "the FDA's issuance of final approval for Apotex's ANDA 76-719 for amlodipine besylate is imminent. . . ." Declaration of Bernice Tao [Dkt. No. 31-2], at ¶ 5.[4] "Claims based upon speculation or conjecture, including claims for profits from a business contemplated but not established, will not support an award of damages on the bond." *CVI/Beta Ventures, Inc. v. Custom Optical Frames, Inc.*, 893 F. Supp. 508, 525 (D. Md. 1995). *See also Interlink Int'l Financial Servs., Inc. v. Block*, 145 F. Supp. 2d 312, 315 (S.D.N.Y. 2001) ("The district court need not order security in respect of asserted economic damages that are 'speculative at best.'") (quoting *Inflight Newspapers, Inc. v. Magazines In-Flight, LLC*, 990 F. Supp. 119, 140 (E.D.N.Y. 1997)); *PPG Industries*, 11 C.I.T. at 9-10 ("While fully cognizant of the potential harm to the importers and the defendant-intervenors if the injunction is granted, we are nevertheless convinced that this potential and thus speculative harm is outweighed by the extent of harm plaintiff will incur if the injunction is denied. . . . The damages to which the defendant-intervenors allude, however, seem at

---

none.

[4] Apotex's only attempt to support its alleged damages is to submit a declaration from the President of one of its subsidiaries. *See* Declaration of Tammy McIntire [Dkt. No. 31-4]. Ms. McIntire's conclusory "best case scenario" discussion, *id*. at ¶ 14, is based on nothing other than her guesses at Apotex's potential market share without identifying the source of her numbers.

6

best conjectural."). There is no evidence that the FDA's final approval of Apotex's ANDA was imminent; in fact, anecdotal evidence shows that the FDA moves at a deliberative pace. *See, e.g., In re Barr Laboratories, Inc.*, 930 F.2d 72, 74 (D.C. Cir. 1991), *cert. denied*, 502 U.S. 906 (1991) (stating that the FDA estimates that it took it an average of 262 days to process past generic drug applications "and estimates the response times for certain pending applications at between 389 and 669 days"); 21 C.F.R. § 314.94(a) (providing a detailed procedure for the contents and review of ANDAs). And, Apotex does not allege that it is prepared to immediately enter the market, that it has manufactured amlodipine besylate tablets, or that it has customers lined up.

### C.     The $78 Million in Security Demanded by Apotex Is Excessive.

Apotex cites to the $400 million security ordered in *Sanofi-Synthelabo v. Apotex, Inc.*, No. 02 Civ. 2255, 2006 U.S. Dist. LEXIS 65127 (S.D.N.Y. 2006), regarding its claim in this case for a "high bond." Am. Motion at 9. But in that case, the court was provided considerable information during the preliminary injunction hearing, three affidavits (including one from Dr. Frank Bernatowicz, Apotex's economic expert), and estimates of Apotex's potential lost profits, lost market share and associated costs of relaunch. *Id.*, at *92-93. By contrast, here, Apotex has provided no such evidentiary support, and relies exclusively on Ms. McIntire's conclusory declaration.[5] Thus, Mylan is in no position to respond with its own calculation. If the Court is inclined to require that Mylan post security, Mylan respectfully requests that the Court order Apotex to file a non-speculative and specific itemization of its alleged damages, accompanied by support such as sworn accounting expert testimony, financials, internal estimates of profitability, etc., as well as provide Mylan an opportunity to be heard on the appropriate amount.

---

[5] Based on Ms. McIntire's declaration, Apotex estimates that, if it launched in April, "a best case scenario would give Apotex a 30% market share of the generic sales, which would result in Apotex sales of $83,718,851 for the first 12 months post-launch." Am. Motion at 5. From that "best case scenario," Apotex subtracts the $5,244,000 that it claims it would be "lucky" to obtain if it launched in September, resulting in a demand of $78 million in security. *Id*. Not only does Apotex have no evidentiary support for those numbers, it is based on incorrect assumptions of the "best case scenario," what it would be "lucky" to sell, and that 100% of its sales are damages (Apotex does not discount for costs, for example). Whatever Apotex claims it would lose, it should be much lower.

### III. CONCLUSION

For the reasons set forth above, Mylan respectfully requests that the Court deny Apotex's Amended Emergency Motion to Set Bond.

Dated: April 17, 2007                               Respectfully submitted,

                                                    /s/ David J. Harth
David J. Harth (#474632)
HELLER EHRMAN LLP
One East Main Street, Suite 201
Madison, Wisconsin 53703
(608) 663-7460

Shannon M. Bloodworth (#474925)
Joseph P. Whitlock (#484247)
HELLER EHRMAN LLP
1717 Rhode Island Avenue, N.W.
Washington, D.C. 20036
(202) 912-2000

E. Anthony Figg (#345124)
Steven Lieberman (#439783)
Minaksi Bhatt (#434448)
ROTHWELL, FIGG, ERNST & MANBECK PC
1425 K Street, N.W.
Suite 800
Washington, D.C. 20005
(202) 783-6040

Stuart A. Williams
Jill Ondos
MYLAN LABORATORIES INC.
1500 Corporate Drive
Suite 400
Canonsburg, Pennsylvania 15317
(724) 514-1840

Attorneys for Plaintiffs
MYLAN LABORATORIES INC. and
MYLAN PHARMACEUTICALS INC.

8

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| MYLAN LABORATORIES INC. and<br>MYLAN PHARMACEUTICALS INC.,<br><br>              Plaintiffs,<br><br>and<br><br>MUTUAL PHARMACEUTICAL CO., INC.,<br><br>              Intervenor-Plaintiff,<br><br>              v.<br><br>MICHAEL O. LEAVITT,<br>in his official capacity as<br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>ANDREW C. VON ESCHENBACH, M.D.,<br>in his official capacity as<br>COMMISSIONER OF FOOD AND DRUGS,<br><br>and<br><br>UNITED STATES FOOD AND DRUG<br>ADMINISTRATION, *et al.*,<br><br>              Defendants,<br><br>and<br><br>TEVA PHARMACEUTICALS USA, INC.,<br><br>and<br><br>APOTEX INC.,<br><br>              Intervenor-Defendants. | Civil Action No. 07-cv-579 (RMU) |

**AMENDED [PROPOSED] ORDER**

This matter is before the Court on the application of Intervenor-Defendant *Apotex's Amended Emergency Motion to Set Bond* (Dkt. No. 35), which amended *Apotex Inc.'s Emergency Motion to Require Plaintiffs Mylan Laboratories Inc., et al., to Post Bond* (Dkt. No. 31), and Plaintiffs Mylan Laboratories Inc. and Mylan Pharmaceuticals Inc.'s *Opposition to Apotex's Amended Emergency Motion to Set Bond.*

Having considered the submissions of the parties, IT IS SO ORDERED that *Apotex's Amended Emergency Motion to Set Bond* is DENIED.

Signed this ____ day of _____, 2007.

_____
UNITED STATES DISTRICT JUDGE