**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

---

| | |
|---|---|
| MYLAN LABORATORIES INC. and<br>MYLAN PHARMACEUTICALS INC., | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| and | )<br>) |
| MUTUAL PHARMACEUTICAL CO., INC., | )<br>) |
| Intervenor-Plaintiff, | )<br>) |
| v. | )<br>) |
| MICHAEL O. LEAVITT,<br>in his official capacity as<br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES, | )<br>)    Civil Action No. 07-cv-579 (RMU)<br>)<br>)<br>) |
| ANDREW C. VON ESCHENBACH, M.D.,<br>in his official capacity as<br>COMMISSIONER OF FOOD AND DRUGS, | )<br>)<br>)<br>) |
| and | )<br>) |
| UNITED STATES FOOD AND DRUG<br>ADMINISTRATION, | )<br>)<br>) |
| Defendants, | )<br>) |
| and | )<br>) |
| TEVA PHARMACEUTICALS USA, INC., | )<br>) |
| and | )<br>) |
| APOTEX INC., | )<br>) |
| Intervenor-Defendants. | ) |

---

**PLAINTIFFS' APPLICATION FOR A PRELIMINARY INJUNCTION**

Plaintiffs Mylan Laboratories Inc. and Mylan Pharmaceuticals Inc. ("Mylan") respectfully submit this application for a preliminary injunction enjoining Defendants Michael O. Leavitt, Secretary of Health and Human Services, Andrew C. von Eschenbach, M.D., Commissioner of Food and Drugs, and the United States Food and Drug Administration ("FDA") (collectively "Federal Defendants") from taking any action to approved Intervenor-Defendant Apotex Inc.'s ("Apotex") abbreviated new drug application ("ANDA") for amlodipine besylate products following issuance of the mandate in *Pfizer, Inc. v. Apotex, Inc.*, No. 2006-1261, 2007 U.S. App. LEXIS 6623 (Fed. Cir. March 22, 2007), pending the determination of the scope and duration of Mylan's 180-day generic exclusivity and the six-month period of pediatric exclusivity.

The bases for the present application for a preliminary injunction are fully set forth in the accompanying Statement of Points and Authorities and Declaration of Brian S. Roman. Mylan respectfully requests that the Court order the Federal Defendants' opposition papers to be filed by Thursday, April 26, 2007, at 9 am.

Dated: April 23, 2007                    Respectfully submitted,

   /s/ David J. Harth
David J. Harth (#474632)
HELLER EHRMAN LLP
One East Main Street, Suite 201
Madison, Wisconsin 53703
(608) 663-7460

Shannon M. Bloodworth (#474925)
Joseph P. Whitlock (#484247)
HELLER EHRMAN LLP
1717 Rhode Island Avenue, N.W.
Washington, D.C. 20036
(202) 912-2000

E. Anthony Figg (#345124)
Steven Lieberman (#439783)
Minaksi Bhatt (#434448)
ROTHWELL, FIGG, ERNST & MANBECK PC
1425 K Street, N.W.
Suite 800
Washington, D.C. 20005
(202) 783-6040

Stuart A. Williams
Jill Ondos
MYLAN LABORATORIES INC.
1500 Corporate Drive
Suite 400
Canonsburg, Pennsylvania 15317
(724) 514-1840

Attorneys for Plaintiffs
MYLAN LABORATORIES INC. and
MYLAN PHARMACEUTICALS INC.

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____

MYLAN LABORATORIES INC. and )
MYLAN PHARMACEUTICALS INC., )
)
Plaintiffs, )
)
and )
)
MUTUAL PHARMACEUTICAL CO., INC., )
)
Intervenor-Plaintiff, )
)
v. )
)
MICHAEL O. LEAVITT, )
in his official capacity as ) Civil Action No. 07-cv-579 (RMU)
SECRETARY OF HEALTH AND )
HUMAN SERVICES, )
)
ANDREW C. VON ESCHENBACH, M.D., )
in his official capacity as )
COMMISSIONER OF FOOD AND DRUGS, )
)
and )
)
UNITED STATES FOOD AND DRUG )
ADMINISTRATION, )
)
Defendants, )
)
and )
)
TEVA PHARMACEUTICALS USA, INC., )
)
and )
)
APOTEX INC., )
)
Intervenor-Defendants. )
_____

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFFS' APPLICATION FOR A PRELIMINARY INJUNCTION**

# <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ........................................................................................................ ii

INTRODUCTION ...................................................................................................................... 1

STATEMENT OF FACTS ......................................................................................................... 2

ARGUMENT .............................................................................................................................. 4

I.     Legal Standards................................................................................................................ 4

II.    MYLAN HAS A SUBSTANTIAL LIKELIHOOD OF SUCCEEDING ON THE
MERITS OF ITS CLAIM AGAINST THE FDA.............................................................. 4

    A.    The FDA's Decision To Maintain Apotex's Paragraph IV Certification For The
Purpose Of Enabling Apotex To Avoid Pediatric Exclusivity Violates The Plain
Statutory Language, The FDA's Own Precedents, And Is Arbitrary, Capricious, And
Contrary to Law. ........................................................................................................ 5

    B.    Even If the FDA Could Continue to Treat Apotex's ANDA As A Paragraph IV
Certification, Apotex Would Be Blocked by Mylan's 180-Day Generic Exclusivity.. 11

III.   MYLAN WILL SUFFER IRREPARABLE HARM ABSENT IMMEDIATE
INJUNCTIVE RELIEF FROM THIS COURT.................................................................. 14

IV.   THE BALANCE OF THE RELATIVE HARMS  FAVORS ENTRY OF AN
INJUNCTION.................................................................................................................... 16

V.    THE PUBLIC INTEREST WILL BENEFIT FROM AN INJUNCTION ....................... 17

CONCLUSION............................................................................................................................ 19

# TABLE OF AUTHORITIES

## Federal Cases

*American Federation of Government Employees, Local 2761 v. Federal Labor Relations Authority,*
866 F.2d 1443 (D.C. Cir. 1989) ............................................................................................. 9

*Barrow v. Graham,*
124 F. Supp. 2d 714 (D.D.C. 2000) ..................................................................................... 14

*Best Pharmaceuticals for Children Act,*
Pub. Law 107-109, 115 Stat. 1408 (Jan. 4, 2002) ..................................................... 1, 5, 9, 11

*Boehringer Ingelheim Corp. v. Shalala,*
993 F. Supp. 1 (D.D.C. 1997) ......................................................................................... 15, 18

*Bracco Diagnostics, Inc. v. Shalala*
963 F. Supp. 20 (D.D.C. 1997) ........................................................................................... 15

*Chevron, U.S.A., Inc. v. NRDC, Inc.,*
467 U.S. 837 (1984) ............................................................................................................ 10

*CityFed Financial Corp. v. Office of Thrift Supervision,*
58 F.3d 738 (D.C. Cir. 1995) ................................................................................................ 4

*Dr. Reddy's Laboratories, Inc. v. Thompson,*
302 F. Supp. 2d 340 (D.N.J. 2003) .................................................................................. 7, 11

*Express One Int'l, Inc. v. United States Postal Serv.,*
814 F. Supp. 87 (D.D.C. 1992) ........................................................................................... 16

*Fund for Animals v. Clark,*
27 F. Supp. 2d 8 (D.D.C. 1998) .......................................................................................... 18

*Fund for Animals, Inc. v. Espy,*
814 F. Supp. 142 (D.D.C. 1993) ......................................................................................... 18

*Hoffman-Larouche, Inc. v. Califano,*
453 F. Supp. 900 (D.D.C. 1978) ......................................................................................... 16

*Jacksonville Port Authority v. Adams,*
556 F.2d 52 (D.C. Cir. 1977) .............................................................................................. 18

*Komongnan v. United States Marshals Serv.,*
471 F. Supp. 2d 1 (D.D.C. 2006) ........................................................................................ 16

*Lamie v. United States Trustee,*
540 U.S. 526 (2004) ............................................................................................................ 12

*Mova Pharm. Corp. v. Shalala,*
955 F. Supp. 128 (D.D.C. 1997),
*aff'd by* 140 F.3d 1060 ............................................................................................... 15

*Mova Pharmaceutical Corp. v. Shalala,*
140 F.3d 1060 (D.C. Cir. 1998) ............................................................. 1, 4, 10, 12

*Mylan Pharms. Inc. v. Henney,*
94 F. Supp. 2d 36 (D.D.C. 2000) ............................................................... 13, 14

*Mylan Pharms. Inc. v. Shalala,*
81 F. Supp. 2d 30 (D.D.C. 2000) ..................................................................... 18

*Mylan v. Thompson,*
332 F. Supp. 2d 106 (D.D.C. 2004),
*aff'd,* 389 F.3d 1272 (D.C. Cir. 2004) ............................................................. 7

*Mylan v. Thompson,*
389 F.3d 1272 (D.C. Cir. 2004) ........................................................................ 7

*National Treasury Employees Union v. Federal Labor Relations Authority,*
404 F.3d 454 (D.C. Cir. 2005) ......................................................................... 9

*Pfizer, Inc. v. Apotex, Inc.,*
No 2006-1261, 2007 U.S. App. LEXIS 6623 (Fed. Cir. March 22, 2007)................ 1

*Pfizer, Inc. v. Apotex, Inc.,*
No. 06-1261, 2007 U.S. App. LEXIS 6623 (Fed. Cir. Mar. 22, 2007) ..................... 3

*Ranbaxy Labs. Ltd. v. FDA,*
307 F. Supp. 2d 15 (D.D.C. 2004),
*aff'd,* 2004 U.S. App. LEXIS 8311 (D.C. Cir., Apr. 26, 2004) ................................ 7

*Teva Pharms., Indus., Ltd. v. FDA,*
355 F. Supp. 2d 111 (D.D.C. 2004) ................................................................... 6

*The Greyhound Corp. v. Interstate Commerce Commission,*
551 F.2d 414 (D.C. Cir. 1977) ........................................................................ 10

*TorPharm Inc. v. Shalala,*
No. 97-1925, 1997 U.S. Dist. LEXIS 21983 (Sept. 15, 1997) ............................. 15

*United States v. Mitchell,*
445 U.S. 535 (1980)........................................................................................ 16

*Verizon Telephone Companies v. FCC,*
453 F.3d 487 (D.C. Cir. 2006) .......................................................................... 9

*Western Union Tel. Co. v. FCC,*
  729 F.2d 811 (D.C. Cir. 1984) ................................................................. 6

*Williams Natural Gas Co. v. FERC,*
  943 F.2d 1320 (D.C. Cir. 1991) ............................................................... 6

## Federal Statutes

21 U.S.C. § 355(j)(4)(K) ........................................................................... 7

21 U.S.C. § 355(j)(5)(b)(iv) ...................................................................... 1

21 U.S.C. § 355(j)(5)(B)(iv) (2002) .................................................... 3, 11

21 U.S.C. § 355a ....................................................................................... 2

21 U.S.C. § 355a (2002) ........................................................................... 5

21 U.S.C. § 355a(c)(2)(A) ..................................................................... 6, 9

21 U.S.C. § 355a(c)(2)(A)(i) ..................................................................... 6

21 U.S.C. § 355a(c)(2)(B) ...................................................................... 1, 6

28 U.S.C. § 2680(a) ................................................................................ 16

35 U.S.C. § 103 ......................................................................................... 3

5 U.S.C. § 706(2)(A) ................................................................................. 9

## Federal Regulations

21 C.F.R. § 314.94(a)(12)(viii)(C)(1) ....................................................... 7

54 Fed. Reg. 28872 (July 10, 1989) ................................................... 12, 13

Proposed Rule, 180-Day Generic Drug Exclusivity for Abbreviated New Drug Applications,
  64 Fed. Reg. 42873 (Aug. 6, 1999),
  *withdrawn on other grounds by* 67 Fed. Reg. 212 (Nov. 1, 2002) ........................................... 12

## Other Authorities

149 Cong. Rec. S15670-03 (daily ed. Nov. 24, 2003) .................................. 12

149 Cong. Rec. S8686-03 (daily ed. June 26, 2003) ................................... 12

152 Cong. Rec. S7922 (daily ed. July 19, 2006) ........................................ 12

*Food and Drug Administration Modernization Act of 1997*,
    Pub. Law 105-115, 111 Stat. 2296 (Nov. 21, 1997) ................................................................. 5

## INTRODUCTION

Mylan seeks to enjoin the FDA from implementing that part of its April 18, 2007 decision holding that Apotex's ANDA is eligible for approval if the *Pfizer v. Apotex*[1] mandate issues before September 25, 2007. Should the mandate issue, Apotex's ANDA would still be blocked either by pediatric exclusivity or by Mylan's 180-day generic exclusivity. Under the FDA's rules and long-standing practice, Apotex's paragraph IV ANDA automatically converted to a paragraph II ANDA when the last Orange Book patent expired. Section 355a(c)(2)(B) of the Best Pharmaceuticals for Children Act prohibits the approval of *any* paragraph II ANDA during pediatric exclusivity, and the FDA's attempt to reward the second-filer under these circumstances directly contravenes that statute. *See Mova Pharmaceutical Corp. v. Shalala*, 140 F.3d 1060 (D.C. Cir. 1998). Moreover, even if Apotex somehow maintained its paragraph IV certification after patent expiration, § 355(j)(5)(b)(iv) of the Hatch-Waxman Act expressly provides that a paragraph IV ANDA *cannot be approved* until Mylan's 180-day exclusivity period has run.

The FDA has refused to agree to provide this Court with *any* notice prior to approving Apotex's ANDA once the *Pfizer v. Apotex* mandate issues. Because the Federal Circuit could issue its mandate at any time, Mylan faces irreparable harm if the FDA approves Apotex's ANDA and Apotex enters the market, destroying Mylan's right to be free from other generic competition during the statutory period. In order to preserve the *status quo* as well as this Court's jurisdiction to review the FDA's decision to reward the second-filer Apotex at Mylan's expense, the Court should enjoin FDA from approving Apotex's ANDA following issuance of the *Pfizer v. Apotex* mandate until Mylan's claims can be adjudicated on the merits.

---

[1] *Pfizer, Inc. v. Apotex, Inc.*, No 2006-1261, 2007 U.S. App. LEXIS 6623 (Fed. Cir. March 22, 2007).

## STATEMENT OF FACTS

On May 22, 2002, Mylan became the first ANDA applicant to submit a substantially complete application containing a paragraph IV certification to the patents listed in the Orange Book for the reference listed drug, Norvasc® (amlodipine besylate tablets).  Mylan challenged Pfizer's improper patent monopoly on Norvasc a year before the next ANDA filer, Apotex, did so.  The FDA granted final approval of Mylan's ANDA on October 3, 2005.

In a letter notifying Mylan that its ANDA had received final approval, the FDA confirmed that because Mylan was the first applicant to file an ANDA with a paragraph IV certification, "Mylan is eligible for 180 days of market exclusivity."  *Declaration of Shannon M. Bloodworth in Support of Plaintiffs' Application for a Preliminary Injunction* ("Bloodworth Decl."), Exh. A, October 3, 2005 letter from Gary J. Buehler to Mylan at 2.  The letter went on to state, consistent with the plain language of the Hatch-Waxman Act and the FDA's own regulations, that Mylan's 180-day generic marketing exclusivity "will begin to run from the earlier of commercial marketing or court decision dates identified in [21 U.S.C.] section 355(j)(5)(B)(iv)." *Id.*  The FDA approved Mylan's amlodipine ANDA despite the fact that in November 2001, the FDA had granted Pfizer so-called pediatric exclusivity pursuant to 21 U.S.C. § 355a.  *See* Bloodworth Decl., Exh. B, FDA's Letter Decision dated April 18, 2007 ("FDA Ltr.") at 4.

On September 20, 2002, Pfizer brought suit against Mylan for patent infringement in the United States District Court for the Western District of Pennsylvania (the "Pennsylvania action").  In May 2003, Apotex filed an ANDA with the FDA seeking approval to sell amlodipine besylate tablets prior to the expiration of Pfizer's '303 patent and submitted a paragraph IV certification that its amlodipine besylate products would not violate the '303 patent.  On July 30, 2003, Pfizer sued Apotex for patent infringement in the United States

District Court for the Northern District of Illinois (the "Illinois action"). The FDA has not approved Apotex's amlodipine besylate ANDA.

Following a bench trial in the Illinois action, on January 29, 2006, the district court entered judgment dismissing Apotex's invalidity and unenforceability defenses and declaring that Apotex's amlodipine besylate tablets infringed the '303 patent. The district court ordered that the effective date of Apotex's ANDA be no earlier than September 25, 2007 (reflecting the patent term plus six months of pediatric exclusivity) and enjoined Apotex from engaging in commercial activities with respect to amlodipine besylate. Bloodworth Decl., at Exh. C. Apotex appealed the district court judgment to the Federal Circuit.

On February 27, 2007, following a bench trial in the Pennsylvania action, the district court entered judgment dismissing Mylan's invalidity and unenforceability defenses and declaring that Mylan's amlodipine besylate tablets infringed the '303 patent. *See* Bloodworth Decl., at Exh. D. The district court ordered that the effective date of Mylan's ANDA be no earlier than March 25, 2007. *See id.* at Exh. E. Mylan appealed the district court judgment to the Federal Circuit.

On March 22, 2007, the Federal Circuit issued its decision in the *Apotex* case, holding the '303 patent invalid for obviousness under 35 U.S.C. § 103. *See Pfizer, Inc. v. Apotex, Inc.,* No. 06-1261, 2007 U.S. App. LEXIS 6623 (Fed. Cir. Mar. 22, 2007). The following day, the Federal Circuit issued a stay of the district court's order in the Pennsylvania action. *See* Bloodworth Decl., at Exh. F. Later that same day, Mylan began commercial marketing of amlodipine besylate tablets, thereby triggering its 180 days of exclusivity afforded by § 355(j)(5)(B)(iv) of the Hatch-Waxman Act and the FDA's approval letter. *See id.* at Exh. G.

On March 26, 2007, Mylan filed this action and moved for a preliminary injunction prohibiting the FDA from approving any other ANDAs during Mylan's 180-day period of generic exclusivity and the six-month period of pediatric exclusivity. The FDA responded by seeking comments on the applicability and effect of generic and pediatric exclusivity in this case. Bloodworth Decl., at Exh. H. On April 18, 2007, the FDA issued a decision letter ruling that, with one exception, all unapproved ANDAs were blocked by pediatric exclusivity until September 25, 2007. Bloodworth Decl., Exh. B., FDA Ltr. at 9. With respect to Apotex, the FDA ruled that its ANDA *could* be approved if the Federal Circuit were to issue its mandate before September 25, 2007. *Id.*

## ARGUMENT

### I.    LEGAL STANDARDS

Mylan is entitled to a preliminary injunction if it can show "1) a substantial likelihood of success on the merits, 2) that it would suffer irreparable injury if the injunction is not granted, 3) that an injunction would not substantially injure other interested parties, and 4) that the public interest would be furthered by the injunction." *Mova*, 140 F.3d at 1066 (quoting *CityFed Financial Corp. v. Office of Thrift Supervision*, 58 F.3d 738, 746 (D.C. Cir. 1995)). These factors interrelate on a sliding scale and must be balanced against each other. "If the arguments for one factor are particularly strong, an injunction may issue even if the arguments in the other areas are rather weak." *CityFed Fin. Corp.*, 58 F.3d at 746.

