IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MYLAN LABORATORIES INC., AND MYLAN PHARMACEUTICALS INC., <br><br> *Plaintiffs*, <br><br> and <br><br> MUTUAL PHARMACEUTICAL CO., <br><br> *Intervenor-Plaintiff* <br><br> v. <br><br> MICHAEL O. LEAVITT, et al., <br><br> *Defendants*, *Cross-Defendants* <br><br> and <br><br> TEVA PHARMACEUTICALS USA, INC., <br><br> *Intervenor-Defendant* <br><br> and <br><br> APOTEX INC., <br><br> *Intervenor-Defendant,Cross claimant* | Civil Action No. 07-579 (RMU) <br><br> Judge Ricardo M. Urbina |

### INTERVENOR-DEFENDANT APOTEX, INC'S CROSS CLAIM AGAINST THE GOVERNMENT DEFENDANTS

Intervenor-Defendant, Apotex, Inc. ("Apotex"), by its attorneys, respectfully submits this Cross Claim pursuant to Fed. R. Civ. P. 13(g) against Michael O. Leavitt, in his official capacity as Secretary of Health and Human Services, Andrew C. von Eschenbach, in his official capacity as Commissioner of Food and Drugs, and the United States Food and Drug Administration ("FDA"). In support thereof, Apotex alleges as follows:

1

## THE PARTIES

1. Cross claimant Apotex is a corporation organized and existing under the laws of Canada and has a principal place of business at 150 Signet Drive, Weston, Ontario M9L 1T9.

2. Defendant Michael O. Leavitt is Secretary of Health and Human Services ("HHS"), having offices at 200 Independence Avenue, S.W., Washington, DC 20204. Defendant Leavitt is responsible for supervising the activities of HHS and is being sued in his official capacity.

3. Defendant Andrew C. von Eschenbach is Commissioner of the FDA, having offices at 5600 Fishers Lane, Rockville, MD 20857. Defendant Eschenbach is responsible for supervising FDA's activities, and is being sued in his official capacity.

4. Defendant FDA is an agency within the Public Health Service, which is part of HHS. The FDA has offices at 5600 Fishers Lane, Rockville, MD 20857.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over this action pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 555, 701 *et seq.;* and 28 U.S.C. § 1331 (federal question). The relief requested is also authorized pursuant to 28 U.S.C. § 2201 (declaratory relief) and 28 U.S.C. § 2202 (further relief).

6. Venue is proper in this district pursuant to 28 U.S.C. § 1391(e).

## STATEMENT OF FACTS

7. Amlodipine besylate is a drug approved by the FDA for treating hypertension and chronic stable and vasospastic angina. Pfizer, Inc. ("Pfizer") held two patents that it contended covered different aspects of amlodipine besylate, U.S. Patent No. 4,572,909 ("the '909 patent")

and U.S. Patent No. 4,879,303 ("the '303 patent").  The '909 patent expired on July 31, 2006; the '303 patent expired on March 25, 2007.

8. Since 1992, Pfizer has commercially marketed amlodipine besylate under the brand name Norvasc®.

9. Mylan and Apotex each filed abbreviated new drug applications ("ANDAs") with FDA, in which each certified that it believed the '303 patent was invalid and unenforceable (Apotex also asserted that the patent was not infringed), and sought approval to market and sell its own amlodipine besylate tablets pursuant to 21 C.F.R. § 314.94(a)(12)(i)(A)(4) ("paragraph IV certification").

10. By letter dated July 23, 2002, Mylan notified Pfizer that it had certified pursuant to paragraph IV of 21 U.S.C. § 355 (j)(2)(A)(vii) that the manufacture, use and sale of Mylan's 2.5 mg, 5 mg and 10 mg amlodipine besylate tablets would not violate the '303 patent because it was invalid or unenforceable.

11. On September 20, 2002, Pfizer sued Mylan for patent infringement in the United States District Court for the Western District of Pennsylvania.

12. On June 23, 2003 Apotex (f/k/a TorPharm, Inc.) notified Pfizer that it had filed with FDA its paragraph IV certification that the '303 patent was invalid, unenforceable or not infringed.