### II.    MYLAN HAS A SUBSTANTIAL LIKELIHOOD OF SUCCEEDING ON THE MERITS OF ITS CLAIM AGAINST THE FDA

Mylan challenges that part of the April 18, 2007 FDA decision holding that Apotex's ANDA is eligible for approval if the *Pfizer v. Apotex* mandate issues before September 25, 2007. The FDA's decision to create an "exception" for Apotex is arbitrary and capricious because even

4

if the mandate issues before September 25, Apotex's ANDA will still be blocked either by Pfizer's pediatric exclusivity or by Mylan's 180-day generic exclusivity.

A.  **THE FDA'S DECISION TO MAINTAIN APOTEX'S PARAGRAPH IV CERTIFICATION FOR THE PURPOSE OF ENABLING APOTEX TO AVOID PEDIATRIC EXCLUSIVITY VIOLATES THE PLAIN STATUTORY LANGUAGE, THE FDA'S OWN PRECEDENTS, AND IS ARBITRARY, CAPRICIOUS, AND CONTRARY TO LAW.**

In its April 18 decision, the FDA correctly ruled that Pfizer maintains pediatric exclusivity[2] despite the panel decision in *Pfizer v. Apotex* because (1) the mandate has not issued, and (2) the panel decision invalidated only claims 1-3 of the '303 patent, leaving the remaining claims unaffected and the '303 patent "validly listed in the Orange Book."  FDA Ltr. at 5-7, 9-10.  Inexplicably, however, the FDA ruled that while all other ANDAs are blocked until the mandate issues, "if and when the mandate finalizing the panel's decision issues in the *Apotex* case, Apotex's ANDA will not be blocked by Pfizer's pediatric exclusivity."  *Id*. at 9.

When the '303 patent expired on March 25 of this year, Apotex held an unapproved paragraph IV certification.  Under longstanding FDA policy and practice, "upon patent expiry, all ANDA applicants are presumed to have paragraph II certifications, [and] the paragraph II provision of the pediatric exclusivity statute, 21 U.S.C. § 355a(c)(2)(A)(i) [] control[s]."  FDA Ltr. at 8.  That section provides:

---

[2] The six-month period of pediatric exclusivity was established by the passage of the *Food and Drug Administration Modernization Act of 1997*, Pub. Law 105-115, 111 Stat. 2296 (Nov. 21, 1997).  It was reenacted and enhanced in 2002 as the *Best Pharmaceuticals for Children Act*, Pub. Law 107-109, 115 Stat. 1408 (Jan. 4, 2002).  Pediatric exclusivity affords a six-month period of marketing exclusivity following expiration of the listed patent during which the FDA may not grant final approval to any ANDA.  *See* 21 U.S.C. § 355a (2002).  Its purpose is to encourage pharmaceutical companies to study the effects of their drugs in the pediatric population.

if the drug is the subject of—

> (i) a listed patent for which a [paragraph II] certification has been submitted . . . and for which pediatric studies were submitted prior to the expiration of the patent (including any patent extensions) . . .

> \*     \*     \*

the period during which an application may not be approved under section 505(c)(3) or section 505(j)(5)(B)(ii) *shall be extended by a period of six months* after the date the patent expires (including any patent extensions).

21 U.S.C. § 355a(c)(2)(A)(i) (emphasis added).  The language chosen by Congress is clear and unambiguous – upon the patent's expiration, the period during which the FDA may not approve paragraph II ANDAs "*shall*" be extended by six months.  There is nothing in the language of subsection (c)(2)(A) that permits an inquiry into whether the patent was held valid or infringed, or whether there was a "favorable decision" that the patent is invalid or not infringed.  This analysis applies only to those ANDAs that contain a paragraph IV certification and are accordingly governed by subsection (c)(2)(B).  The FDA cannot read the requirements of (c)(2)(B) into (c)(2)(A).  *See Western Union Tel. Co. v. FCC*, 729 F.2d 811, 817 (D.C. Cir. 1984) (stating that the agency "cannot simply ignore Congress' words and attempt to write a new statute out of whole cloth"); *cf. Teva Pharms., Indus., Ltd. v. FDA*, 355 F. Supp. 2d 111, 115 (D.D.C. 2004) (rejecting Teva's argument that the FDA acted contrary to the purpose of the FDCA because the plain language of the statute was clear).  If the FDA or others (such as Apotex) disagrees with this plain language, then their grievance lies not with the FDA or this Court, "but with the response of the Congress."  *Williams Natural Gas Co. v. FERC*, 943 F.2d 1320, 1329 (D.C. Cir. 1991).

The FDA's decision to maintain Apotex's paragraph IV certification is contrary to the FDA's long-standing, well-established rules and policies.  For years, the FDA has consistently held that all tentatively approved ANDAs containing a paragraph IV certification *automatically*

become paragraph II certifications upon the relevant patent's expiration.  *See Mylan v. Thompson,* 332 F. Supp. 2d 106, 114 (D.D.C. 2004), *aff'd,* 389 F.3d 1272 (D.C. Cir. 2004).  The FDA has based this position on 21 U.S.C. § 355(j)(4)(K), which precludes the FDA from approving any ANDA that "contains an untrue statement of material fact."  *See also* 21 C.F.R. § 314.94(a)(12)(viii)(C)(1) (mandating a certification change "if, at any time before the effective date of the approval of the application, the applicant learns that the submitted certification is no longer accurate").  Even if the applicant fails or refuses to change its certification to a paragraph II upon the patent's expiration, the FDA's long-standing policy is that the certification is "deemed" changed as a matter of law.

The D.C. Circuit has upheld this policy of automatically changing an unapproved ANDA's paragraph IV certification to a paragraph II certification once it becomes (due to expiration of the relevant patent) "at variance with the legal reality."  *Mylan v. Thompson*, 389 F.3d 1272, 1281-1282 (D.C. Cir. 2004).[3]  The change occurs at "the 'magic moment' of midnight," and pediatric exclusivity immediately attaches.  *Ranbaxy Labs. Ltd. v. FDA,* 307 F. Supp. 2d 15, 19 (D.D.C. 2004), *aff'd,* 2004 U.S. App. LEXIS 8311 (D.C. Cir., Apr. 26, 2004); *see also Dr. Reddy's Laboratories, Inc. v. Thompson*, 302 F. Supp. 2d 340, 351 (D.N.J. 2003) ("*DRL*") (upholding the FDA's rationale that, upon patent expiration, a paragraph IV

---

[3] In *Mylan v. Thompson*, which involved an ANDA for a fentanyl transdermal patch*,* Mylan had received final approval, which was subsequently converted to tentative approval pursuant to an order by the Vermont district court.  The FDA held that because Mylan was a tentatively approved applicant, its paragraph IV certification converted to a paragraph II certification at the time that the challenged patent expired.  The D.C. Circuit, affirming the district court, found "the FDA's application of the statutory provisions both reasonable and supported by *Ranbaxy*."  389 F.3d at 1281-83, *aff'g* 332 F. Supp. 2d 106.  This is exactly the situation faced by Apotex, which likewise had a paragraph IV certification with tentative approval at the time the '303 patent expired.

certification in a tentatively approved ANDA is no longer accurate and it converts *de facto* or *de jure* to a paragraph II certification at the moment the patent expires).

Throughout its April 18 decision letter, the FDA repeatedly affirmed its commitment to its "long-standing" rule that, upon expiration of the relevant patent, it would "deem" any outstanding paragraph IV certification in an unapproved ANDA to have become a paragraph II certification.  *See* FDA Ltr. at 8 ("It has been FDA's long-standing view, that, when a patent expires before pending patent litigation is resolved, ANDA applicants who have not received final effective approval [such as Apotex] are required under Hatch-Waxman, to change their . . . paragraph IV certifications to paragraph II certifications."); *id.* ("[U]pon patent expiry, all ANDA applicants are presumed to have paragraph II certifications[.]"); *id.* at 9 ("When the '303 patent expired on March 25, 2007, all of the unapproved ANDAs were required to change (or deemed to have changed) to paragraph II certifications and became subject to Pfizer's pediatric exclusivity at that time."); *id.* at 10 ("If one or more of the remaining claims qualified the patent for listing as of the time the patent expired, all of the remaining ANDAs who had . . . paragraph IV certifications at the time of patent expiry are required to maintain their paragraph II certifications."); *id.* ("[W]hen a listed patent expires, a paragraph IV certification is no longer accurate.  In these circumstances, the statute and FDA's regulations require ANDA applicants to change form a paragraph IV certification… to a paragraph II certification… .  In cases where an applicant neglects to amend its certification to a paragraph II certification after a patent expires, FDA will treat it as having done so."); *id.* at 13 ("[A]ll of the remaining unapproved applications change to a paragraph II certification when the patent expires, as they are required to do, they will no longer be applications containing paragraph IV certifications.").

Based on the FDA's court-approved rules and long-standing agency practice, Apotex's ANDA thus should have been converted to a paragraph II application at midnight on March 25. And at that precise point, § 355a(c)(2)(A) of the BPCA unambiguously provides that "the period during which an application may not be approved . . . *shall* be extended by a period of six months after the date the patent expires" (emphasis added). Yet the FDA, relying on an unarticulated "clear Congressional intent," concluded that "where the ANDA applicant has prevailed in the paragraph IV patent litigation," there should be "an exception to the Hatch-Waxman certification provisions." FDA Ltr. at 9. This "exception," according to the FDA, permits it to continue to treat Apotex's ANDA as a paragraph IV certification even though the '303 patent has expired, unlike any other ANDA.

The Administrative Procedure Act ("APA") requires that the "court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). The FDA's decision to reward Apotex with a statutorily unauthorized exception to pediatric exclusivity violates the plain statutory language and the FDA's own long-standing, court-approved regulations and practices. *See, e.g.*, *National Treasury Employees Union v. Federal Labor Relations Authority*, 404 F.3d 454, 457-58 (D.C. Cir. 2005) ("The Authority's failure to follow its own well-established precedent without explanation is the very essence of arbitrariness."); *id.* at 457 ("It is well established that . . . any agency's 'unexplained departure from prior agency determinations' is inherently arbitrary and capricious in violation of APA § 706(A)(2).") (quoting *American Federation of Government Employees, Local 2761 v. Federal Labor Relations Authority*, 866 F.2d 1443, 1446 (D.C. Cir. 1989)); *Verizon Telephone Companies v. FCC*, 453 F.3d 487, 497 (D.C. Cir. 2006) ("[A]n agency acting consistently with

its prior actions is generally what makes an agency action not arbitrary[.]"); *The Greyhound Corp. v. Interstate Commerce Comm'n*, 551 F.2d 414, 416 (D.C. Cir. 1977) ("This court emphatically requires that administrative agencies adhere to their own precedents or explain any deviations from them.").

The FDA's newly fashioned nonstatutory "*Apotex* exception" to pediatric exclusivity also is contrary to *Mova Pharm.*, 140 F.3d at 1060, a case in which the D.C. Circuit held that it is the first *filer*, not the first court victor, that receives exclusivity. In *Mova,* the D.C. Circuit, relying on *Chevron*[4] "step one" struck down the FDA's importation into the statute that to receive 180-day exclusivity, the ANDA filer must "successfully defend" the patent litigation. *See id.* at 1069 ("We conclude that the FDA's successful-defense requirement is inconsistent with the unambiguously expressed intent of Congress."). This case is *Mova* all over again. Here again, the FDA is attempting to read into the plain statutory language a benefit for the first ANDA filer to obtain a "favorable decision," even though the statutory language contains no hint of such a reward. *See* FDA Ltr. at 8.[5]

---

[4] *Chevron, U.S.A., Inc. v. NRDC, Inc.*, 467 U.S. 837, 842-43 (1984) ("If a court, employing traditional tools of statutory construction, ascertains that Congress had an intention on the precise question at issue, that intention is the law and must be given effect.").

[5] The FDA's unlawful action cannot be justified on the theory that Apotex should receive a benefit for challenging the '303 patent. Any such argument is contrary to Congress's clear intent, because Mylan is entitled by statute to a period of exclusivity. In any event, Apotex did not take any risk in challenging the '303 patent. It was Mylan's defenses that paved the way for all the subsequent challenges to the '303 patent. Those subsequent-filers had the benefit of the extensive discovery conducted in Mylan's case. This was particularly so for Apotex, which adopted wholesale the invalidity and unenforceability defenses that Mylan had already developed, took extensive (and unacknowledged) advantage of Mylan's research and written work product, and even compelled the production of Mylan's expert reports in its litigation. *See* Bloodworth Decl., Exh. I (attaching Apotex's Motion to Compel the production of Mylan's expert reports). The retirement of the district court judge in Mylan's case and an accompanying delay resulted in Apotex's later-filed case going to trial first, and its appeal being decided before Mylan's appeal. But it was Mylan that first developed the legal and expert foundations for the

The FDA cannot avoid the unambiguous language of the BPCA by hiding behind vague and unexplained notions of Congressional intent.  The FDA litigated *Ranbaxy* and *DRL* for the express purpose of receiving judicial approval of its policy of automatically converting paragraph IV certifications to paragraph II certifications upon patent expiration.  *See Ranbaxy*, 307 F. Supp. 2d at 19; *DRL*, 302 F. Supp. 2d at 351.  It is arbitrary and capricious for the FDA to now abandon that policy in order to carry out a statutorily unauthorized goal of rewarding Apotex at Mylan's expense.

> **B.    EVEN IF THE FDA COULD CONTINUE TO TREAT APOTEX'S ANDA AS A PARAGRAPH IV CERTIFICATION, APOTEX WOULD BE BLOCKED BY MYLAN'S 180-DAY GENERIC EXCLUSIVITY.**

If the FDA is correct that Apotex's ANDA can maintain its paragraph IV certification despite the expiration of the '303 patent, then the plain language of the 180-day exclusivity provision of the Hatch-Waxman Act precludes the FDA from granting Apotex final approval. The controlling provision reads[6]:

> If the application contains a certification described in subclause (IV) of paragraph (2)(A)(vii) and is for a drug for which a previous application has been submitted under this subsection continuing [sic] such a certification, the application shall be made effective not earlier than one hundred and eighty days after [generic exclusivity has been triggered].

21 U.S.C. § 355(j)(5)(B)(iv) (2002).  As the D.C. Circuit has emphasized, the meaning of the "literal language" of this provision is clear:  "Section 355(j)(5)(B)(iv) says that, if an applicant has already filed a paragraph IV ANDA, later applications shall be approved 'not earlier than one

---

arguments that led to the Federal Circuit's decision that claims 1-3 of the '303 patent are invalid. It was mere happenstance – a toss of the coin – that led Apotex to reach the Federal Circuit first.

[6] Because Mylan submitted its ANDA with a paragraph IV certification to the '303 patent prior to the enactment of the *Medicare Prescription Drug, Improvement and Modernization Act* ("MMA"), Pub. L. No. 108-173 (Dec. 8, 2003), the pre-MMA statute applies.  *See* MMA, § 1102(b)(1).

hundred and eighty days after' the commercial-marketing trigger or the court-decision trigger is satisfied." *Mova*, 140 F.3d at 1069; *see also Lamie v. United States Tr.*, 540 U.S. 526, 534 (2004) ("[W]hen the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms." (internal quotations and citations omitted)). Mylan activated the "commercial-marketing trigger" on March 23, 2007, so it is entitled to 180 days of generic exclusivity against all other paragraph IV ANDAs. Accordingly, even if Apotex could maintain its paragraph IV certification despite years of FDA practice to the contrary, Mylan's 180-day exclusivity still bars Apotex's approval.

Despite the FDA's decision to the contrary, nothing in the text or legislative history of the Hatch-Waxman Act indicates that generic exclusivity is forfeited upon patent expiration. In fact, Congress adopted the generic exclusivity, *inter alia*, to encourage generics to file paragraph IV challenges to the validity of pharmaceutical patents[7] and to reward such challengers for their risk

---

[7] *See, e.g.*, 152 Cong. Rec. S7922, at S7928 (daily ed. July 19, 2006) (statement of Sen. Leahy) ("[T]he original intent of the Hatch-Waxman law . . . was to provide incentives for generic companies to challenge the validity of patents on medicines and provide incentives for generic companies to manufacture low-cost medicines" and "that [a] generic company would have the exclusive right for 180 days to make the generic version of the patented medicine); 149 Cong. Rec. S15670-03, at S15746 (daily ed. Nov. 24, 2003) (statement of Sen. Schumer) ("Fourth, the generic provisions revamp the 180-day exclusivity incentive provided in the Hatch-Waxman Act. Under the act, the first generic drug company to challenge a patent on a brand drug has the exclusive right to market its drug for 6 months before any other generic can compete. This feature encourages generic applicants to challenge weak patents and brings consumers much quicker access to affordable generic drugs."); 149 Cong. Rec. S8686-03, at S8691 (daily ed. June 26, 2003) (statement by Sen. Hatch) ("The Waxman-Hatch law provides an incentive for generic firms to challenge patents. To encourage generic competitors to pursue patent challenges in a vigorous fashion, the 1984 law provided 180 days of marketing exclusivity in situations where a generic drug firm could show the pioneer's patents were invalidated or not infringed."); Proposed Rule, 180-Day Generic Drug Exclusivity for Abbreviated New Drug Applications, 64 Fed. Reg. 42873, 42874 (Aug. 6, 1999), *withdrawn on other grounds by* 67 Fed. Reg. 212, 66593 (Nov. 1, 2002) ("Given this risk of patent infringement litigation, section 505(j)(5)(B)(iv) of the act provides an incentive for generic drug applicants to file paragraph IV certifications challenging patents that may be invalid, unenforceable, or not infringed by the product that is the subject of the ANDA."); 54 Fed. Reg. 28872, 28895 (July 10, 1989) ("The

and expense.  *See, e.g.*, *Mylan Pharms. Inc. v. Henney*, 94 F. Supp. 2d 36, 40 (D.D.C. 2000) ("As an incentive to the first generic maker to expose himself to the risk of costly patent litigation, the Hatch-Waxman regime provides that the first to file a paragraph IV certified ANDA ("the first filer") is eligible for 180-day period of marketing protection, commonly known as the 180-day exclusivity period ("the Exclusivity Incentive").  By its terms, the Exclusivity Incentive affords the first filer protection from competition from subsequent generic makers for 180 days beginning from the earlier of a commercial marketing or court decision.") (internal citations omitted)); 54 Fed. Reg. 28872, 28895 (July 10, 1989) ("The purpose of [the 180-day exclusivity provision] of the act is to reward the *first* applicant to test the scope or validity of a patent… .") (emphasis added)).[8]  This purpose can only be accomplished if the first filer challenging the invalid patent is assured of generic exclusivity, regardless of how long the litigation takes.  If potential challengers must consider factors such as the speed of various courts' dockets, the possibility that various presiding judges may retire, and other uncontrollable events in deciding whether to challenge invalid patents, then Congress's clear intent will be precluded.