13. On July 30, 2003, Pfizer sued Apotex in the United States District Court for the Northern District of Illinois alleging that Apotex's proposed generic product infringed the '303 patent.

14. The FDA granted Mylan, as first ANDA filer, final approval on October 3, 2005. Mylan could have started selling generic amlodipine besylate at any time after this date until it

3

lost its own infringement case with Pfizer on February 27, 2007 and was enjoined from going to market. Mylan did not do so.

15. On January 29, 2006, the United States District Court for the Northern District of Illinois entered a final judgment in favor of Pfizer and against Apotex on Pfizer's claim of infringement as well as on Apotex's counterclaims alleging and seeking declarations of invalidity and unenforceability of the '303 patent.

16. On February 17, 2006, Apotex appealed the Illinois district court's decision to the Federal Circuit.

17. In November 2006, the trial in *Pfizer v. Mylan* took place in the United States District Court for the Western District of Pennsylvania. Mylan lost.

18. On February 27, 2007, the Pennsylvania district court entered judgment against Mylan and in favor of Pfizer, concluding that the '303 patent was infringed by Mylan, not unenforceable, and not invalid.

19. Mylan appealed this decision to the Federal Circuit.

20. On March 16, 2007, the Pennsylvania district court issued an amended judgment, which stated as follows in relevant part:

> **ORDERED, ADJUDGED AND DECREED** that, pursuant to the provisions of 35 U.S.C. § 271(e)(4)(A), the effective date of any approval of Mylan's Abbreviated New Drug Application No. 76-418, seeking FDA approval of amlodipine besylate tablets, 2.5, 5 and 10 mg dosage strengths, shall be a date which is not earlier than the date of expiration of the '303 patent (March 25, 2007)….

21. On March 20, 2007, Mylan moved before the Federal Circuit for a stay pending appeal of the Pennsylvania district court's March 16, 2007 amended judgment.

22. On March 22, the Court of Appeals for the Federal Circuit issued a judgment in favor of Apotex in the *Pfizer v. Apotex* case, reversing the district court's judgment and holding claims 1-3 of Pfizer's '303 patent (the only claims asserted against Apotex) invalid for obviousness.

23. On March 23, 2007, the Federal Circuit issued an order that called for additional briefing on Mylan's March 20, 2007 motion, held Mylan's motion for a stay in abeyance pending the receipt of further briefing and the Court's consideration of that briefing, and "temporarily stayed" the Pennsylvania district court's March 16, 2007 order.

24. Following receipt of the Federal Circuit's March 23, 2007 order, Mylan immediately began marketing its generic amlodipine product.

25. Under established FDA practice and judicial precedents, the March 16, 2007 amended judgment pursuant to 35 U.S.C. § 271(e)(4)(A) from the Pennsylvania district court converted Mylan's final approval to a tentative approval by operation of law.

26. Once its final approval for amlodipine tablets was converted by operation of law to a tentative approval, Mylan did not have any legal right to ship its generic amlodipine tablets in interstate commerce.

27. The Federal Circuit's March 23, 2007 order that "temporarily stayed" the Pennsylvania district court's March 16, 2007 amended judgment was intended only to maintain the status quo, and did not reflect a substantive reversal or vacating of that amended judgment.

28. As of the date of patent expiration, FDA was required by judicially approved agency policy, previously applied to Mylan, to have deemed Mylan's tentatively approved ANDA paragraph IV certification to have been converted to a tentatively approved ANDA with a paragraph II certification. As a result of that conversion, Mylan became subject to Pfizer's

pediatric exclusivity under the plain language of 21 U.S.C. § 355a(c)(2)(A)(i) and is not eligible for final ANDA approval until September 23, 2007.

29.     Although the Federal Circuit on March 26, 2007 stayed the Pennsylvania district court's March 16, 2007 amended judgment against Mylan, that Federal Circuit decision had no effect on the applicability of pediatric exclusivity to Mylan.  Specifically, the Federal Circuit's March 26, 2007 order did not affect the requirement in 21 U.S.C. § 355a(c)(2)(A) that "the period during which an application may not be approved under [21 U.S.C. § 355(j)(5)(B)] shall be extended by a period of six months after the date the patent expires," as that determination is made as of the time of patent expiration (March 23, 2007).