Mylan was the first to file under paragraph IV, and it was the first to be sued by Pfizer for patent infringement.  Mylan's case was delayed due to circumstances outside of its control, including a lengthy delay cause by a change of trial judges.  That resulted in the unique posture of these cases:  Apotex was able to use Mylan's arguments and expert reports in their litigation and go to trial first.  Mylan took the risk that was recognized by Congress as critical, and it is

---

purpose of [the 180-day exclusivity provision] of the act is to reward the first applicant to test the scope or validity of a patent. . . .").

[8] The 180-day exclusivity incentive for the first paragraph IV filer has proved powerful and productive.  According to an FTC report issued in 2002, generic patent challenges have succeeded in 73% of cases.  *See* Federal Trade Commission, "Generic Drug Entry Prior to Patent Expiration," July 2002, at 16, available at http://www.ftc.gov/os/2002/07/genericdrugstudy.pdf.

entitled to the reward of generic exclusivity regardless of how long its case took to resolve.  The FDA's ruling that the 180-day period of generic exclusivity does not survive patent expiration cannot justify a "departure from the plain meaning of statutory language," and its reliance on vague notions of Congressional intent cannot satisfy this "considerable burden."  *Mylan Pharms. Inc.*, 94 F. Supp. 2d at 55-56; *id.* (noting that to depart from the plain language of a statute, there must be a "clear indication of congressional intent at odds with the text of the statute").

### III.     MYLAN WILL SUFFER IRREPARABLE HARM ABSENT IMMEDIATE INJUNCTIVE RELIEF FROM THIS COURT.

The FDA has refused to agree to give this Court *any* notice prior to approving Apotex's ANDA.  As a result, Mylan faces the real danger that the Federal Circuit's mandate will issue and Apotex's ANDA will be approved before this Court can consider the merits of Mylan's objections.  Under this scenario, the Court would be presented with a *fait accompli* and Mylan would be denied the opportunity to be heard before the *status quo* is altered – a result that would cause Mylan irreparable harm and render the FDA's action effectively unreviewable.  The D.C. Circuit has emphasized that preliminary injunctive relief is particularly appropriate as a means of insulating parties from imminent harm when another party threatens to suddenly alter the *status quo* in a manner that would deprive another of its rights.  *See Barrow v. Graham,* 124 F. Supp. 2d 714, 716 (D.D.C. 2000) ("In the absence of facts that would enable a court fully to assess the merits of the parties' respective positions, a TRO may issue to preserve the *status quo* and to prevent imminent harm until a hearing on the request for a preliminary injunction may be held.").  In this case, FDA's approval of Apotex's ANDA upon issuance of the mandate would drastically and irrevocably change the *status quo* before Mylan would have an opportunity to respond.

Moreover, courts have repeatedly recognized that a generic drug manufacturer is

irreparably harmed when it is wrongfully deprived of its 180-day period of marketing exclusivity *vis-à-vis* other generic manufacturers. *See Mova Pharm. Corp. v. Shalala,* 955 F. Supp. 128, 131 (D.D.C. 1997) (finding irreparable harm where the FDA deprived a party of its "180-day statutory grant of exclusivity"); *aff'd by* 140 F.3d at 1067, n. 6 (confirming that Mova's loss of its "'officially sanctioned head start' … suffices to show a severe economic impact to Mova," for purposes of satisfying the irreparable harm standard); *Bracco Diagnostics, Inc. v. Shalala,* 963 F. Supp. 20, 29 (D.D.C. 1997) (granting preliminary injunction and acknowledging that "there is a significant economic advantage to receiving first approval and being the first company to enter the market, *an advantage that can never be fully recouped through money damages or by 'playing catch-up'"*) (emphasis added); *Boehringer Ingelheim Corp. v. Shalala,* 993 F. Supp. 1, 2 (D.D.C. 1997) (denying injunctive relief, while recognizing that losing "the advantage of being the first to market" amounts to significant harm for purposes of balancing hardships).

Mylan will suffer tremendous and irreparable harm if it is deprived of its opportunity to be heard, and thus its opportunity to protect its 180-day exclusivity rights. Mylan is currently the only generic drug producer approved to sell amlodipine besylate. If Mylan is deprived – before having any opportunity to be heard – of its status as exclusive generic producer, it would lose all of the benefits that it has worked for five years to obtain. Loss of such exclusivity would impair its access to customers and diminish its ability to establish and retain market share. *See Declaration of Brian Roman.,* ¶ 6; *see also, TorPharm Inc. v. Shalala*, No. 97-1925, 1997 U.S. Dist. LEXIS 21983, at *13-14 (Sept. 15, 1997) ("early market entry is critical to success in the … market because competitors will vie for a small number of long-term contracts").

In addition, since Congress has not allowed the FDA to be sued for the type of decision at issue here, Mylan will not be able to recoup any monetary damages from the FDA. *See United*

*States v. Mitchell*, 445 U.S. 535, 538 (1980); *see also Komongnan v. United States Marshals Serv.*, 471 F. Supp. 2d 1, 4 (D.D.C. 2006) ("In the absence of an express waiver, sovereign immunity precludes suits against the United States and its agencies."). The "discretionary-function exception" of the Federal Tort Claims Act bars any and all claims against the FDA that are "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). That Mylan's economic damages are unrecoverable more than justifies the limited injunctive relief that it seeks. *See, e.g., Express One Int'l, Inc. v. United States Postal Serv.*, 814 F. Supp. 87, 91 (D.D.C. 1992) (finding irreparable harm supported where the "non-recoverable monetary losses [movant] faces are therefore real and present" and damages exist "for which there is no recourse"); *Hoffman-Larouche, Inc. v. Califano*, 453 F. Supp. 900, 903 (D.D.C. 1978) (noting that "[i]f the order goes into effect, plaintiff will suffer loss of sales and good will for which it would have *no right of recourse*, and thus its injury will be irreparable" (emphasis added)).

## IV. THE BALANCE OF THE RELATIVE HARMS FAVORS ENTRY OF AN INJUNCTION.

The injunctive relief that Mylan requests is limited in nature. Mylan is asking only that it be granted the right to be heard *before* the FDA effectuates any approval of Apotex's ANDA. Such limited injunctive relief would harm no other interested party in this case. In fact, such injunctive relief would provide broad-based benefits to both Mylan and the FDA, since such relief would guarantee that both parties will have the opportunity to prospectively address the legality of any change to Apotex's approval status. Both parties will benefit from the court's views on these issues, and both parties will benefit from having these issues resolved *before* any change to the *status quo* is effectuated.

The same principles apply to Apotex and other generic manufacturers, which are legally precluded from entering the market. As such, these parties will suffer no harm if the FDA is preliminarily enjoined from approving Apotex's ANDA. This is particularly true in light of the high likelihood that this Court would find any intervening FDA approval of Apotex's ANDA to have been unlawful, thereby necessitating the *post-hoc* rescission of any such approval. No party's interests would be served by the uncertainty and confusion that would result from such an *ultra vires* FDA action. Apotex – like the FDA and Mylan – all share an interest in preserving the *status quo* pending judicial consideration of the issues raised by this motion.

## V.    THE PUBLIC INTEREST WILL BENEFIT FROM AN INJUNCTION

On March 26, 2007, this Court ordered that the FDA could not "grant[] any ANDAs at issue in this matter" for two days after it had notified the Court of its intended course of action. The point of this delay was "[t]o ensure that all interested parties have the opportunity to advance their positions to the court on this matter prior to the FDA taking final action on the pending drug approvals." The court entered a similar order on April 10. Now, some two weeks later, the relevant circumstances have not changed. The public interest again will be served by a temporary injunction that requires the FDA to provide notice before it approves Apotex's ANDA, rendering Mylan's suit effectively unreviewable and destroying the *status quo*.

The injunction will allow Mylan to submit a motion that demonstrates why the FDA has no lawful basis for approving the ANDA. If this Court concludes that Mylan is correct—a result that is likely for the reasons explained above—it can then prohibit the FDA from issuing the approval. By enabling the Court to forestall the FDA's unlawful action, the injunction will promote the well-recognized public interest in ensuring that federal agencies faithfully comply with their statutory mandates as prescribed by Congress. *See, e.g.*, *Mylan Pharms. Inc. v.*

*Shalala*, 81 F. Supp. 2d 30, 45 (D.D.C. 2000) ("It is in the public interest for courts to carry out the will of Congress and for an agency to implement properly the statute it administers."); *see also Jacksonville Port Authority v. Adams*, 556 F.2d 52, 59 (D.C. Cir. 1977) ("[T]here is an overriding public interest . . . in the general importance of an agency's faithful adherence to its statutory mandate."); *Fund for Animals v. Clark*, 27 F. Supp. 2d 8, 15 (D.D.C. 1998) ("[T]he public has a general interest in 'the meticulous compliance with the law by public officials.'"), quoting *Fund for Animals, Inc. v. Espy*, 814 F. Supp. 142, 152 (D.D.C. 1993). The injunction likewise will enable this Court to avoid the wasted resources and the potential for public confusion that would result if the FDA permitted Apotex to begin selling amlodipine besylate products, only to rescind its approval (and force Apotex to pull its products off the shelves) a few days later based on the Court's grant of relief in favor of Mylan.

Finally, the public has a significant interest in "receiving generic competition to brand-name drugs as soon as is possible." *Boehringer*, 993 F. Supp. at 3. The Hatch-Waxman Act promotes this interest by giving generic drug makers a vital incentive to "incur the potentially substantial litigation costs associated with challenging pioneer drug makers' patents." *Mylan Pharms. Inc.*, 81 F. Supp. 2d at 33. That incentive is the 180-day exclusivity period—the very period that the FDA is attempting to take away in this case. An order requiring the FDA to provide notice at least forty-eight hours before it acts will protect Congress's careful and unmistakable incentive structure by briefly delaying the FDA approval so that Mylan, which has incurred significant costs in defending its ANDA and which would be irreparably harmed by the FDA's unlawful action, receives an opportunity to respond.

## CONCLUSION

For these reasons, Mylan seeks a preliminary injunction to prevent the FDA from rendering Mylan's suit effectively unreviewable and to preserve the *status quo*. Mylan respectfully requests the Court to enjoin the FDA from approving Apotex's ANDA following issuance of the *Pfizer v. Apotex* mandate until Mylan's claims can be adjudicated on the merits.

Dated: April 23, 2007                    Respectfully submitted,


                                      /s/ David J. Harth
                                      David J. Harth (#474632)
                                      HELLER EHRMAN LLP
                                      One East Main Street, Suite 201
                                      Madison, Wisconsin 53703
                                      (608) 663-7460

                                      Shannon M. Bloodworth (#474925)
                                      Joseph P. Whitlock (#484247)
                                      HELLER EHRMAN LLP
                                      1717 Rhode Island Avenue, N.W.
                                      Washington, D.C. 20036
                                      (202) 912-2000

                                      E. Anthony Figg (#345124)
                                      Steven Lieberman (#439783)
                                      Minaksi Bhatt (#434448)
                                      ROTHWELL, FIGG, ERNST & MANBECK PC
                                      1425 K Street, N.W.
                                      Suite 800
                                      Washington, D.C. 20005
                                      (202) 783-6040

Stuart A. Williams
Jill Ondos
MYLAN LABORATORIES INC.
1500 Corporate Drive
Suite 400
Canonsburg, Pennsylvania 15317
(724) 514-1840

Attorneys for Plaintiffs
MYLAN LABORATORIES INC. and
MYLAN PHARMACEUTICALS INC.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MYLAN LABORATORIES INC. and<br>MYLAN PHARMACEUTICALS INC.,    ) | |
| )<br>Plaintiffs,    ) | |
| )<br>and    ) | |
| )<br>MUTUAL PHARMACEUTICAL CO., INC.,    ) | |
| )<br>Intervenor-Plaintiff,    ) | |
| )<br>v.    ) | |
| )<br>MICHAEL O. LEAVITT,    )<br>in his official capacity as    )<br>SECRETARY OF HEALTH AND    )<br>HUMAN SERVICES,    ) | Civil Action No.  07-cv-579 (RMU) |

MICHAEL O. LEAVITT,
in his official capacity as
SECRETARY OF HEALTH AND
HUMAN SERVICES,                     )          Civil Action No.  07-cv-579 (RMU)

ANDREW C. VON ESCHENBACH, M.D.,
in his official capacity as
COMMISSIONER OF FOOD AND DRUGS,

and

UNITED STATES FOOD AND DRUG
ADMINISTRATION, *et al.*,

                         Defendants,

and

TEVA PHARMACEUTICALS USA, INC.,

and

APOTEX INC.,

                         Intervenor-Defendants.

## DECLARATION OF SHANNON M. BLOODWORTH IN SUPPORT OF
## PLAINTIFFS' APPLICATION FOR A PRELIMINARY INJUNCTION

I, Shannon M. Bloodworth, declare and state as follows:

1.      I am an attorney with the law form of Heller Ehrman LLP, counsel to Mylan Laboratories Inc. and Mylan Pharmaceuticals Inc. (collectively "Mylan"), in the above-captioned proceeding.  I submit this declaration in support of Mylan's amended application for a preliminary injunction.

2.      Annexed hereto as Exhibit A is a true and correct copy of Mylan's final approval letter, dated October 3, 2005.

3.      Annexed hereto as Exhibit B is a true and correct copy of the FDA's Letter Decision, dated April 18, 2007.

4.      Annexed hereto as Exhibit C is a true and correct copy of the final judgment in *Pfizer Inc. v. Apotex Inc.*, No. 03C 5289 (N.D. Ill.), dated January 29, 2006 (Dkt. No. 159).

5.      Annexed hereto as Exhibit D is a true and correct copy of the final judgment in *Pfizer, Inc. v. Mylan Laboratories Inc., et al.*, No. 02:02cv1628 (W.D. Pa.), dated February 27, 2007 (Dkt. No. 234).

6.      Annexed hereto as Exhibit E is a true and correct copy of the Amended Judgment from *Pfizer, Inc. v. Mylan Laboratories Inc., et al.*, No. 02:02cv1628 (W.D. Pa.), dated March 16, 2007 (Dkt. No. 248).

7.      Annexed hereto as Exhibit F is a true and correct copy of the stay issued by the Federal Circuit in *Pfizer Inc. v. Mylan Laboratories Inc., et al.*, No. 2007-1194 (Fed. Cir.), dated March 23, 2007.

8.      Annexed hereto as Exhibit G is a true and correct copy of the March 23, 2007 letter from S. Wayne Talton to Gary Buehler and associated form 356h.

9.      Annexed hereto as Exhibit H is a true and correct copy of FDA correspondence dated

March 28, 2007.

     10.    Annexed hereto as Exhibit I is a true and correct copy of Apotex's Motion to Compel Discovery and for Sanctions and Incorporated Memorandum in Support Thereof, dated April 19, 2004, filed by Apotex in *Pfizer Inc. v. Apotex Inc.*, No. 03C 5289 (N.D. Ill.).


     I declare under penalty of perjury that the foregoing is true and correct of my own knowledge. Executed this 23rd day of April, 2007 in Washington, D.C.

Shannon M. Bloodworth

# Exhibit A

*Declaration of Shannon M. Bloodworth*
*In Support of Plaintiffs' Application for a Preliminary Injunction*

**DEPARTMENT OF HEALTH & HUMAN SERVICES**

ANDA 76-418



Food and Drug Administration
Rockville MD 20857

OCT · 3 2005

Mylan Pharmaceuticals Inc.
Attention:  S. Wayne Talton
            Vice President, Regulatory Affairs
781 Chestnut Ridge Road
P.O. Box 4310
Morgantown, WV  26504-4310


Dear Sir:

This is in reference to your abbreviated new drug application
(ANDA) dated May 22, 2002, submitted pursuant to section 505(j)
of the Federal Food, Drug and Cosmetic Act (Act), for Amlodipine
Besylate Tablets, 2.5 mg (base), 5 mg (base) and 10 mg (base).

Reference is also made to your amendments dated October 2, 2002;
and January 6, April 1, August 1, and August 4, 2005.

We have completed the review of this ANDA and have concluded
that the drug is safe and effective for use as recommended in
the submitted labeling.  Accordingly, the ANDA is approved.  The
Division of Bioequivalence has determined your Amlodipine
Besylate Tablets 2.5 mg (base), 5 mg (base), and 10 mg (base),
to be bioequivalent and therefore, therapeutically equivalent to
the listed drug, Norvasc Tablets 2.5 mg (base), 5 mg (base), and
10 mg (base), respectively, of Pfizer, Inc. (Pfizer).  Your
dissolution testing should be incorporated into the stability
and quality control program using the same method proposed in
your application.

The listed drug product (RLD) referenced in your ANDA, Pfizer's
Norvasc® Tablets, is subject to periods of patent protection.
As noted in the agency's publication entitled <u>Approved Drug
Products with Therapeutic Equivalence Evaluations</u> (the "Orange
Book"), U.S. Patent Nos. 4,572,909 (the '909 patent) and
4,879,303 (the '303 patent) are scheduled to expire (with
pediatric exclusivity added) on January 31, 2007, and
September 25, 2007, respectively.

Your ANDA contains patent certifications under section 505(j)(2)(A)(vii)(IV) of the Act stating that both these patents are invalid, unenforceable, or will not be infringed by your manufacture, use, or sale of Amlodipine Besylate Tablets, 2.5 mg (base), 5 mg (base) and 10 mg (base), under this ANDA. Section 505(j)(5)(B)(iii) of the Act provides that approval of an ANDA shall be made effective immediately, unless an action is brought against Mylan Pharmaceuticals Inc. (Mylan) for infringement of either of the patents that were the subject of the paragraph IV certifications. This action must have been brought against Mylan prior to the expiration of 45 days from the date the notice you provided under paragraph (2)(B)(i) was received by the NDA/patent holder(s). You have notified the agency that Mylan complied with the requirements of section 505(j)(2)(B) of the Act, and that no action for infringement of the '909 patent or the '303 patent was brought against Mylan within the statutory 45-day period, which action would have resulted in a 30-month stay under section 505(j)(5)(B)(iii).[1]

With respect to 180-day generic drug exclusivity, we note that Mylan was the first ANDA applicant to submit a substantially complete ANDA with a paragraph IV certification for Amlodipine Besylate Tablets, 2.5 mg (base), 5 mg (base) and 10 mg (base). Therefore, with this approval, Mylan is eligible for 180-days of market exclusivity. This exclusivity, which is provided for under section 505(j)(5)(8)(iv) of the Act,[2] will begin to run from the earlier of the commercial marketing or court decision dates identified in section 505(j)(5)(B)(iv). Please submit correspondence to the ANDA informing the agency of the date the exclusivity begins to run.