30.     On March 26, 2007, Mylan commenced this new action against FDA seeking a TRO and injunction from this Court to prevent the FDA from approving Apotex's ANDA. Although Mylan knew of Apotex's overriding interest in this matter, it did not give Apotex notice and an opportunity to be heard on the request for a TRO affecting Apotex's substantive rights.

31.     FDA responded to Mylan's TRO request by indicating that it would seek comment from affected parties through April 4, 2007, and would issue a letter ruling on the parties' respective rights to market generic amlodipine besylate by April 11, 2007.

32.     By Order dated March 26, 2007, the Court required FDA to submit its decision by April 11, 2007.  FDA would then be enjoined from approving any ANDAs from April 11 through April 13 at 5pm to allow the Court the opportunity to review the FDA decision and rule on Mylan's request for injunctive relief.

33.     On March 29, 2007, Apotex received a letter from FDA seeking comment on the following issues:

   (1) What date controls FDA's giving effect to the decision in *Pfizer Inc. v. Apotex, Inc.*, No. 2006-1261 (Fed. Cir. March 22, 2007) ("*Apotex* decision") holding that Pfizer's patent 4,879,303 ("the '303 patent") is invalid? Can FDA treat the '303 patent as invalid as of March 22, 2007, or must FDA await the issuance of the mandate? Is the answer the same for all purposes, that is, for determining the applicability of pediatric exclusivity, the triggering of 180-day exclusivity, and the eligibility of other ANDA applicants for final approval?

   (2) If FDA must await the issuance of the mandate, does pediatric exclusivity bar approval of all unapproved ANDAs in the meantime?

   (3) If and when the *Apotex* decision is implemented, what is the effect of the decision that the '303 patent is invalid on the obligation of an ANDA applicant to change its certification? Must Pfizer delist its patent, so that certifications can be withdrawn? Or can FDA treat an invalid patent as delisted as a matter of law, and presume the withdrawal of the certifications? Or must the ANDA applicants file paragraph II certifications stating that the '303 patent has expired?

   (4) If and when the *Apotex* decision is implemented and the patent is treated as invalid, does pediatric exclusivity attach to the '303 patent with respect to any unapproved ANDAs? Does it matter whether the ANDA applicant filed a paragraph III or IV certification before patent expiration?

   (5) Does 180-day exclusivity triggered before a patent expires continue to bar approvals of ANDAs after the patent expires, even if other ANDA applicants change their certifications to paragraph II or withdraw their certifications altogether?

34. On April 2, 2007, Apotex moved to intervene in this action.

35. On April 3, 2007, the Court granted Apotex leave to intervene in this action.

36. On April 4, 2007, Apotex filed its response to FDA's request for comments.

37. By Order dated April 10, 2007, FDA was granted a 1 week extension of time to issue its decision and the Court extended the TRO period from April 18, 2007-April 20, 2007 at 5:00pm.

38. On April 18, 2007, FDA issued its decision in the form of a letter ruling ("Letter Ruling"). FDA concluded that:

      a.    All of the unapproved ANDAs are currently blocked by Pfizer's pediatric exclusivity;

      b.    If and when the mandate effectuating the Federal Circuit panel's March 22 decision issues in the *Pfizer v. Apotex* case, final approval of Apotex's ANDA will not be blocked by Pfizer's pediatric exclusivity.

      c.    FDA cannot determine on the current record whether other ANDAs will continue to be blocked by pediatric exclusivity at that time.

      d.    Mylan's 180-day marketing exclusivity terminated when the '303 patent expired.

39.    In its April 18, 2007 Letter Ruling, FDA also expressed its view that the phrase "court determines" of 21 U.S.C. §355a(c)(2)(B) concerning pediatric exclusivity in the context of a federal court of appeals ruling reversing a district court judgment "should be read as the date the mandate issues," not the date of the appellate judgment. This conclusion means that FDA does not view Apotex as entitled to final approval at this time.

40.    On April 19, 2007, the Court granted the intervening parties, including Apotex, leave to file cross claims in this action.