Under section 506A of the Act, certain changes in the conditions described in this ANDA require an approved supplemental application before the change may be made.

---

[1] Because information on the '909 and '303 patents was submitted before August 18, 2003, this reference to section 505(j)(5)(B)(iii) of the Act is to that section of the Act as in effect prior to December 8, 2003, when the Medicare Prescription Drug, Improvement and Modernization Act (MMA)(Public Law 108-173) was enacted. See MMA § 1101(c)(3). The Agency is aware that Pfizer initiated patent litigation against Mylan shortly after expiration of the statutory 45-day period.

[2] Because your ANDA was filed before the date of enactment of the Medicare Prescription Drug, Improvement and Modernization Act (MMA)(Public Law 108-173) on December 8, 2003, this reference to the 180-day exclusivity provision is to the section of the Act as in effect prior to December 8, 2003. See MMA § 1102(b)(1).

Post-marketing reporting requirements for this ANDA are set
forth in 21 CFR 314.80-81 and 314.98.  The Office of Generic
Drugs should be advised of any change in the marketing status of
this drug.

Promotional materials may be submitted to FDA for comment prior
to publication or dissemination.  Please note that these
submissions are voluntary.  If you desire comments on proposed
launch promotional materials with respect to compliance with
applicable regulatory requirements, we recommend you submit, in
draft or mock-up form, two copies of both the promotional
materials and package insert(s) directly to:

> Food and Drug Administration
> Center for Drug Evaluation and Research
> Division of Drug Marketing, Advertising, and Communications
> 5901-B Ammendale Road
> Beltsville, MD 20705

We call your attention to 21 CFR 314.81(b)(3) which requires
that materials for any subsequent advertising or promotional
campaign be submitted to our Division of Drug Marketing,
Advertising, and Communications (HFD-40) with a completed Form
FDA 2253 at the time of their initial use.

> Sincerely yours,
>
> Gary Buehler
> Director
> Office of Generic Drugs
> Center for Drug Evaluation and Research

# Exhibit B

*Declaration of Shannon M. Bloodworth*
*In Support of Plaintiffs' Application for a Preliminary Injunction*



**DEPARTMENT OF HEALTH & HUMAN SERVICES**

Food and Drug Administration
Rockville, MD 20857

April 18, 2007

Dear ANDA Applicant/Holder for Amlodipine Besylate Tablets:

This letter addresses issues related to the timing of potential approvals of abbreviated new drug applications (ANDAs) that reference Norvasc tablets. This letter construes the provisions of the Drug Price Competition and Patent Term Restoration Act of 1984 (known as the Hatch-Waxman Amendments or Hatch-Waxman), codified at 21 U.S.C. §§ 355, 360cc, and 35 U.S.C. §§ 156, 271, 282, and does not necessarily apply to changes made in the Medicare Modernization Act (MMA) of 2003.[1]

As you are aware, Pfizer Inc. (Pfizer) manufactures and markets Norvasc, a besylate salt of amlodipine, indicated for the treatment of hypertension and angina. Pfizer had listed two patents with FDA, asserting that they claim Norvasc and would be infringed by the marketing of generic versions of the product. The later of these patents, Patent No. 4,879,303 ('303 patent), expired on March 25, 2007, so that these patents, by themselves, no longer bar the marketing of generic versions of Pfizer's product. Several companies have submitted ANDAs for approval to market generic versions of Norvasc. Mylan Laboratories, Inc. and Mylan Pharmaceuticals, Inc. (Mylan) filed the first ANDA to market a generic version of Norvasc and had challenged Pfizer's patents by submitting the first "paragraph IV certifications" to those patents with its application. FDA approved Mylan's ANDA in October 2005, and Mylan began marketing its product on March 23, 2007. On or about the same day, Pfizer began marketing a generic version of Norvasc.

Pfizer and Mylan now contend that the approvals of the other ANDAs for amlodipine besylate are blocked by Pfizer's "pediatric exclusivity" until September 25, 2007. Mylan contends, alternatively, that the approvals of its competitors' ANDAs are blocked by Mylan's "180-day marketing exclusivity" until September 19, 2007.[2] Resolution of whether pending ANDAs referencing Norvasc are blocked either by Pfizer's pediatric exclusivity or Mylan's 180-day exclusivity involves a number of legal issues, some of first impression for the agency. Part of the analysis requires FDA to determine the effect of a recent Federal Circuit decision in patent litigation between Pfizer and Apotex Inc. (Apotex), another ANDA applicant for amlodipine besylate who filed a paragraph IV certification after Mylan had submitted its certification. On March 22, 2007, the Federal Circuit ruled that the three claims in the '303 patent that Pfizer asserted that Apotex infringed were invalid as obvious. *Pfizer Inc. v. Apotex, Inc.*, No. 2006-1261, 2007 U.S. App. LEXIS 6623 (March 22, 2007) (the *Apotex* decision).

---

[1]  The 1984 Hatch-Waxman provisions govern most issues related to ANDA approval for amlodipine besylate tablets. Although certain provisions of Hatch-Waxman have been superseded by changes made in the MMA, the 180-day exclusivity provisions of the MMA apply only to applications for which the first ANDA with a paragraph IV certification was filed after December 3, 2003. Mylan's ANDA was filed before December 3, 2003, and hence is governed by the pre-MMA provisions with respect to 180-day exclusivity.

[2]  Mylan has claimed in its submissions to FDA that its 180-day exclusivity commenced on March 23, 2007 and would expire on September 23, 2007. See Petition for Stay of Action, Docket 2006P-0116 (March 26, 2007) (http://www.fda.gov/ohrms/dockets/dockets/07p0116/07p-0116-psa0001-01-vol1.pdf). However, 180 days after March 23 is September 19.

The questions presented by the pending applications and exclusivity claims include: (1) whether the *Apotex* decision is effective upon issuance of the opinion or upon issuance of the mandate, for purposes of determining the application of Pfizer's pediatric exclusivity; (2) upon the *Apotex* decision becoming effective, whether Pfizer's pediatric exclusivity bars approval of the Apotex ANDA; (3) upon the *Apotex* decision becoming effective, whether Pfizer's pediatric exclusivity bars approvals of the remaining ANDAs; and (4) whether Mylan's eligibility for 180-day exclusivity blocks approval of ANDAs after the expiration of Pfizer's patent. These questions are addressed in turn in the Discussion section below.

Regulatory Background

A. Patent Listing and Certification

The Hatch-Waxman Amendments permit the submission of ANDAs for approval of generic versions of approved drug products. 21 U.S.C. § 355(j). Under the procedure established in Hatch-Waxman, NDA sponsors are required to list patents that protect their approved drug substances, drug products, or approved methods of use, 21 U.S.C. § 355(b)(1); FDA publishes those patents in FDA's "Approved Drug Products With Therapeutic Equivalence Evaluations" (the Orange Book); and ANDA applicants are required to certify whether their proposed drug products infringe those listed patents. 21 U.S.C. § 355(j)(2)(A)(vii). As to each patent listed in the Orange Book for the listed drug referenced, an ANDA applicant can certify that 1) such patent information has not been filed (paragraph I certification); 2) the patent has expired (paragraph II certification); 3) the date the patent will expire (paragraph III certification); or 4) the patent is invalid or not infringed by the drug product proposed in the ANDA (paragraph IV certification). *Id.*

In the case of paragraph I and paragraph II certifications, the patent does not serve as a barrier to ANDA approval. A paragraph I or paragraph II certification permits immediate effective approval of the ANDA. 21 U.S.C. § 355(j)(5)(B)(i). If an applicant files a paragraph III certification, approval may be made effective when the patent expires. 21 U.S.C. § 355(j)(5)(B)(ii).

If an applicant seeks to challenge a listed patent and to obtain approval before the patent expires, it must provide a paragraph IV certification certifying that "in the opinion of the applicant and to the best of his knowledge" the patent is "invalid or will not be infringed by the manufacture, use or sale of the [drug described in the ANDA]." 21 U.S.C. § 355(j)(2)(A)(vii)(IV). The applicant with a paragraph IV certification must notify the patent owner and NDA holder of its paragraph IV certification and of the basis of its belief that the patent is invalid or not infringed. 21 U.S.C. § 355(j)(2)(B). The filing of a paragraph IV certification "for a drug claimed in a patent or the use of which is claimed in a patent" is an act of infringement. 35 U.S.C. § 271(e)(2)(A). This enables the NDA holder and patent owner to sue the ANDA applicant. If the patent owner or NDA holder brings a patent infringement suit against the ANDA applicant within 45 days after receiving notice of the paragraph IV certification, the suit triggers an automatic stay of FDA approval for 30 months from the date the patent owner or NDA holder received notice of the certification ("30-month stay"). 21 U.S.C. § 355(j)(5)(B)(iii). If the patent owner or NDA holder does not bring suit within 45 days after it has received notice of the paragraph IV certification, the unexpired patent will not, by itself, bar FDA's approval of the ANDA, even if patent litigation is subsequently commenced outside the 45-day period and is ongoing at the time the requirements for approval are met. See *id.*

B. 180-Day Exclusivity

To provide an incentive for ANDA applicants to be the first to challenge a listed patent and remove patent barriers to approval, Congress provided that:

> [I]f the [ANDA] contains a [paragraph IV certification] and is for a drug for which a previous application has been submitted under this subsection . . . [containing] such a certification, the application shall be made effective not earlier than one hundred eighty days after
>
> (I)     the date the Secretary receives notice from the applicant under the previous application of the first commercial marketing of the drug under the previous application, or
> (II)    the date of a decision of a court in an action described in clause (iii) holding the patent which is the subject of the certification to be invalid or not infringed, whichever is earlier.

21 U.S.C. § 355(j)(5)(B)(iv)(2002).

Although this statutory provision is commonly characterized as granting "180-day exclusivity" to the first applicant to submit an ANDA containing a paragraph IV certification challenging a patent, the statute does not provide for that result directly. Instead, this end is accomplished by delaying the approval of subsequent ANDAs *containing a paragraph IV certification* until 180 days after the exclusivity period for the first ("previous") applicant has been triggered. If the first applicant's ANDA no longer contains a valid paragraph IV certification when it is ready for approval, the first applicant is not eligible for exclusivity. Similarly, when subsequent applicants' ANDAs do not contain paragraph IV certifications, their approval is not delayed under the plain language of this statutory provision.

C. Pediatric Exclusivity

The pediatric exclusivity statute, enacted as part of the Food and Drug Administration Modernization Act (FDAMA) and renewed in the Best Pharmaceuticals for Children Act (BPCA), provides an incentive for NDA sponsors to conduct pediatric studies that FDA has requested. Although this incentive for doing pediatric studies is commonly referred to as "pediatric exclusivity," a grant of pediatric exclusivity alone does not guarantee that an NDA will be free of generic competition while the exclusivity is in effect. Instead, as FDA has opined and the D.C. Circuit has affirmed, the applicability of pediatric exclusivity to prevent approval of a particular applicant's ANDA depends on the outcome of that applicant's patent challenges, if any. See *Mylan Labs., Inc.* v. *Thompson*, 332 F. Supp. 2d 106 (D.D.C. 2004), *aff'd*, 389 F.3d 1272 (D.C. Cir. 2004); *Ranbaxy Labs., Ltd.* v. *FDA*, 307 F. Supp. 2d 15 (D.D.C. 2004) *aff'd*, 2004 U.S. App. LEXIS 8311 (D.C. Cir. April 26, 2004). Specifically, the statute states that if the approved product has completed the pediatric exclusivity requirements and is subject to

> (i)     "a listed patent for which a [paragraph II] certification has been submitted . . . the period during which an application may not be approved under [21 U.S.C. § 355(j)(5)(B)] shall be extended by a period of six months after the patent expires;"
> (ii)    "a listed patent for which a [paragraph III] certification has been submitted . . . the period during which an application may not be approved under [21 U.S.C. § 355(j)(5)(B)] shall be extended by a period of six months after the date the patent expires;"

(iii)    "a listed patent for which a [paragraph IV] certification has been submitted . . . , and in the patent infringement litigation resulting from the certification the court determines that the patent is valid and would be infringed, the period during which an application may not be approved under [21 U.S.C. § 355(j)(5)(B)] shall be extended by a period of six months after the date the patent expires."

21 U.S.C. § 355a(c)(2)(A)-(B).

Factual Background

On July 31, 1992, FDA approved Pfizer's new drug application (NDA) for amlodipine besylate tablets, which Pfizer began marketing later that year under the brand name Norvasc. Pfizer listed two patents with respect to Norvasc:  Patent 4,572,909 ('909 patent), originally due to expire on July 31, 2006, and the '303 patent, originally due to expire on March 25, 2007.  Pfizer conducted pediatric studies requested by FDA and, on November 27, 2001, FDA granted Pfizer pediatric exclusivity for Norvasc pursuant to 21 U.S.C. § 355a.  Pediatric exclusivity, by delaying approval of ANDAs for six months after the expiration date for a patent, had the potential to block approvals of ANDAs referencing Norvasc until January 31, 2007, with respect to the '909 patent, and until September 25, 2007, with respect to the '303 patent.  Because this period with respect to the '909 patent has expired, that patent is no longer relevant to the issues discussed in this letter.

In May 2002, Mylan filed an ANDA for amlodipine besylate, and was the first to file a paragraph IV certification to the '303 patent pursuant to 21 U.S.C. § 355(j)(5)(B)(iv).   Pfizer sued Mylan for patent infringement.  *Pfizer Inc. v. Mylan Labs. Inc.*, No. 02-cv-1628 (W.D. Pa.).  However, because Pfizer did not file its lawsuit within 45 days of receiving notice of Mylan's paragraph IV certification, the filing of the lawsuit did not result in the 30-month stay of approval pursuant to 21 U.S.C. § 355(j)(5)(B)(iii).  In October 2005, FDA approved Mylan's ANDA.

In February 2007, the district court in the patent litigation between Mylan and Pfizer entered judgment for Pfizer that Mylan had infringed the '303 patent.  *Pfizer Inc. v. Mylan Labs., Inc.*, No. 02-cv-1628, 2007 U.S. Dist. LEXIS 14417 (W.D. Pa. Feb. 27, 2007).  On March 16, 2007, the district court amended the judgment and enjoined the approval of Mylan's ANDA until the '303 patent expired.  *Id.*, 2007 U.S. Dist. LEXIS 18699 (Mar. 16, 2007).[3]  Mylan appealed that judgment and sought a stay of the district court's injunction.  The Federal Circuit granted the stay.  *Pfizer Inc. v. Mylan Labs., Inc.*, No. 2007-1194 (Mar. 23, 2007).  Mylan began marketing its product on March 23, 2007.

Apotex, Inc. (formerly Torpharm, Inc.) filed an ANDA for amlodipine besylate, which contained a paragraph IV certification to the '303 patent.  On July 20, 2003, Pfizer sued Apotex for patent infringement.  In January 2006, the district court held the patent was valid and infringed.  *Pfizer, Inc. v. Apotex*, No. 03C 5289, 2006 U.S. Dist. LEXIS 95778 (N.D. Ill. January 29, 2006).  The Federal Circuit reversed in the opinion noted above, finding that Apotex's amlodipine besylate

---

[3] When an NDA holder or patent owner sues the ANDA applicant and wins — that is, the court hearing the patent infringement litigation finds the patent valid and infringed -- the Patent Code provides that "the court shall order the effective date of any approval of the drug * * * involved in the infringement to be a date which is not earlier than the date of the expiration of the patent which has been infringed."  35 U.S.C. § 271(e)(4)(A).

tablets did not infringe claims 1-3 of the '303 patent because those claims were invalid for obviousness. See *Apotex* decision. The Federal Circuit did not address the validity of the remaining claims of the patent, presumably because those were not claims on which Pfizer had sued Apotex. On April 5, 2007, Pfizer filed a motion in the Federal Circuit, seeking a rehearing and/or rehearing en banc of the *Apotex* decision. This motion stayed issuance of the mandate pending its resolution under Rule 41(d)(1) of the Federal Rules of Appellate Procedure (FRAP).

At midnight on March 25, 2007, the '303 patent expired. Pfizer submitted a letter to FDA dated March 25, 2007, contending that approval of Apotex's ANDA was barred by Pfizer's pediatric exclusivity, at least until the Federal Circuit's mandate issues.

On March 26, 2007, Mylan submitted to FDA a Petition for Stay of Action requesting that the FDA refrain from taking any action to approve any ANDA for amlodipine besylate tables until Mylan's 180-day exclusivity expires. According to Mylan, the 180-day exclusivity for amlodipine besylate tablets had been triggered when it commenced marketing on March 23, and is due to expire on September 19, 2007. Also on March 26, Mylan sued FDA in the U.S. District Court for the District of Columbia, alleging that it was entitled to 180-day exclusivity as to the '303 patent and requesting that the court enjoin FDA from approving additional ANDAs for amlodipine until the merits of its claim for 180-day exclusivity could be heard. *Mylan Labs., Inc.* v. *Leavitt*, CA No. 07-579 (RMU)(D.D.C.).

FDA determined that it was unprepared to immediately resolve all of the legal questions raised by the pending applications and exclusivity claims, and would benefit from soliciting the views and legal arguments of the interested parties. FDA informed the court that it proposed to seek comments to be submitted by April 4, 2007, and to issue its determination by April 11, 2007. The court memorialized FDA's proposal, and enjoined FDA from implementing any ANDA approval decisions, once made, until 5:00 PM on April 13, 2007 to allow the court to review FDA's decisions. *Mylan Labs.*, CA No. 07-579 (RMU), Order (March 26, 2007). FDA subsequently moved the court for an extension of time, until April 18, 2007, to issue its determination, which the court granted.

By letter dated March 28, 2007, FDA requested comments on five specific questions from Pfizer and the ANDA applicants for amlodipine besylate tablets. FDA created a docket for collecting the comments and posting them on the internet, and posted its letter requesting comments to give other interested parties an opportunity to comment on the questions FDA raised. (http://www.fda.gov/ohrms/dockets/dockets/07n0123/07n0123.htm) Several parties expressed a range of opinions on the questions FDA posed. *See id.* After receiving and considering submissions from interested parties, FDA reaches the following conclusions.