41.    On April 20, 2007, the Court's earlier-entered TRO expired of its own accord.

42.    Despite having a statutory and legal right to do so, Apotex is not presently able to enter the market for amlodipine besylate by virtue of FDA's arbitrary, capricious and not in accordance with law actions and inactions, as alleged herein. Apotex is losing millions of dollars in anticipated revenues and valuable market share each day FDA fails to granted it final approval to market and sell generic amlodipine besylate tablets, while Mylan is able to market its own generic amlodipine besylate tablets despite having no legal authority to do so. Apotex is being irreparably harmed by the FDA's actions and inactions as alleged herein, and will continue to be irreparably harmed unless the injunctive relief requested herein is granted.

## FIRST CLAIM FOR RELIEF

43.     FDA's interpretation of the "court determines" language of 21 U.S.C. §355a(c)(2)(B) is arbitrary, capricious, and not in accordance with the law within the meaning of 5 U.S.C. § 706(2)(A); in excess of statutory authority within the meaning of 5 U.S.C. § 706(2)(C); and in violation of the FFDCA.

44.     FDA should have determined that an appellate "court determines" that a patent is invalid and not infringed as of the date of judgment by the appellate court.

45.     FDA should have determined that with regard to Apotex a court determination that Pfizer's '303 patent was invalid or not infringed by Apotex occurred on March 22, 2007 when the Federal Circuit issued its judgment holding that all relevant claims of Pfizer's '303 patent were invalid for obviousness.

46.     FDA's failure to immediately grant final approval to Apotex for its amlodipine ANDA after the Federal Circuit's March 22, 2007 judgment in *Pfizer v. Apotex* is arbitrary, capricious, and not in accordance with the law within the meaning of 5 U.S.C. § 706(2)(A); in excess of statutory authority within the meaning of 5 U.S.C. § 706(2)(C); and in violation of the FFDCA.

## SECOND CLAIM FOR RELIEF

47.     Once the Pennsylvania district court's March 16, 2007 judgment against Mylan converted Mylan's final approval to a tentative approval by operation of law, Mylan was prohibited from selling its generic product until FDA issued a letter granting final approval to sell.

9

48. FDA previously had concluded in a case involving Mylan, which FDA decision was upheld by the D.C. Circuit:

> First, the FDA concluded that the Vermont district court's order that "the effective date of any approval of Mylan's ANDA product shall be no earlier than the date of expiration of the '580 patent family, transformed Mylan's ANDA approval into "an approval with a delayed effective date," which "is a tentative approval that cannot be made effective **until the FDA issues a letter granting final effective approval**."

*Mylan v. Thompson*, 389 F.3d 1272, 1277 (D.C. Cir. 2004) (citations omitted) (emphasis added).

49. This result was required by the Code of Federal Regulations, 21 C.F.R. 314.107(a) and (b)(3)(v), which states:

> (a) General. …approval of an application or abbreviated application for a drug product becomes effective on the date FDA issues an approval letter … for the application or abbreviated application.
>
> (b)(3)(v)…Tentative approval of an application does not constitute "approval" of an application and cannot, absent a final approval letter from the agency, result in an effective approval under paragraph (b)(3) of this section.

50. FDA must apply this regulation – and Mylan must obey it - with respect to what now should be Mylan's tentative approval for generic amlodipine besylate tablets.

51. Once the earliest effective date FDA can issue final approval has changed, only a letter issued by FDA can finally approve the application and allow Mylan to market generic amlodipine besylate.

52. By operation of law, Mylan does not have final approval from FDA and is effectively selling its generic product without express FDA authority to do so in violation of 21 U.S.C. § 355(a) (prohibition against introducing unapproved drugs into interstate commerce) and § 331(d) (corresponding "prohibited act").

53. Mylan's patent litigation with Pfizer was not resolved prior to expiration of the '303 patent.

54. With respect to Mylan's ANDA, FDA still is bound by the Pennsylvania district court's decision in *Pfizer v. Mylan* holding Pfizer's '303 patent valid and infringed by Mylan.

55. FDA's determination that Apotex is blocked by Pfizer's pediatric exclusivity until the Federal Circuit issues a mandate cannot be reconciled with Mylan's continued selling of its own generic amlodipine besylate product.