Discussion

1. For Purposes of Pediatric Exclusivity, the *Apotex* Decision Will Not be Effective until Issuance of the Mandate.

Under the language of the statute, pediatric exclusivity operates by delaying the approval of an ANDA for six months after a patent expires.[4] The operative subsection of the statute varies

---

[4] In this case, Mylan's ANDA is not blocked by Pfizer's pediatric exclusivity because its ANDA was already approved in October 2005, and therefore, under the literal terms of the statute, the ANDA's approval cannot be delayed. 21 U.S.C. § 355a(c)(2)(A)-(B). One commenter maintained that FDA should have converted the approval status of Mylan's ANDA to tentative approval after Mylan lost its patent litigation in the district court. See Comments of Synthon Pharmaceuticals, Inc. at 4. However,

according to the certification submitted by the ANDA applicant. When the ANDA applicant, such as Apotex, submits a paragraph IV certification, "if . . . in the patent litigation resulting from the certification the court determines that the patent is valid and would be infringed, the period during which an application may not be approved . . . shall be extended by a period of six months after the date the patent expires . . . ." *See* 21 U.S.C. § 355a(c)(2)(B). As discussed in greater detail below, FDA has previously opined, and concludes below, that this provision means that pediatric exclusivity does *not* apply when the ANDA applicant prevails in its patent challenge -- that the court determines that the patent is *in*valid or would *not* be infringed, and that construction has been acknowledged as appropriate by a court. Accordingly, this provision governs the application of pediatric exclusivity, at least with respect to Apotex.

In determining the effect of the *Apotex* decision on Pfizer's pediatric exclusivity claim, the first issue that FDA must resolve is to ascertain the meaning of the phrase "the court determines" for purposes of the statutory provision quoted above. Specifically, FDA must decide whether the Federal Circuit "determined" invalidity when it issued its opinion or will not "determine" validity or infringement until the mandate issues. Because the Court of Appeal's opinion is not effective until the mandate issues, Pfizer argues that the Federal Circuit will not have determined invalidity until that time. Apotex and others have asserted that the March 22, 2007 date of the issuance of the Federal Circuit opinion is the operative date.

FDA finds that the operative phrase -- "the court determines" -- is ambiguous as to the action it describes. Congress could have been more precise in indicating the action by the court to which it was referring, as it has done in other statutes. Compare, e.g., 26 U.S.C. § 7481(a) (finality is determined "upon mandate" issued by Court of Appeals or Supreme Court) with 21 U.S.C. § 355(j)(5)(B)(iii)(I)(aa)-(bb) (approval "shall be made effective on the date on which the court enters judgment reflecting the decision; or the date of a settlement order or consent decree signed and entered by the court stating that the patent that is the subject of the certification is invalid or not infringed."). Instead, it chose a phrase that, as the comments submitted to FDA reflect, is susceptible to more than one interpretation. On the one hand, the use of the present tense in the word "determines" could suggest that the issuance of the opinion itself is sufficient. Indeed, one dictionary definition of "determine" is "to come to a decision . . . as the result of investigation or reasoning." Webster's Third New International Dictionary (2002) at 616 (definition 1.c). Under this view, a court "determines" validity and infringement when it issues an initial ruling to that effect.

On the other hand, the choice of the word "determines" suggests the fixing or settling of rights and obligations. The dictionary definitions of "determine" include: "to fix conclusively or authoritatively," "to settle a question or controversy about," "to settle or decide by choice of alternatives or possibilities." *Id.* (definitions 1.a, 1.b, and 1.d.). See also Webster's II New Riverside University Dictionary (1994) at 369 ("[t]o end or decide by final, esp. judicial action") (definition 1.b). Under this view, where an appellate court is reversing the district court's judgment below, the parties' rights and obligations continue to be governed by the district court determination until the appellate court issues its mandate effectuating its judgment.

The Federal Rules of Appellate Procedure provide some additional guidance regarding which should be the relevant time frame for determining generally when the Federal Circuit's decision is effective. The rules themselves do not conclusively resolve the issue: FRAP 36 states that a judgment is entered when it is noted on the docket, while FRAP 41(c) states that the mandate is

---

before FDA took such action, the Federal Circuit stayed the district court injunction in that litigation. After that stay, FDA had no basis to convert the approval status of Mylan's ANDA from approved to tentatively approved.

effective when issued. However, the 1998 advisory committee notes to FRAP 41(c) state that "[a] court of appeals judgment or order is not final until issuance of the mandate; at that time the parties' obligations become fixed." These notes have been cited with approval by courts, *Mercer v. Duke Univ.*, 401 F.3d 199, 212 n.7 (4th Cir. 2005); *Stewart Park & Reserve Coalition Inc. v. Slater*, 374 F. Supp. 2d 243, 248 n.5 (N.D.N.Y. 2005); *United States v. Swan*, 327 F. Supp. 2d 1068, 1071-72 (D. Neb. 2004), and no commenters have cited any authority to FDA that would indicate that the advisory committee notes do not state the current rule regarding finality of appellate court decisions.[5] Therefore, under these rules, until the mandate issues, the parties continued to be bound by the district court judgment.

In FDA's view, the phrase "the court determines" in section 355a(c)(2)(B), in the context of a federal court of appeals reversing a district court judgment, should be read as the date the mandate issues for several reasons. When the district court decides a patent issue, FDA applies that decision, unless it is stayed, in determining issues related to ANDA approval. The district court decision continues to control the rights of the parties until the appellate court mandate issues. Thus, the vital date under this scheme is when the rights of the parties become fixed by the decision of the court of appeals, that is, the date the mandate issues. This understanding of the phrase "the court determines" is further supported by the dictionary definitions of "determine" that use the terms "fixing" and "settling," and by the practice under the FRAP, as reflected in the advisory committee notes and as accepted by courts. Furthermore, as a matter of policy, FDA believes that the parties to paragraph IV litigation are best served by a rule that, consistent with the statutory language, errs on the side of greater finality. Such a rule reduces the possibility that an appellate court opinion will be relied on and then overturned (through an adverse opinion after rehearing or rehearing en banc) in very short order. Accordingly, FDA concludes that, in determining the applicability of pediatric exclusivity, this language requires FDA to await issuance of the mandate before giving effect to an appellate court opinion that would overturn a district court's ruling.

In this case, therefore, for purposes of determining the applicability of Pfizer's pediatric exclusivity, FDA will continue to be governed by the district court decision upholding the validity of the patent unless or until the mandate is issued, effectuating the appellate court's judgment.[6] As a result, all of the unapproved ANDAs are currently blocked by Pfizer's pediatric exclusivity. If the mandate does not issue before September 25, 2007, when the pediatric exclusivity expires, Pfizer and Mylan will have no additional competition during the interim period and thus will obtain the full benefit that could be derived under pediatric and 180-day marketing exclusivity. In that event, the remaining issues discussed in this letter will be moot. However, given the possibility that the mandate making the panel decision effective may issue before September 25, 2007, FDA will continue with its analysis.

---

[5] Several commenters have cited an FDA Guidance document issued in March 2000. See, e.g., Mylan Comments at 2; Pfizer comments at 2. FDA is not relying on this guidance document, however, because it relates to a different statutory provision, with different language, context, and purposes.

[6] In this case, the district court found patent validity and infringement and the appellate court opinion found invalidity. Under these circumstances, FDA here declines to give effect to the appellate court's judgment of invalidity until the mandate issues and the patent and pediatric exclusivity attached to the patent block ANDA approvals in the interim. We note, however, that the agency's position on this also suggests that, had the district court found invalidity and the appellate court reached the contrary conclusion of validity and infringement, the converse would also be true: in spite of the appellate court opinion finding validity and infringement, ANDAs could be approved (or could retain their approvals) and neither the patent itself nor pediatric exclusivity would attach to that patent to block such approvals unless and until the mandate issued.

2.  Apotex will Cease to be Subject to Pfizer's Exclusivity if the Mandate Issues before
September 25, 2007.

This is the first time that FDA has been called upon to determine whether an ANDA applicant is
subject to the innovator's pediatric exclusivity when the ANDA applicant has received a
*favorable* court decision in its paragraph IV litigation but has not yet obtained final approval
when the patent expires.  The pediatric exclusivity provisions address several scenarios in
terms of the status of the ANDA applications, but there are several scenarios that they fail to
address, including this one.

The statute provides that, where the ANDA applicant submits paragraph IV certification, "if  . . .
in the patent litigation resulting from the certification the court determines that the patent is valid
and would be infringed, the period during which an application may not be approved . . . shall be
extended by a period of six months after the date the patent expires . . . ."  *See* 21 U.S.C.
§ 355a(c)(2)(B).  Based on this language, FDA determines that the converse must also be true -
if in paragraph IV litigation a court determines that a patent is *invalid* or *not infringed*, pediatric
exclusivity will not bar approval of that applicant's ANDA.  This is the implicit meaning and
logical interpretation of subsection 355a(c)(2)(B); otherwise, the qualification in that provision
regarding the victory for the patent holder in the patent litigation would make no sense and
would be superfluous, at least as to any ANDA that did not receive final approval before the
patent expired.  In addition, this outcome is consistent with the goals of the 180-day exclusivity
statute which encourages patent challenges to remove barriers to approval.  As noted, FDA had
previously opined that this was the logical interpretation of 355a(c)(2)(B), although FDA was not
directly applying that interpretation at that time. See *Mylan Labs., Inc.* v. *Thompson*, 332 F.
Supp. 2d at 124 (D.D.C. 2004) ("As the FDA has correctly noted in its papers, § 355a(c)(2)(B)
would apply 'where an ANDA applicant submits a paragraph IV certification, and prevails in the
patent litigation.'")(dicta, citing Federal Defendants' Memorandum in Opposition to Plaintiffs'
Motion for Preliminary Injunction and Summary Judgment and In Support of Cross Motion for
Summary Judgment at 38 (July 8, 2004)), *aff'd*, 389 F.3d 1272 (D.C. Cir. 2004).  FDA therefore
concludes that, where an applicant has challenged a patent and has received a decision of
invalidity or non-infringement, that applicant will not be subject to the NDA holder's pediatric
exclusivity once that decision becomes effective.

FDA has previously been called upon to address other gaps in the pediatric exclusivity
provisions.  Specifically, the paragraph III and paragraph IV provisions are silent on the
applicability of pediatric exclusivity to delay ANDA approvals where an ANDA applicant has a
paragraph III or IV certification and has not received final approval at the time the patent
expires.  In determining the operation of the statute in those circumstances, FDA has relied on
the broader certification scheme under Hatch-Waxman.

It has been FDA's longstanding view, that, when a patent expires before pending patent
litigation is resolved, ANDA applicants who have not received final effective approval are
required under Hatch-Waxman, to change their paragraph III and paragraph IV certifications to
paragraph II certifications.  Because, upon patent expiry, all ANDA applicants are presumed to
have paragraph II certifications, the paragraph II provision of the pediatric exclusivity statute, 21
U.S.C. § 355a(c)(2)(A)(i), would control.  The D.C. Circuit has upheld this approach in two
recent decisions. See *Mylan Labs., Inc.* v. *Thompson*, 332 F. Supp. 2d 106, 124 (D.D.C. 2004),
*aff'd*, 389 F.3d 1272 (D.C. Cir. 2004); *Ranbaxy Labs., Ltd.* v. *FDA*, 307 F. Supp. 2d 15 (D.D.C.
2004) *aff'd*, 2004 U.S. App. LEXIS 8311 (D.C. Cir. April 26, 2004).

In considering these earlier determinations regarding the switch to paragraph II certifications with today's decision regarding the non-applicability of pediatric exclusivity to applicants who prevail in patent litigation, FDA determines as follows. When the '303 patent expired on March 25, 2007, all of the unapproved ANDAs were required to change (or deemed to have changed) to paragraph II certifications and became subject to Pfizer's pediatric exclusivity at that time. That is their status during the period before the mandate issues. However, FDA believes that the language of the statute manifests a clear Congressional intent that pediatric exclusivity not block the approval of an ANDA where the ANDA applicant has prevailed in the paragraph IV patent litigation and therefore creates an exception to the application of the Hatch-Waxman certification provisions. Thus, if and when the mandate finalizing the panel's March 22 decision issues in the *Apotex* case, Apotex's ANDA will not be blocked by Pfizer's pediatric exclusivity.

### 3. If the Mandate Issues Before the Expiration of Pediatric Exclusivity on September 25, 2007, ANDAs Other than Apotex May Not be Eligible for Immediate Approval.

Although Apotex is the only ANDA applicant to have obtained a favorable decision on the merits against Pfizer in the amlodipine besylate patent litigation, several commenters maintain that all or some of the other ANDAs should not be blocked by Pfizer's pediatric exclusivity because of the *Apotex* decision. Some maintain that, once the patent is declared invalid, it should be presumed delisted from the Orange Book. See Medco Comments at 7. That would mean that no ANDA applicants would be required to maintain their certifications to that patent, and pediatric exclusivity, by its literal terms, would not bar any approvals.

Others maintain that, once a patent is found invalid in litigation against one party, the patent owner is collaterally estopped from asserting infringement claims based on that patent against additional defendants. See, e.g. *Blonder-Tongue Labs., Inc.* v. *University of Ill. Found.*, 402 U.S. 313, 350 (1971). They argue that, applying collateral estoppel, all applicants who submitted paragraph IV certifications should be considered victorious in their individual patent litigation against Pfizer. At that point, they continue, the analysis applied to Apotex's ANDA should be applied to them as well so that their ANDAs would not be blocked by pediatric exclusivity. This would mean, according to at least one commenter, that ANDAs containing paragraph IV certifications at the time of patent expiration would be eligible for approval, while those containing paragraph III certifications would be blocked. See Teva Comments at 11-13.

Other commenters noted, however, that the *Apotex* decision addressed only claims 1-3 of an 11 claim patent. These commenters assert that the patent should stay listed in the Orange Book because some of the claims have not been declared invalid. See Mylan Comments at 1-2; Daiichi Sankyo Inc. Comments at 2. Nevertheless, another commenter maintains that there are no viable claims remaining for these products once claims 1-3 are declared invalid. See Caraco Pharmaceutical Labs, Ltd. at 3.

Patents are required to be listed in FDA's Orange Book if they claim the approved drug substance, approved drug product, or an approved method of use. 21 U.S.C. § 355(b)(1); 21 C.F.R. § 314.53. If the remaining claims do not provide a basis on which to list the patent (i.e., do not claim the approved drug substance, drug product, or an approved method of use), the patent would no longer be eligible for listing in the Orange Book. In such a case, the patent must be withdrawn by Pfizer and any pediatric exclusivity that attached to the patent will no longer serve as a barrier to ANDA approval. If, on the other hand, one or more of the remaining claims claims the approved drug substance, approved drug product, or approved method of use, the patent can remain properly listed until the expiration of pediatric exclusivity. In such a case, the patent should remain in the Orange Book and the remaining unapproved ANDAs are potentially subject to Pfizer's pediatric exclusivity.

It is not clear to FDA, based on the current record, whether the remaining claims of the '303 patent would provide a valid basis to list the patent if claims 1-3 are invalid. Moreover, FDA has long maintained that its has neither the expertise nor the resources to resolve patent issues and does not make independent determinations of the merits or applicability of patent claims. 59 Fed. Reg. 50338, 50342-43, 50345, 50349, 50352 (1994). FDA's ministerial role in the listing process has been upheld. *Apotex, Inc. v. Thompson*, 347 F.3d 1335, 1348-49 (Fed. Cir. 2003); *aaiPharma, Inc. v. Thompson*, 296 F.3d 227, 243 (4th Cir. 2002), *cert. denied*, 538 U.S. 923 (2003); *Alphapharm Pty Ltd. v. Thompson*, 330 F. Supp 2d 1, 7-8 (D.D.C. 2004).

Because FDA lacks both relevant information and expertise to resolve this issue based on the information before it, in the absence of further judicial or other action clarifying the status of the patent, FDA will assume the '303 patent remains validly listed. If one or more of the remaining claims qualified the patent for listing as of the time the patent expired, all of the remaining ANDAs who had paragraph III and paragraph IV certifications at the time of patent expiry are required to maintain their paragraph II certifications. As such, those ANDAs will be blocked by Pfizer's pediatric exclusivity.

### 4. Mylan's Eligibility for 180-day Exclusivity Does Not Extend Beyond the Expiration of the Patent.

Mylan asserts that regardless of the applicability of pediatric exclusivity, all of the remaining ANDAs are subject to Mylan's 180-day exclusivity, which, if viable, would expire on September 19, 2007. Most commenters assert that it is well settled that 180-day exclusivity does not extend beyond the expiration of the patent. See, e.g., Apotex Comments at 8; Teva Comments at 6-7. Although Mylan acknowledges FDA's longstanding position that 180-day exclusivity expires with the patent, Mylan urges FDA to change that position, at least in the circumstances here, where the 180-day exclusivity has been triggered and begun to run before the patent expires.

By the terms of the statute, when a listed patent expires, a paragraph IV certification is no longer accurate. In these circumstances, the statute and FDA's regulations require ANDA applicants to change from a paragraph IV certification stating that the patent "is invalid or will not be infringed" to a paragraph II certification stating "that such patent has expired." 21 U.S.C. § 355(j)(2)(A)(vii)(II),(IV); 21 C.F.R. § 314.94(a)(12)(viii)(C) ("an applicant shall amend a submitted certification if, at any time before the effective date of the approval of the application, the applicant learns that the submitted certification is no longer accurate"). In cases where an applicant neglects to amend its certification to a paragraph II certification after a patent expires, FDA will treat it as having done so. This approach was upheld in *Dr. Reddy's Laboratories, Inc. v. Thompson*, 302 F. Supp. 2d 340 (D.N.J. 2003) and *Ranbaxy Labs., Ltd. v. FDA*, 307 F. Supp. 2d 15 (D.D.C. 2004) *aff'd*, 2004 U.S. App. LEXIS 8311 (D.C. Cir. April 26, 2004).

As noted above, applications with paragraph II certifications are eligible for immediate effective approval; the patent ceases to be a barrier to that approval upon its expiration. 21 U.S.C. § 355(j)(2)(A)(ii); 21 U.S.C. § 355(j)(5)(B)(i)(where an applicant files a paragraph II certification, approval of the applicant's ANDA "may be made effective immediately"); 21 C.F.R. § 314.94(a)(12)(viii). Thus, consistent with the statutory language and purpose of 180-day exclusivity, FDA has consistently construed the statute to award 180-day exclusivity based upon paragraph IV certifications only to unexpired patents. See 59 Fed. Reg. 50338, 50348 (stating "a patent is deemed to be relevant [for exclusivity purposes] until the end of the term of the patent or applicable 180-day period, whichever occurs first"). Because only subsequent applicants with valid paragraph IV certifications are blocked by 180-day exclusivity, and

because paragraph IV certifications cease to be accurate once the patent expires, the patent and 180-day exclusivity based on a paragraph IV certification to that patent cease to prevent approval of subsequent ANDAs once the patent expires.[7] See *Ranbaxy Labs., Ltd.* v. *Leavitt*, 469 F.3d 120, 126 (D.C. Cir. 2006)("[T]he first generic applicant may no longer retain exclusivity when the patent has expired.").