56. Even after the '303 patent expired, by the terms of FDA's April 18, 2007 Letter Ruling, Mylan should have been treated like all other ANDA paragraph IV filers (other than Apotex) who had not been sued or who had not prevailed in litigation with Pfizer at the time the '303 patent expired.  At this time, Mylan is still subject to Pfizer's pediatric exclusivity and precluded from receiving final approval and precluded from selling generic amlodipine besylate.

57. Even if the Federal Circuit's March 26, 2007 stay of Mylan's injunction otherwise would have permitted FDA to finally approve Mylan's application (which it did not), the decision certainly did not constitute a letter issuing final FDA approval.  FDA did not issue a final approval letter to Mylan following the Federal Circuit's stay of Mylan's injunction.

58. FDA's failure to act and its condoning Mylan's continued unlawful marketing of a tentatively approved drug is arbitrary, capricious, and not in accordance with the law within the meaning of 5 U.S.C. § 706(2)(A); in excess of statutory authority within the meaning of 5 U.S.C. § 706(2)(C); and in violation of the FFDCA.

## PRAYER FOR RELIEF

Wherefore, Apotex respectfully prays for entry of judgment in its favor and the following relief:

A.      Entry of an injunction directing FDA to immediately grant Apotex final approval of its ANDA for the sale and marketing of amlodipine besylate tablets.

B.      Entry of an injunction directing FDA to immediately convert Mylan's final ANDA approval for amlodipine besylate tablets to a tentative approval as of March 16, 2007.

C.      Entry of injunction directing FDA to immediately convert Mylan's Paragraph IV ANDA certification to a paragraph II ANDA certification as of March 23, 2007.

D.      Entry of an injunction directing FDA to immediately order Mylan to stop interstate distribution of its amlodipine besylate tablets.

E.      Entry of an injunction directing FDA to order Mylan to recall all its amlodipine besylate tablets in the marketplace.

 

                Respectfully submitted,

April 23, 2007                  /s/Arthur Y. Tsien
                                        Arthur Y. Tsien, Bar No. 411579
                                        OLSSON, FRANK AND WEEDA, P.C.
                                        1400 16th Street, N.W., Suite 400
                                        Washington, DC 20036-2220
                                        (202) 789-1212
                                        (202) 234-3550 (telecopy)
                                        Counsel for Apotex, Inc.

<u>Of Counsel:</u>
Robert B. Breisblatt
A. Sidney Katz
Steven E. Feldman
Welsh & Katz, Ltd.
120 South Riverside Plaza • 22nd Floor
Chicago, Illinois 60606
(321) 655-1500
Fax: (312) 655-1501

**CERTIFICATE OF SERVICE**

I certify that on April 23, 2007 copies of the foregoing Cross Claim, Apotex's Motion for Preliminary Injunction Against Federal Defendants, Supporting Memorandum, Exhibits, and [Proposed] Order were served on the following by means of the court's electronic filing system and by electronic mail:

David James Harth
HELLER EHRMAN, LLP
1 East Main Street
Suite 201
Madison, WI 53703
(608) 663-7470
(608) 663-7499 (fax)
dharth@hewm.com
for Mylan Laboratories, Inc. and Mylan Pharmaceuticals Inc.,
*Plaintiffs*

Drake S. Cutini
DEPARTMENT OF JUSTICE
Office of Consumer Litigation
P.O. Box 386
Washington, DC 20044
(202) 307-0044
(202) 514-8742 (fax)
drake.cutini@usdoj.gov
for the United States Food And Drug Administration,
*Defendant*

Jay P. Lefkowitz
KIRKLAND & ELLIS LLP
655 15th Street, N.W.
Washington, D.C. 20005
(202) 879-5040
(202) 879-5200 (fax)
jlefkowitz@kirkland.com
for Teva Pharmaceuticals USA, Inc.,
**Intervenor Defendant**

John Will Ongman
AXINN VELTROP & HARKRIDER LLP
1801 K Street, N.W.
Suite 411
Washington, D.C.  20006
(202) 912-4700
(202) 912-4701 (fax)
jwo@avhlaw.com
for Mutual Pharmaceutical Co., Inc.
***Intervenor***


                         /s/ Arthur Y. Tsien
                              Arthur Y. Tsien