This plain language reading of the statute effectuates the statutory goals. The 180-day exclusivity provisions were drafted to give ANDA applicants an incentive to be first to challenge a listed patent and remove that patent as a barrier to approval. Once a listed patent expires and is no longer a barrier to ANDA approval, there is no longer a need to provide an incentive to challenge it in court. Thus, an expired patent does not serve as the basis for a 180-day exclusivity award and 180-day exclusivity does not extend beyond the life of the patent.

Mylan has argued that 21 U.S.C. § 355a(k) compels the conclusion that 180-day exclusivity extends beyond the date the patent expires. See Mylan comments at 7-8. That section provides that:

> If [180-day exclusivity period] overlaps with a 6-month [pediatric exclusivity] period . . ., so that the applicant for approval of a drug under section 505(j) entitled to the 180-day period under that section loses a portion of the 180-day period to which the applicant is entitled for the drug, the 180-day period shall be extended from
> (1) the date on which the 180-day period would have expired by the number of days of overlap, if the 180-day period would, but for application of this subsection, expire after the 6-month exclusivity period; or
> (2) the date on which the 6-month exclusivity period expires, by the number of days of the overlap if the 180-day period would, but for application of this subsection, expire during the six-month exclusivity period.

21 U.S.C. § 355a(k). On its face, this section is inapplicable here because Mylan is approved and is not subject to Pfizer's pediatric exclusivity and, thus, there is no 180-day exclusivity to restore. No commenters appear to contend otherwise.

Instead, Mylan argues that, by providing, in circumstances not applicable here, that 180-day exclusivity will follow pediatric exclusivity, Congress must have been assuming that 180-day exclusivity survives patent expiration. See Mylan comments at 7-8. If Mylan were correct, then section 355a(k) would conflict with FDA's longstanding understanding of the Hatch-Waxman statutory provisions governing 180-day exclusivity, as discussed above, which FDA believes to be compelled by the plain language of the statute. Thus, Mylan is essentially arguing that section 355a(k) repealed part of the Hatch-Waxman 180-day exclusivity provisions.

For one federal statute to repeal another:

---

[7] We note that if Mylan were correct and 180-day exclusivity continued to block approvals of ANDAs with paragraph IV certifications after the patent expired (essentially ignoring the automatic switch of the certifications to paragraph II), 180-day exclusivity would block ANDAs containing paragraph IV certification but not those containing paragraph III certifications under the plain language of 21 U.S.C § 355(j)(5)(B)(iv). This would have the perverse effect of punishing applicants who took the risk of challenging a patent with a paragraph IV certification in order to remove a barrier to approval and to reward those applicants who sat back and waited for the patent to expire. This result is clearly inconsistent with the intent and logic of Hatch-Waxman. Thus, the fact that section 355(j)(5)(B)(iv) by its terms blocks only ANDAs containing paragraph IV certifications -- the only ANDA that can be approved before the expiration of an applicable patent -- indicates that Congress did not intend exclusivity to extend beyond patent expiration.

11

> [T]he intention of the legislature to repeal must be clear and manifest. . . . In
> practical terms, this "cardinal rule" means that in the absence of some affirmative
> showing of an intention to repeal, the only permissible justification for a repeal by
> implication is when the earlier and later statutes are irreconcilable.

*Tennessee Valley Auth. v. Hill*, 437 U.S. 153, 189 (1978) (citations omitted). The "irreconcilable conflict" required is a conflict

> in the sense that there is a positive repugnancy between [the two statutes] or that
> they cannot mutually coexist. It is not enough to show that the two statutes
> produce differing results when applied to the same factual situation, for that no
> more than states the problem.

*Radzanower v. Touche Ross & Co.*, 426 U.S. 148, 155 (1976) (emphasis added). Here, there is no evidence that Congress ever affirmatively indicated that it intended to repeal or change the operation of the 180-day exclusivity provision in enacting section 355a(k).

Nor can Mylan show that the 180-day provisions in Hatch-Waxman and section 355a(k) are irreconcilable because it is possible to construe them in a way that they can mutually coexist. By its terms, section 355a(k) only addresses the curtailment of exclusivity to which the applicant is otherwise "entitled." As explained above, under Hatch-Waxman, the applicant is not entitled to exclusivity after the patent expires. That means, in reconciling the statutes, that the application of section 355a(k) is limited to the situation where there is more than one patent and the two exclusivity periods are each attached to different patents. Thus, one patent may expire, and pediatric exclusivity would start to run, but the ANDA applicant could still be eligible for 180-day exclusivity on a later patent that had not yet expired. If that 180-day exclusivity period were triggered by a court decision on the later patent, it would be running at the same time the ANDA was blocked from approval by the pediatric exclusivity on the earlier patent.

Indeed, the legislative history demonstrates that Congress intended to address this narrow situation by adding 21 U.S.C. § 355a(k) to restore the exclusivity to which the ANDA applicant was entitled but which otherwise would have been lost because the pediatric exclusivity on another patent blocked final effective approval:

> The amendment gives the filer of an [ANDA] who challenges a patent no more
> and no less time to market his drug exclusively before subsequent [ANDAs] for
> the drug may be approved then it would have received but for the intervening
> period of pediatric exclusivity.
> For example, the committee understands that there may be instances in which 2
> patents on a drug are challenged in an [ANDA], and that, in subsequent litigation,
> a court holds the first patent to expire to be valid and infringed, and the second
> patent to expire to be invalid. If the section [355(b)(1), 21 U.S.C.] drug is granted
> a period of pediatric exclusivity with respect to the first patent, and if the court
> decision, which triggers the beginning of ANDA exclusivity, falls 60 days before
> that period of pediatric exclusivity begins (that is, 60 days before the first patent
> will expire), the ANDA exclusivity will overlap with the pediatric exclusivity for 120
> days. In the absence of the pediatric exclusivity, the holder of the [ANDA] would
> enjoy at most 120 days to market its drug before a subsequent [ANDA] for the
> drug could be approved. But for the amendment, because of pediatric
> exclusivity, the holder of the [ANDA] would enjoy no ANDA exclusivity, because

12

the first 120 days of the pediatric exclusivity period would run over the last 120 days of its ANDA exclusivity period.

S. Rep. No. 107-79, at 6-7 (2001); see also *id.* at 14 ("[Section 9 of BPCA] specifies that, when the pediatric exclusivity period for a drug overlaps with a period of ANDA exclusivity for the drug, the period of ANDA exclusivity is extended by an amount necessary to ensure that the holder of ANDA exclusivity enjoys the same possibility of exclusive commercial marketing as that the holder would have enjoyed in the absence of pediatric exclusivity, no more and no less."). This language confirms both that Congress intended only the limited application of section 355a(k) and that this section can be construed consistently with the Hatch-Waxman exclusivity provisions. Thus, "[b]ecause the statutes are not irreconcilable and there is no convincing evidence that the later act was intended as a substitute, . . . . a repeal by implication did not occur." *United States v. Williams*, 216 F.3d 1099, 1102 (D.C. Cir. 2000).

Furthermore, the statute also does not distinguish, as Mylan proposes, between situations in which 180-day exclusivity has been awarded and triggered at the time of patent expiry and cases in which it has not. See Mylan Comments at 12-14. Although Mylan correctly notes that the obligation to update a patent certification only applies before the effective date of approval, *id.* at 14; Mylan's Petition for Stay at 3, and thus approved applications (such as Mylan's) have no continuing obligation to update their patent certifications, this does not mean that 180-day exclusivity for an approved application extends beyond the date the patent expires. On the contrary, if all of the remaining unapproved applications change to a paragraph II certification when the patent expires, as they are required to do, they will no longer be applications containing paragraph IV certifications that are blocked by the previous application containing a paragraph IV certification. This is the case regardless of whether Mylan's application, which has been approved, is also required to change its certification. As a result, because all unapproved applications must change to a paragraph II certification when the patent expires, and applications with paragraph II certifications are not blocked by 180-day exclusivity, for all intents and purposes, Mylan's 180-day exclusivity will terminate with the expiration of the patent regardless of the fact that Mylan itself is no longer obligated to change its certification upon patent expiry.

Conclusion

In sum, FDA has concluded:

- All of the unapproved ANDAs are currently blocked by Pfizer's pediatric exclusivity.
- If and when the mandate effectuating the panel's March 22 decision issues in the *Apotex* case, Apotex's ANDA will not be blocked by Pfizer's pediatric exclusivity.
- FDA cannot determine on the current record whether other ANDAs will continue to be blocked by pediatric exclusivity at that time.
- Mylan's 180-day marketing exclusivity terminated when the patent expired.

If you have any questions regarding this letter please contact Cecelia Parise, Regulatory Policy Advisor to the Director, Office of Generic Drugs at 240-276-9319

Sincerely,

Gary J. Buehler
Director
Office of Generic Drugs
Center for Drug Evaluation and Research
Food and Drug Administration

cc:  Pfizer Inc.

14

# Exhibit C

*Declaration of Shannon M. Bloodworth*
*In Support of Plaintiffs' Application for a Preliminary Injunction*

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| PFIZER INC., <br><br> Plaintiff and Counterclaim <br> Defendant, <br><br> v. <br><br> APOTEX INC., f/k/a TORPHARM, INC., <br><br> Defendant and Counterclaim <br> Plaintiff. | No. 03C 5289 <br><br> The Honorable James M. Rosenbaum |

## FINAL JUDGMENT

This action having come to trial before the Court, Honorable James M. Rosenbaum,

Chief Judge, United States District Court for the District of Minnesota, presiding; the issues

having been heard and a decision having been rendered on January 18, 2006;

**IT IS ORDERED AND ADJUDGED** this ___ day of January, 2006, for the reasons set

forth in the Court's decision read into the record on January 18, 2006, that Judgment shall be

entered in favor of plaintiff Pfizer Inc. ("Pfizer") and against defendant Apotex Inc., f/k/a

Torpharm, Inc. ("Apotex") on Pfizer's claims that Apotex has infringed claims 1-3 of United

States Patent No. 4,879,303 (the"'303 patent"); and it is further,

**ORDERED AND ADJUDGED** that Judgment shall be entered in favor of Pfizer and

against Apotex on all counterclaims alleging, and seeking declarations of noninfringement,

invalidity, or unenforceability of the '303 patent, and it is further,

**ORDERED** that pursuant to 35 U.S.C. § 271(e)(4)(A), the effective date of any approval of Apotex's Abbreviated New Drug Application No. 76-719 shall be a date which is not earlier than the date of expiration of the '303 patent (March 25, 2007, with attached six months of pediatric exclusivity ending on September 25, 2007, to which Pfizer is entitled); and it is further,

**ORDERED** that pursuant to 35 U.S.C. § 271(e)(4)(B), Apotex, its officers, agents, servants, employees and attorneys, and those persons in active concert or participation with it are enjoined until the date of expiration of the '303 patent (March 25, 2007, with attached six months of pediatric exclusiviity ending on September 25, 2007, to which Pfizer is enttitled) from engaging in the manufacture, use, offer to sell, or sale within the United States, or importation into the United States, of any product comprising amlodipine besylate covered by, or the use of which is covered by claims 1-3 of the '303 patent.

_____
United States District Judge

# Exhibit D

*Declaration of Shannon M. Bloodworth*
*In Support of Plaintiffs' Application for a Preliminary Injunction*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **PFIZER, INC.,** | ) |
| | ) |
| **Plaintiff and** | ) |
| **Counterclaim Defendant,** | ) |
| | ) |
| **v.** | )   **02: 02cv1628** |
| **MYLAN LABORATORIES, INC. and** | ) |
| **MYLAN PHARMACEUTICALS, INC.,** | ) |
| | ) |
| | ) |
| **Defendants and** | ) |
| **Counterclaim Plaintiffs.** | ) |

## <u>JUDGMENT</u>

AND NOW, this 27th day of February, 2007, it is hereby ORDERED, ADJUDGED AND

DECREED that judgment is entered in favor of Pfizer, Inc. and against Mylan Laboratories, Inc.

and Mylan Pharmaceuticals, Inc.


BY THE COURT:


s/ Terrence F. McVerry
United States District Court Judge

cc:    All Counsel of Record

# Exhibit E

*Declaration of Shannon M. Bloodworth*
*In Support of Plaintiffs' Application for a Preliminary Injunction*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **PFIZER, INC.,** | ) |
| | ) |
| **Plaintiff and** | ) |
| **Counterclaim Defendant,** | ) |
| | ) |
| **v.** | )     **02:  02cv1628** |
| **MYLAN LABORATORIES, INC. and** | ) |
| **MYLAN PHARMACEUTICALS, INC.,** | ) |
| | ) |
| | ) |
| **Defendants and** | ) |
| **Counterclaim Plaintiffs.** | ) |

### AMENDED JUDGMENT

AND NOW, this 16th day of March, 2007, it is **ORDERED, ADJUDGED AND**

**DECREED** that, for the reasons set forth in the Court's findings of fact and conclusions of law,

Judgment shall be entered in favor of Plaintiff Pfizer Inc. and against Defendants Mylan

Laboratories, Inc. and Mylan Pharmaceuticals, Inc. (herein collectively "Mylan") on Pfizer's

claims that Mylan has infringed claims 1-3 of United States Patent No. 4,879,303 (the "303

patent"); and it is further,

**ORDERED, ADJUDGED AND DECREED** that Judgment shall be entered in favor of

Pfizer and against Mylan dismissing Mylan's counterclaims which alleged and sought

declarations of noninfringement, invalidity, or unenforceability of the '303 patent; and it is

further,

**ORDERED, ADJUDGED AND DECREED** that, pursuant to the provisions of 35

U.S.C. §271(e)(4)(A), the effective date of any approval of Mylan's Abbreviated New Drug

Application No. 76-418, seeking FDA approval of amlodipine besylate tablets, 2.5, 5 and 10 mg

dosage strengths, shall be a date which is not earlier than the date of expiration of the '303 patent (March 25, 2007); and it is further,

**ORDERED, ADJUDGED AND DECREED** that, pursuant to the provisions of 35 U.S.C. §271(e)(4)(B), Mylan, its officers, agents, servants, employees and attorneys, and those persons in active concert or participation with Mylan are enjoined until the date of expiration of the '303 patent (March 25, 2007), from engaging in the commercial manufacture, use, offer to sell, or sale within the United States, or importation into the United States, of any product comprising the chemical compound amlodipine besylate covered by, or the sale or use of which is covered by claims 1-3 of the '303 patent.

BY THE COURT:

s/ Terrence F. McVerry
United States District Court Judge

cc:     All Counsel of Record

# Exhibit F

*Declaration of Shannon M. Bloodworth*
*In Support of Plaintiffs' Application for a Preliminary Injunction*

NOTE: This order is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2007-1194

PFIZER INC.,

Plaintiff-Appellee,

v.

MYLAN LABORATORIES, INC. and MYLAN PHARMACEUTICALS, INC.,

Defendants-Appellants.

ON MOTION

Before BRYSON, <u>Circuit Judge</u>, FRIEDMAN, <u>Senior Circuit Judge</u>, and PROST, <u>Circuit Judge</u>.

PROST, <u>Circuit Judge</u>.

## O R D E R

Mylan Laboratories, Inc. and Mylan Pharmaceuticals, Inc. (Mylan) move for a stay, pending appeal, of the amended judgment of the United States District Court for the Western District of Pennsylvania that ordered that the effective date of any approval of Mylan's abbreviated new drug application shall be a date not earlier than the date of expiration of the patent. Pfizer Inc. opposes. Mylan replies. Mylan also moves for leave to "append" to its motion certain news articles that are not part of the district court record. The parties also submit responses to the court's March 23, 2007 order. Pfizer moves to lift the court's temporary stay of the district court's judgment and order.

To obtain a stay, pending appeal, a movant must establish a strong likelihood of success on the merits or, failing that, nonetheless demonstrate a substantial case on the merits provided that the harm factors militate in its favor. <u>Hilton v. Braunskill</u>, 481 U.S.

770, 778 (1987). In deciding whether to grant a stay, pending appeal, this court "assesses the movant's chances of success on the merits and weighs the equities as they affect the parties and the public." E. I. du Pont de Nemours & Co. v. Phillips Petroleum Co., 835 F.2d 277, 278 (Fed. Cir. 1987). See also Standard Havens Prods. v. Gencor Indus., 897 F.2d 511 (Fed. Cir. 1990).

Upon consideration thereof,

IT IS ORDERED THAT:

(1)    Mylan's motion for a stay, pending appeal, is granted.

(2)    Mylan's motion for leave to append is denied.

(3)    Pfizer's motion to lift the temporary stay is denied.

FOR THE COURT

MAR 2 6 2007

_____
Date

_____
Sharon Prost
Circuit Judge

cc:    Richard G. Greco, Esq.
       David J. Harth, Esq.

s8

FILED
U.S. COURT OF APPEALS FOR
THE FEDERAL CIRCUIT

MAR 2 6 2007

JAN HORBALY
CLERK

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

717 MADISON PLACE, N.W.
WASHINGTON, D.C. 20439

JAN HORBALY
CLERK

TELEPHONE: (202) 633-6550
FAX: (202) 633-9623



## FAX MATERIAL COVER SHEET

TO: DAVID J. HARTH

FROM: CLERK'S OFFICE

This is page 1 of 3 pages being transmitted.

Day sent: MARCH 26, 2007

Message/Instructions:

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *
FOR QUESTIONS, CALL (202) 633-6550
FOR RETURN FAX, DIAL (202) 633-9623
* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

# Exhibit G

*Declaration of Shannon M. Bloodworth*
*In Support of Plaintiffs' Application for a Preliminary Injunction*



**MYLAN PHARMACEUTICALS INC**
781 Chestnut Ridge Road • P.O. Box 4310 • Morgantown, West Virginia 26504-4310 U.S.A. • (304) 599-2595

March 23, 2007

## GENERAL CORRESPONDENCE

Office of Generic Drugs, CDER, FDA
Gary J. Buehler, Director
Document Control Room
Metro Park North II
7500 Standish Place, Room 150
Rockville, MD 20855-2773

> RE:  AMLODIPINE BESYLATE TABLETS, 2.5MG, 5MG AND 10MG
> ANDA 76-418
> Notification of Commencement of Commercial Marketing

Dear Mr. Buehler:

Reference is made to the Abbreviated New Drug Application (ANDA) identified above and to the Agency's letter dated October 3, 2005 notifying us that our application was approved. The October 3rd approval letter requested that Mylan submit correspondence stating the date our 180 days of market exclusivity begins to run since Mylan was the first ANDA applicant to submit a substantially complete ANDA containing a paragraph IV certification. A copy of the October 3, 2005 approval letter is provided in Attachment A for your reference.

The purpose of this correspondence is to provide FDA with notification that Mylan commenced commercial marketing of Amlodipine Beyslate Tablets, 2.5mg, 5mg and 10mg on March 23, 2007. We are also requesting that FDA's 'Orange Book' be updated accordingly.

This amendment is submitted in duplicate. Should you require additional information or have any questions regarding this amendment, please contact the undersigned at (304) 599-2595, ext. 6551 or via facsimile at (304) 285-6407.

Sincerely,

S. Wayne Talton
Vice President
Regulatory Affairs

SWT/dn

Enclosures

Desk Copy:  Mr. Martin Shimer, Branch Chief
            Regulatory Support

| Department—Fax Numbers | | Information Systems | (304) 285-6404 | Purchasing | (304) 598-5401 |
| Accounting | | Legal Services | (800) 848-0463 | Quality Assurance | (304) 598-5407 |
| Administration | (304) 599-7284 | | (304) 598-5408 | Quality Control | (304) 598-5409 |
| Business Development | (304) 598-5419 | Maintenance & Engineering | (304) 598-5411 | Regulatory Affairs | (304) 285-6407 |
| Corporate Services | (304) 285-6482 | Medical Unit | (304) 598-5445 | Research & Development | (304) 285-6419 |
| Human Resources | (304) 598-5406 | Product Development | (304) 285-6411 | Sales & Marketing | (304) 598-3232 |

\\Project\ANDA\AMLODIPINE-BESYLATE\General Correspondence\GC0307.doc

MYLAN PHARMACEUTICALS INC.

**SIGNED FORM FDA 356h**

**DEPARTMENT OF HEALTH AND HUMAN SERVICES**
FOOD AND DRUG ADMINISTRATION

# APPLICATION TO MARKET A NEW DRUG, BIOLOGIC, OR AN ANTIBIOTIC DRUG FOR HUMAN USE

*(Title 21, Code of Federal Regulations, Parts 314 & 601)*

Form Approved: OMB No. 0910-0430
Expiration Date: April 30, 2009
See OMB Statement on page 2.

**FOR FDA USE ONLY**

APPLICATION NUMBER

## APPLICANT INFORMATION

| NAME OF APPLICANT | DATE OF SUBMISSION |
|---|---|
| MYLAN PHARMACEUTICALS INC. | March 23, 2007 |

| TELEPHONE NO. *(include Area Code)* | FACSIMILE *(FAX)* Number *(include Area Code)* |
|---|---|
| (304) 599-2595 | (304) 285-6407 |

| APPLICANT ADDRESS *(Number, Street, City, State, Country, ZIP Code or Mail Code, and U.S. License number if previously issued):* | AUTHORIZED U.S. AGENT NAME & ADDRESS *(Number, Street, State, ZIP Code, telephone & FAX number)* IF APPLICABLE |
|---|---|
| 781 Chestnut Ridge Road<br>P.O. Box 4310<br>Morgantown, WV 26504-4310 | N/A |

## PRODUCT DESCRIPTION

| NEW DRUG OR ANTIBIOTIC APPLICATION NUMBER, OR BIOLOGICS LICENSE APPLICATION NUMBER *(if previously issued)* | 76-418 |
|---|---|

| ESTABLISHED NAME *(e.g., Proper name, USP/USAN name)* | PROPRIETARY NAME *(trade name)* IF ANY |
|---|---|
| Amlodipine Besylate Tablets | N/A |

| CHEMICAL/BIOCHEMICAL/BLOOD PRODUCT NAME *(if any)* | CODE NAME *(if any)* |
|---|---|
| (R.S.) 3-ethyl 5-methyl-2-(2-aminoethoxymethyl)-4-(2-chlorophenyl)-1,4-dihydro - 6-methyl-3,5-pyridinedicarboxylate benzenesulphonate | N/A |

| DOSAGE FORM: | STRENGTHS: | ROUTE OF ADMINISTRATION: |
|---|---|---|
| Tablets | 2.5mg, 5mg and 10mg | Oral |

**(PROPOSED) INDICATION(S) FOR USE:**

Indicated for the treatment of hypertension, chronic stable angina and the treatment of confirmed or suspected vasospastic angina.

## APPLICATION DESCRIPTION

**APPLICATION TYPE**
*(check one)*  ☐ NEW DRUG APPLICATION (CDA, 21 CFR 314.50)  ☒ ABBREVIATED NEW DRUG APPLICATION (ANDA, 21 CFR 314.94)

☐ BIOLOGICS LICENSE APPLICATION (BLA, 21 CFR Part 601)

| IF AN NDA, IDENTIFY THE APPROPRIATE TYPE | ☐ 505 (b)(1) | ☐ 505 (b)(2) |
|---|---|---|

IF AN ANDA, OR 505(b)(2), IDENTIFY THE REFERENCE LISTED DRUG PRODUCT THAT IS THE BASIS FOR THE SUBMISSION

| Name of Drug | Norvasc® | Holder of Approved Application | Pfizer |
|---|---|---|---|

**TYPE OF SUBMISSION** *(check one)*  ☐ ORIGINAL APPLICATION    ☐ AMENDMENT TO A PENDING APPLICATION    ☐ RESUBMISSION

☐ PRESUBMISSION    ☐ ANNUAL REPORT    ☐ ESTABLISHMENT DESCRIPTION SUPPLEMENT    ☐ EFFICACY SUPPLEMENT

☐ LABELING SUPPLEMENT    ☐ CHEMISTRY MANUFACTURING AND CONTROLS SUPPLEMENT    ☒ OTHER

IF A SUBMISSION OF PARTIAL APPLICATION, PROVIDE LETTER DATE OF AGREEMENT TO PARTIAL SUBMISSION: _____

| IF A SUPPLEMENT, IDENTIFY THE APPROPRIATE CATEGORY | ☐ CBE | ☐ CBE-30 | ☐ Prior Approval (PA) |
|---|---|---|---|

**REASON FOR SUBMISSION**
Notification of Commencement of Commercial Marketing

**PROPOSED MARKETING STATUS** *(check one)*  ☒ PRESCRIPTION PRODUCT (Rx)    ☐ OVER THE COUNTER PRODUCT (OTC)

| NUMBER OF VOLUMES SUBMITTED | 1 | THIS APPLICATION IS | ☐ PAPER | ☐ PAPER AND ELECTRONIC | ☐ ELECTRONIC |
|---|---|---|---|---|---|

**ESTABLISHMENT INFORMATION (Full establishment information should be provided in the body of the Application.)**
Provide locations of all manufacturing, packaging and control sites for drug substance and drug product (continuation sheets may be used if necessary). Include name, address, contact, telephone number, registration number (CFN), DMF number, and manufacturing steps and/or type of testing (e.g. Final dosage form, Stability testing) conducted at the site. Please indicate whether the site is ready for inspection or, if not, when it will be ready.

N/A

**Cross References** (list related License Applications, INDs, NDAs, PMAs, 510(k)s, IDEs, BMFs, and DMFs referenced in the current application)

N/A

| | This application contains the following items: *(Check all that apply)* | |
|---|---|---|
| ☐ | 1. Index | |
| ☐ | 2. Labeling *(check one)*    ☐ Draft Labeling    ☐ Final Printed Labeling | |
| ☐ | 3. Summary (21 CFR 314.50 (c)) | |
| ☐ | 4. Chemistry section | |
| ☐ | A.    Chemistry, manufacturing, and controls information (e.g., 21 CFR 314.50(d)(1); 21 CFR 601.2) | |
| ☐ | B.    Samples (21 CFR 314.50 (e)(1); 21 CFR 601.2 (a)) (Submit only upon FDA's request) | |
| ☐ | C.    Methods validation package (e.g., 21 CFR 314.50(e)(2)(i); 21 CFR 601.2) | |
| ☐ | 5. Nonclinical pharmacology and toxicology section (e.g., 21 CFR 314.50(d)(2); 21 CFR 601.2) | |
| ☐ | 6. Human pharmacokinetics and bioavailability section (e.g., 21 CFR 314.50(d)(3); 21 CFR 601.2) | |
| ☐ | 7. Clinical Microbiology (e.g., 21 CFR 314.50(d)(4)) | |
| ☐ | 8. Clinical data section (e.g., 21 CFR 314.50(d)(5); 21 CFR 601.2) | |
| ☐ | 9. Safety update report (e.g., 21 CFR 314.50(d)(5)(vi)(b); 21 CFR 601.2) | |
| ☐ | 10. Statistical section (e.g., 21 CFR 314.50(d)(6); 21 CFR 601.2) | |
| ☐ | 11. Case report tabulations (e.g., 21 CFR 314.50(f)(1); 21 CFR 601.2) | |
| ☐ | 12. Case report forms (e.g., 21 CFR 314.50 (f)(2); 21 CFR 601.2) | |
| ☐ | 13. Patent information on any patent which claims the drug (21 U.S.C. 355(b) or (c)) | |
| ☐ | 14. A patent certification with respect to any patent which claims the drug (21 U.S.C. 355 (b)(2) or (j)(2)(A)) | |
| ☐ | 15. Establishment description (21 CFR Part 600, if applicable) | |
| ☐ | 16. Debarment certification (FD&C Act 306 (k)(1)) | |
| ☐ | 17. Field copy certification (21 CFR 314.50 (l)(3)) | |
| ☐ | 18. User Fee Cover Sheet (Form FDA 3397) | |
| ☐ | 19. Financial Information (21 CFR Part 54) | |
| ☒ | 20. OTHER *(Specify)*    **Notification of Commencement of Commercial Marketing** | |

**CERTIFICATION**

I agree to update this application with new safety information about the product that may reasonably affect the statement of contraindications, warnings, precautions, or adverse reactions in the draft labeling. I agree to submit safety reports as provided for by regulation or as requested by FDA. If this application is approved, I agree to comply with all applicable laws and regulations that apply to approved applications, including, but not limited to the following:

  1. Good manufacturing practice regulations in 21 CFR Parts 210, 211 or applicable regulations, Parts 606, and/or 820.
  2. Biological establishment standards in 21 CFR Part 600.
  3. Labeling regulations in 21 CFR Parts 201, 606, 610, 660, and/or 809.
  4. In the case of a prescription drug or biological product, prescription drug advertising regulations in 21 CFR Part 202.
  5. Regulations on making changes in application in FD&C Act section 506A, 21 CFR 314.71, 314.72, 314.97, 314.99, and 601.12.
  6. Regulations on Reports in 21 CFR 314.80, 314.81, 600.80, and 600.81.
  7. Local, state and Federal environmental impact laws.

If this application applies to a drug product that FDA has proposed for scheduling under the Controlled Substances Act, I agree not to market the product until the Drug Enforcement Administration makes a final scheduling decision.

The data and information in this submission have been reviewed and, to the best of my knowledge are certified to be true and accurate.

**Warning:** A willfully false statement is a criminal offense, U.S. Code, title 18, section 1001.

| SIGNATURE OF RESPONSIBLE OFFICIAL OR AGENT | TYPED NAME AND TITLE | DATE: |
|---|---|---|
| *S. Wayne Talton* | **S. Wayne Talton**<br>**Vice President**<br>**Regulatory Affairs** | **March 23, 2007** |

| ADDRESS *(Street, City, State, and ZIP Code)* | Telephone Number |
|---|---|
| **781 Chestnut Ridge Road, P.O. Box 4310, Morgantown, WV  26504-4310** | **(304) 599-2595** |

**Public reporting burden for this collection of information** is estimated to average 24 hours per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden to:

| Department of Health and Human Services<br>Food and Drug Administration<br>Center for Drug Evaluation and Research<br>Central Document Room<br>5901-B Ammendale Road<br>Beltsville, MD 20705-1266 | Department of Health and Human Services<br>Food and Drug Administration<br>Center for Biologics Evaluation and Research (HFM-99)<br>1401 Rockville Pike<br>Rockville, MD 20852-1448 | An agency may not conduct or sponsor, and a person is not required to respond to, a collection of information unless it displays a currently valid OMB control number. |

MYLAN PHARMACEUTICALS INC.

**AMLODIPINE BESYLATE TABLETS, 2.5MG, 5MG AND 10MG**

**ATTACHMENT A**

**APPROVAL LETTER DATED OCTOBER 3, 2005**



**DEPARTMENT OF HEALTH & HUMAN SERVICES**

ANDA 76-418



OCT 3 2005

Food and Drug Administration
Rockville MD 20857

OCT · 3 2005

Mylan Pharmaceuticals Inc.
Attention: S. Wayne Talton
          Vice President, Regulatory Affairs
781 Chestnut Ridge Road
P.O. Box 4310
Morgantown, WV  26504-4310

Dear Sir:

This is in reference to your abbreviated new drug application
(ANDA) dated May 22, 2002, submitted pursuant to section 505(j)
of the Federal Food, Drug and Cosmetic Act (Act), for Amlodipine
Besylate Tablets, 2.5 mg (base), 5 mg (base) and 10 mg (base).

Reference is also made to your amendments dated October 2, 2002;
and January 6, April 1, August 1, and August 4, 2005.

We have completed the review of this ANDA and have concluded
that the drug is safe and effective for use as recommended in
the submitted labeling. Accordingly, the ANDA is approved. The
Division of Bioequivalence has determined your Amlodipine
Besylate Tablets 2.5 mg (base), 5 mg (base), and 10 mg (base),
to be bioequivalent and therefore, therapeutically equivalent to
the listed drug, Norvasc Tablets 2.5 mg (base), 5 mg (base), and
10 mg (base), respectively, of Pfizer, Inc. (Pfizer). Your
dissolution testing should be incorporated into the stability
and quality control program using the same method proposed in
your application.

The listed drug product (RLD) referenced in your ANDA, Pfizer's
Norvasc® Tablets, is subject to periods of patent protection.
As noted in the agency's publication entitled Approved Drug
Products with Therapeutic Equivalence Evaluations (the "Orange
Book"), U.S. Patent Nos. 4,572,909 (the '909 patent) and
4,879,303 (the '303 patent) are scheduled to expire (with
pediatric exclusivity added) on January 31, 2007, and
September 25, 2007, respectively.

Your ANDA contains patent certifications under section 505(j)(2)(A)(vii)(IV) of the Act stating that both these patents are invalid, unenforceable, or will not be infringed by your manufacture, use, or sale of Amlodipine Besylate Tablets, 2.5 mg (base), 5 mg (base) and 10 mg (base), under this ANDA. Section 505(j)(5)(B)(iii) of the Act provides that approval of an ANDA shall be made effective immediately, unless an action is brought against Mylan Pharmaceuticals Inc. (Mylan) for infringement of either of the patents that were the subject of the paragraph IV certifications. This action must have been brought against Mylan prior to the expiration of 45 days from the date the notice you provided under paragraph (2)(B)(i) was received by the NDA/patent holder(s). You have notified the agency that Mylan complied with the requirements of section 505(j)(2)(B) of the Act, and that no action for infringement of the '909 patent or the '303 patent was brought against Mylan within the statutory 45-day period, which action would have resulted in a 30-month stay under section 505(j)(5)(B)(iii).[1]

With respect to 180-day generic drug exclusivity, we note that Mylan was the first ANDA applicant to submit a substantially complete ANDA with a paragraph IV certification for Amlodipine Besylate Tablets, 2.5 mg (base), 5 mg (base) and 10 mg (base). Therefore, with this approval, Mylan is eligible for 180-days of market exclusivity. This exclusivity, which is provided for under section 505(j)(5)(8)(iv) of the Act,[2] will begin to run from the earlier of the commercial marketing or court decision dates identified in section 505(j)(5)(B)(iv). Please submit correspondence to the ANDA informing the agency of the date the exclusivity begins to run.

Under section 506A of the Act, certain changes in the conditions described in this ANDA require an approved supplemental application before the change may be made.

---

[1] Because information on the '909 and '303 patents was submitted before August 18, 2003, this reference to section 505(j)(5)(B)(iii) of the Act is to that section of the Act as in effect prior to December 8, 2003, when the Medicare Prescription Drug, Improvement and Modernization Act (MMA)(Public Law 108-173) was enacted. See MMA § 1101(c)(3). The Agency is aware that Pfizer initiated patent litigation against Mylan shortly after expiration of the statutory 45-day period.

[2] Because your ANDA was filed before the date of enactment of the Medicare Prescription Drug, Improvement and Modernization Act (MMA)(Public Law 108-173) on December 8, 2003, this reference to the 180-day exclusivity provision is to the section of the Act as in effect prior to December 8, 2003. See MMA § 1102(b)(1).

Post-marketing reporting requirements for this ANDA are set forth in 21 CFR 314.80-81 and 314.98.  The Office of Generic Drugs should be advised of any change in the marketing status of this drug.

Promotional materials may be submitted to FDA for comment prior to publication or dissemination.  Please note that these submissions are voluntary.  If you desire comments on proposed launch promotional materials with respect to compliance with applicable regulatory requirements, we recommend you submit, in draft or mock-up form, two copies of both the promotional materials and package insert(s) directly to:

    Food and Drug Administration
    Center for Drug Evaluation and Research
    Division of Drug Marketing, Advertising, and Communications
    5901-B Ammendale Road
    Beltsville, MD 20705

We call your attention to 21 CFR 314.81(b)(3) which requires that materials for any subsequent advertising or promotional campaign be submitted to our Division of Drug Marketing, Advertising, and Communications (HFD-40) with a completed Form FDA 2253 at the time of their initial use.

                    Sincerely yours,

                    Gary Buehler
                    Director
                    Office of Generic Drugs
                    Center for Drug Evaluation and Research

# Exhibit H

*Declaration of Shannon M. Bloodworth*
*In Support of Plaintiffs' Application for a Preliminary Injunction*

**DEPARTMENT OF HEALTH & HUMAN SERVICES**

Food and Drug Administration
Rockville, MD  20857

ANDA 76-418

Mylan Pharmaceuticals Inc.

Attention:  S. Wayne Talton
781 Chestnut Ridge Road
P.O. Box 4310
Morgantown, WV  26504-4310

Dear Mr. Talton:

This letter is in reference to your approved ANDA for amlodipine besylate tablets.  As you may be aware, on March 26, 2007, Mylan Laboratories, Inc. filed a complaint against  the Food and Drug Administration ("FDA") seeking to enjoin FDA from immediately approving abbreviated new drug applications for amlodipine besylate products.  *Mylan Laboratories, Inc. v. Michael Leavitt*, CA No. 07-579 (RMU) (D.D.C.).  Because the recent developments in the amlodipine besylate patent litigation (in particular, the Federal Circuit's March 22, 2007 decision in *Pfizer Inc. v Apotex, Inc.*, No. 2006-1261 (Fed. Cir. March 22, 2007)) presented several regulatory issues that need to be resolved before any applications could be approved, FDA informed the court (in CA No. 07-579) that it planned to solicit comments from interested parties before it reached decisions on the matters that Mylan sought to enjoin.  The court has memorialized FDA's proposal, and enjoined the agency from implementing its decisions once made, until 5:00 pm on April 13, 2007, to allow the court the opportunity to review the FDA decisions.  *Mylan Laboratories*, CA No. 07-579, Order (March 26, 2007).

The FDA is considering the following questions.  Should you wish to comment on them, your response will be posted at http://www.fda.gov/cder/ogd/index.htm. Other submissions relevant to these issues will also be posted at this address.  Please send your response, if any, by close of business on April 4, 2007 to:

> Food and Drug Administration
> Office of Generic Drugs, HFD-600
> Attention:  Gary J. Buehler, Director
> 7519 Standish Place
> Rockville, MD  20855

1.       What date controls FDA's giving effect to the decision in *Pfizer Inc. v Apotex, Inc.*, No. 2006-1261 (Fed. Cir. March 22, 2007) ("*Apotex* decision") holding that Pfizer's patent 4,879,303 ("the '303 patent") is invalid?  Can FDA treat the '303 patent as invalid as of March 22, 2007, or must FDA await the issuance of the mandate?  Is the answer the same for all purposes, that is, for determining the applicability of pediatric exclusivity, the triggering of 180-day exclusivity, and the eligibility of other ANDA applicants for final approval?

2.      If FDA must await the issuance of the mandate, does pediatric exclusivity bar approval of all unapproved ANDAs in the meantime?

3.      If and when the *Apotex* decision is implemented, what is the effect of the decision that the '303 patent is invalid on the obligation of an ANDA applicant to change its certification?  Must Pfizer delist its patent, so that certifications can be withdrawn?  Or can FDA treat an invalid patent as delisted as a matter of law, and presume the withdrawal of the certifications?  Or must the ANDA applicants file paragraph II certifications stating that the '303 patent has expired?

4.      If and when the *Apotex* decision is implemented and the patent is treated as invalid, does pediatric exclusivity attach to the '303 patent with respect to any unapproved ANDAs?  Does it matter whether the ANDA applicant filed a paragraph III or IV certification before patent expiration?

5.      Does 180-day exclusivity triggered before a patent expires continue to bar approvals of other ANDAs after the patent expires, even if other ANDA applicants change their certifications to paragraph II or withdraw their certifications altogether?

We note that several citizen petitions have been submitted that also raise issues relevant to approval of ANDAs for products containing amlodipine.  The petition docket numbers are: 2007P-0116, submitted by Mylan Pharmaceuticals, Inc; 2007P-0110 and 2007P-0111 submitted by Pfizer Inc.  If you believe your comments are also relevant to consideration of those petitions, you may submit your comments to the petitions dockets as well.  In addition, FDA may consider relevant comments received in this context when answering the petitions.

Thank you for your consideration of these questions.  If you have any questions regarding this letter, please contact Cecelia Parise, Regulatory Policy Advisor to the Director, Office of Generic Drugs, at 240-276-9310.

Sincerely,


Gary J. Buehler
Director
Office of Generic Drugs
Center for Drug Evaluation and Research

**-------------------------------------------------------------------------------------------------------**
**This is a representation of an electronic record that was signed electronically and this page is the manifestation of the electronic signature.**
**-------------------------------------------------------------------------------------------------------**

```
 /s/
---------------------
Gary Buehler
3/28/2007 10:39:51 AM
```

# Exhibit I

*Declaration of Shannon M. Bloodworth*
*In Support of Plaintiffs' Application for a Preliminary Injunction*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

PFIZER INC.,

          Plaintiff,

vs.

TORPHARM, INC.,

          Defendant.

**F I L E D**

APR 1 9 2004

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

)
)
)
)
)
)
)
)

No. 03C 5289

The Honorable Judge Joan H. Lefkow

Magistrate Judge Mason

**NOTICE OF MOTION**

TO:    Michael B. Solow, **Kaye Scholer LLP**, 70 W. Madison St., Suite 4100, Chicago,
       IL 60602
       Richard G. Greco/Betty Ryberg, **Kaye Scholer LLP**, 425 Park Avenue, New
       York, NY 10022

      PLEASE TAKE NOTICE that on **Thursday, April 22, 2004, at 9:30 a.m.** or as
soon thereafter as counsel may be heard, the undersigned shall appear before the
Honorable Judge Joan Humphrey Lefkow, or other such judge as may be sitting in her
place and stead, in Courtroom 1925 of the Dirksen Federal Building, 219 South Dearborn
Street, Chicago, Illinois, and shall then and there present **Defendant Torpharm, Inc.'s
Motion to Compel Discovery and for Sanctions and Incorporated Memorandum in
Support Thereof,** a copy of which is attached and served upon you.

Dated: April 19, 2004

                           _Richard B. Breisblatt_
                           A. Sidney Katz (01411853)
                           Robert B. Breisblatt (00287946)
                           Steven E. Feldman (06229228)
                           WELSH & KATZ, LTD.
                           120 S. Riverside Plaza — 22nd Floor
                           Chicago, IL 60606
                           (312) 655-1500

                           Attorneys for Defendant, Torpharm, Inc.

IN THE UNITED STATES DISTRICT COURT
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
EASTERN DIVISION

PFIZER, INC.

*Plaintiff and* **F I L E D**    Civil Action No.: 03 C 5289
*Counterclaim-Defendant,*
APR **1 9** 2004    The Honorable Judge Joan H.
v.                                   Lefkow

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT
TORPHARM, INC.

Magistrate Judge Mason

*Defendant and*
*Counterclaim-Plaintiff.*

## DEFENDANT'S MOTION TO COMPEL DISCOVERY AND FOR SANCTIONS
## AND INCORPORATED MEMORANDUM IN SUPPORT THEREOF

Defendant Torpharm moves pursuant to Federal Rules of Civil Procedure 26 and 37

for an order compelling Plaintiff, Pfizer, Inc. to produce all expert reports and supporting

documents exchanged by Pfizer, Inc. (Pfizer) and Mylan Laboratories (Mylan) in *Pfizer, Inc.*

*v. Mylan Laboratories, et al.,* Civil No. 02-CV-1628, Western District of Pennsylvania

(Mylan case) on the issues of the validity or unenforceability of U.S. Patent No. 4,879,303,

the patent in suit here.

These documents fall within the scope of several of Torpharm's discovery requests

served on Pfizer back on September 22, 2003, and are clearly discoverable under Fed. R. Civ.

P. 26(b)(1), which permits discovery of

> *"any matter, not privileged,* that is relevant to the claim or defense of
> any party . . . reasonably calculated to lead to the discovery of
> admissible evidence...."* [emphasis added]

For example, Document Production Request No. 3 calls for all materials provided to

Mylan Laboratories (Mylan) in *Pfizer, Inc. v. Mylan Laboratories, et al.,* Civil No. 02-CV-

1628, Western District of Pennsylvania (Mylan case). Production Request Nos. **9-16** seek, *inter alia,* <u>all documents</u> concerning U.S. Patents 4,572,909 and 4,879,303 ('909 and '303 patents, respectively), explicitly inclusive of any investigations and opinions on validity, enforcement, or infringement of the '303 patent at issue. <u>See</u> **EXHIBIT A**.

Not surprisingly, Pfizer does not dispute that the Mylan reports and associated supporting documents are discoverable, merely that those reports need not be produced at this time. Pfizer maintains the documents need not be produced until the Expert Reports in this case are due under the Court's Scheduling Order, attached as **EXHIBIT B**. However, Torpharm is not requesting reports prepared for <u>this</u> case, *Pfizer Inc. v. Torpharm, Inc.*, which is what the Court's discovery Order addresses. Rather, the documents that Torpharm seeks are like any other discoverable documents in Pfizer's possession. Thus, Pfizer's basis for withholding these discoverable documents is untenable.

Pfizer also has professed concern that Torpharm will somehow gain a tactical advantage if the Mylan materials are produced now. However, it is unclear exactly what "tactical" advantage Torpharm will receive other than the ability to include additional relevant information its expert reports. The documents being requested contain Pfizer's position on infringement and validity of the '303 patent. These are the issues in this case and Torpharm is entitled to know Pfizer's positions on these issues now. This is not about orders of proof at trial or who ultimately will prevail on issues of liability. It is about Torpharm being able to use all discoverable materials presently available and in Pfizer's possession to effectively prepare its case.

If Torpharm gets the Mylan reports at the same time as its own expert reports are due, Torpharm may then have to prepare supplemental expert reports to address whatever relevant

information is in the Mylan reports. This will force Torpharm to needlessly expend additional time and money and hamper Torpharm's case preparations.

Furthermore, nothing in the Federal Rules of Civil Procedure permits Pfizer to pick and chose when to produce relevant documents. Fact discovery closed over a month ago. There is no legitimate basis for Pfizer to withhold relevant documents in its possession needed to prepare the Defense's case.

> "Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation. To that end, either party may compel the other to disgorge whatever facts he has in his possession. The deposition-discovery procedure simply advances the stage at which the disclosure can be compelled from the time of trial to the period preceding it, thus reducing the possibility of surprise."

*Hickman v. Taylor*, 329 U.S. 495, 507 (1947).

Over the last several weeks Torpharm has tried through correspondence and phone conferences to resolve this matter without the Court's involvement. However, Pfizer has refused to yield on its position, thus necessitating this motion. See **EXHIBITS C-F.** Torpharm believes that Pfizer's position is entirely without merit and simply an effort to delay these proceedings and increase the expense of litigation. Accordingly, Torpharm requests that Pfizer be ordered to produce the Mylan expert reports immediately, together with such other relief as is appropriate under the circumstances pursuant to Fed. R. Civ. P. 37.

Dated: April 16, 2004

Respectfully submitted,

Robert Breisblatt
Steven Feldman
WELSH & KATZ, LTD.
120 South Riverside Plaza
Chicago, IL 60606
(312) 655-1500

*See Case File For Exhibits*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| MYLAN LABORATORIES INC.<br><br>and<br><br>MYLAN PHARMACUETICALS INC.<br><br>　　　　Plaintiffs,<br><br>　　　v.<br><br>MICHAEL O. LEAVITT,<br>in his official capacity as<br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>and<br><br>ANDREW C. VON ESCHENBACH, M.D.,<br>in his official capacity as<br>COMMISSIONER OF FOOD AND DRUGS,<br><br>and<br><br>UNITED STATES FOOD AND DRUG<br>ADMINISTRATION,<br><br>　　　　Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)　　Civil Action No.<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## DECLARATION OF BRIAN S. ROMAN IN SUPPORT OF MYLAN'S EMERGENCY APPLICATION FOR A TEMPORARY RESTRAINING ORDER

I, Brian S. Roman, declare as follows:

　　　　1.　　　I currently am the Vice President and General Counsel of Mylan Pharmaceuticals

Inc. ("Mylan Pharmaceuticals"), a Plaintiff in this action. Prior to being appointed to this

position, from April 2003, I was responsible for overseeing and directing all litigation involving

Mylan Pharmaceuticals' parent corporation, Mylan Laboratories Inc. ("Mylan Laboratories").

The latter included all litigation including, but not limited to, Mylan Pharmaceuticals.

2.     I submit this declaration in support of the Emergency Application for a Temporary Restraining Order filed in this Court by Mylan Pharmaceuticals and Mylan Laboratories (collectively "Mylan"). All statements contained herein as to Mylan are based upon my personal knowledge, including those relating to the organization and operation of both Mylan Pharmaceuticals and Mylan Laboratories. All statements contained herein as to persons other than Mylan, and matters unrelated to Mylan, such as the sales and marketing activities of both brand and generic pharmaceuticals, are based upon my knowledge, information and belief.

3.     Mylan Pharmaceuticals is a wholly owned subsidiary of Mylan Laboratories, which is a publicly traded company. Mylan Pharmaceuticals develops, manufactures and sells generic pharmaceuticals in the United States. This case involves Mylan Pharmaceuticals' Abbreviated New Drug Application ("ANDA") No. 76-418, for amlodipine besylate tablets, 2.5 mg (base), 5 mg (base) and 10 mg (base) ("Mylan's ANDA"). Mylan Pharmaceuticals has expended tremendous resources toward the development and approval of its amlodipine products, including millions of dollars on materials, studies, overhead and litigation. .

4.     The Food and Drug Administration ("FDA") issued Final Approval for Mylan's ANDA on October 3, 2005. The 180-day exclusivity period granted to Mylan currently prevents the FDA from issuing Final Approval to any generic companies other than Mylan Pharmaceuticals, which means that Mylan Pharmaceuticals enjoys a six-month head start over its generic competitors.

5.     I am aware that FDA is considering issuing final approval to other ANDAs for amlodipine besylate as early as Monday, March 26, 2007. At least one other ANDA filer has publicly announced its view that no company has exclusivity and that it expects to launch the product in the very near future. See Apotex 3/21/07 Press Release attached hereto.

6.     Any approval of additional amlodipine besylate ANDAs prior to expiration of Mylan's exclusivity would not only destroy the 180-day exclusivity rights that FDA already granted to Mylan, but it would also fundamentally undermine the value of Mylan's enormous investments aimed at capitalizing on its 180-day exclusivity. Any FDA approval of other ANDAs would deprive Mylan of its first entrant, leadership position in the market for generic amlodipine besylate. Mylan would lose a portion of the amlodipine market and associated sales that are forecasted to reach the hundreds of millions of dollars, harms for which there is no legal redress. Mylan has forecasted that its revenues would reach several million dollars per day. Being the first to launch into the generic marketplace also permits Mylan to secure distribution channels, favorable positioning in customer supply programs and access to additional customers, thereby obtaining and retaining a greater market share in the long term.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on March 23, 2007.

Brian S. Roman



Contact: Steve Giuli
Director, Government Relations &
Industry Affairs
800-706-5575 EXT 3984
sgiuli@apotex.com

**NEWS**

**FOR IMMEDIATE RELEASE**

# Apotex Invalidates Norvasc® Patent

## *Company to Launch In Near Future*

**Weston, Fl (March 21, 2007)** – Apotex Corp. announced today the Federal Circuit Court of Appeals in the case of Pfizer, Inc. v. Apotex, Inc. reversed a trial court's ruling and found that Pfizer's U.S. Patent 4,879,303 (the '303 patent) covering the Pfizer product Norvasc® was invalid. The '303 patent covers amlodipine besylate the active ingredient in Norvasc® as well as tablets made from amlodipine besylate. Because the limiting patent expires in two days, no company will have exclusivity over the product. Apotex expects to launch the product in the very near future.

The Federal Circuit found that Apotex had proven that the '303 patent was invalid because it was obvious. In other words, the patent should never had been issued because someone skilled in the art would have known to make amlodipine besylate from materials, called prior art, that were publicly available. The Federal Circuit cited as some of the prior art an earlier Pfizer patent that taught amlodipine maleate as well as amlodipine with other pharmaceutically acceptable salts. The earlier Pfizer patent did not specifically mention besylate but the Court found that it was sufficient that besylate salt was discussed in other pieces of prior art.

By finding the Pfizer '303 patent invalid and not infringed by Apotex's ANDA, the Court is allowing Apotex to obtain final approval for its generic amlodipine besylate product. By finding Pfizer'303 patent invalid the Court also causes Pfizer to loose the additional six months of pediatric exclusivity that they had obtained.

"Our pursuit of this case after losing at the District Court level was rooted in Apotex's belief that the right thing to do for consumers and customers is to never, ever stop fighting to bring generics to market at the earliest possible time," said Apotex CEO Barry Sherman. "There was no guarantee when we appealed the case that we would be able to enter the market if we won. The odds, in fact, were against us achieving that outcome. But we believed we have an obligation to consumers to keep fighting, and are extremely pleased that our victory in the courts will bring significant savings in short order to the US health care system."

"It goes without saying that we will continue to press on all fronts for changes in the US legislative and regulatory framework that will better serve consumers . The commitment to the consumer that guided our actions in this case will continue to guide our efforts in Washington, DC, for instance, to work with policymakers to put an end to anti-competitive patents settlements that delay consumer access to affordable, quality generic medicines," Sherman added.

"Today's decision also has implications for the outcome of the clopidogrel case as some of the same legal principles are at stake in that trial. As today's ruling underscores, consumers can be sure we will do everything in our power to prevail in that case as well," Sherman added.

The Apotex Group manufactures more than 200 different high-quality generic pharmaceuticals, used by millions of patients worldwide. Its product line includes oral solids, liquids, injectables, nasal sprays, opthalmics, and inhalation solutions.

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| MYLAN LABORATORIES INC. and<br>MYLAN PHARMACEUTICALS INC., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| and | ) |
| | ) |
| MUTUAL PHARMACEUTICAL CO., INC., | ) |
| | ) |
| Intervenor-Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| MICHAEL O. LEAVITT,<br>in his official capacity as<br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES, | ) Civil Action No. 07-cv-579 (RMU) |
| | ) |
| ANDREW C. VON ESCHENBACH, M.D.,<br>in his official capacity as<br>COMMISSIONER OF FOOD AND DRUGS, | ) |
| | ) |
| and | ) |
| | ) |
| UNITED STATES FOOD AND DRUG<br>ADMINISTRATION, | ) |
| | ) |
| Defendants, | ) |
| | ) |
| and | ) |
| | ) |
| TEVA PHARMACEUTICALS USA, INC., | ) |
| | ) |
| and | ) |
| | ) |
| APOTEX INC., | ) |
| | ) |
| Intervenor-Defendants. | ) |

**[PROPOSED] ORDER**

This matter is before the Court on the application of Plaintiffs Mylan Laboratories Inc. and Mylan Pharmaceuticals Inc. ("Mylan") for a preliminary injunction to enjoin the Defendants Michael O. Leavitt, Secretary of Health and Human Services, Andrew C. von Eschenbach, M.D., Commissioner of Food and Drugs, and the United States Food and Drug Administration ("FDA") (collectively "Federal Defendants") from approving Intervenor-Defendant Apotex Inc.'s ("Apotex") abbreviated new drug application ("ANDA") for amlodipine besylate products following issuance of the mandate in *Pfizer, Inc. v. Apotex, Inc.*, No. 2006-1261, 2007 U.S. App. LEXIS 6623 (Fed. Cir. March 22, 2007), pending the determination of the scope and duration of Mylan's 180-day generic exclusivity and the six-month period of pediatric exclusivity.

Having considered the application papers, Mylan's motion for a preliminary injunction is GRANTED and the Federal Defendants are hereby enjoined and prohibited from taking any action to issue final approval to Apotex's ANDA for amlodipine besylate products pending the determination of the scope and duration of Mylan's 180-day generic exclusivity and the six-month period of pediatric exclusivity until further order of this Court.

Signed this ___ day of April, 2007.        _____

                                            Honorable Ricardo M. Urbina, U.S.D.J.