## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| MYLAN LABORATORIES INC. and MYLAN PHARMACEUTICALS INC., | ) ) ) | |
| Plaintiffs, | ) ) | |
| and | ) ) | |
| MUTUAL PHARMACEUTICAL CO., INC., | ) ) | |
| Intervenor-Plaintiff, | ) ) | |
| v. | ) ) | |
| MICHAEL O. LEAVITT, in his official capacity as SECRETARY OF HEALTH AND HUMAN SERVICES, | ) ) ) ) ) | Civil Action No. 07-CV-579 (RMU) |
| ANDREW C. VON ESCHENBACH, M.D., in his official capacity as COMMISSION OF FOOD AND DRUGS, | ) ) ) ) | |
| and | ) ) | |
| UNITED STATES FOOD AND DRUG ADMINISTRATION, | ) ) ) | |
| Defendants, | ) ) | |
| and | ) ) | |
| TEVA PHARMACEUTICALS USA, INC., | ) ) | |
| and | ) ) | |
| APOTEX INC., | ) ) | |
| Intervenor-Defendants. | ) ) | |

## PLAINTIFFS' OPPOSITION TO
## APOTEX'S MOTION FOR PRELIMINARY INJUNCTION

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. ii

INTRODUCTION ...............................................................................................................1

ARGUMENT .......................................................................................................................2

I.  APOTEX HAS NO REASONABLE LIKELIHOOD OF SUCCEEDING ON THE
    MERITS OF ITS CHALLENGE TO THE FDA'S DECISION TO AWAIT A
    MANDATE BEFORE TERMINATING PEDIATRIC EXCLUSIVITY. .........................2

    A.  THE AUTHORITIES RELIED ON BY APOTEX DO NOT RENDER THE FDA'S MANDATE
        POLICY ARBITRARY AND CAPRICIOUS ...................................................................3

    B.  THE PLAIN LANGUAGE OF § 355a(c)(2)(B) DOES NOT REQUIRE THE FDA TO
        DECLARE AN END TO PEDIATRIC EXCLUSIVITY BEFORE THE MANDATE ISSUES .....6

    C.  THE FDA'S DECISION TO AWAIT THE MANDATE WAS REASONABLE AND
        SUPPORTED BY SUBSTANTIAL LEGAL AND POLICY CONSIDERATIONS ...................8

II.  APOTEX HAS NO REASONABLE LIKELIHOOD OF SUCCEEDING ON ITS
     CLAIM THAT MYLAN DOES NOT HAVE FINAL APPROVAL..................................9

    A.  THE DISTRICT COURT JUDGMENT DID NOT "CONVERT" MYLAN'S FINAL
        APPROVAL TO TENTATIVE BY "OPERATION OF LAW"...........................................10

    B.  APOTEX IGNORES THAT THE DISTRICT COURT'S § 271(e)(4)(A) ORDER WAS
        STAYED BY THE FEDERAL CIRCUIT........................................................................11

III.  THE EQUITABLE FACTORS FAVOR MYLAN. .........................................................13

    A.  APOTEX'S CLAIMED HARM IS OVERSTATED AND SPECULATIVE............................13

    B.  THE BALANCE OF HARMS WEIGHS HEAVILY IN FAVOR OF MYLAN .....................15

    C.  THE PUBLIC INTEREST IS SERVED BY MAINTAINING THE *STATUS QUO* .................16

CONCLUSION...................................................................................................................17

## <u>TABLE OF AUTHORITIES</u>

### Federal Cases

*American Radio Relay League, Inc. v. FCC*, 617 F.2d 875 (1980) .…………….………………12

*Apotex, Inc., v. Food & Drug Admin.*,
    2006 U.S. Dist. LEXIS 20894 (D.D.C. April 19, 2006) …………………………….....…13

*Barrow v. Graham*, 124 F. Supp. 2d 714 (D.D.C. 2000) ………………………………………...15

*Bracco Diagnostics, Inc. v. Shalala*,
    963 F. Supp. 20 (D.D.C. 1997) ……………………………………………….……12-13

*Bristol-Myers Squibb Co. v. Shalala*, 923 F. Supp. 212 (D.D.C. 1996) …………………….....14

*Charpentier v. Ortco Contrs.*, No. 06-60217, 2007 U.S. App. LEXIS 4583
    (5th Cir. Feb. 28, 2007) …………………………………………………………………...3

*Chevron U.S.A., Inc. v. Natural Resources Defense Council*,
    467 U.S. 837 (1984) …………………………………………………………………8, 9

*Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402 (1971) …………………………8

*Environmental Defense Fund, Inc. v. Costle*, 657 F.2d 275 (D.C. Cir. 1981) …………………..12

*Hibbs v. Winn*, 542 U.S. 88 (2004) ………………………………………………………………5

*In re Combined Metals Reduction Co.*, 557 F.2d 179 (9th Cir. 1977) …………………………..12

*Jacksonville Port Authority v. Adams*, 556 F.2d 52 (D.C. Cir. 1977) …………………………..17

*Mariscal-Sandoval v. Ashcroft*, 370 F.3d 851 (9th Cir. 2004) …………………………………3-4

*Mary Ann Pensiero, Inc. v. Lingle*, 847 F.2d 90 (3d Cir. 1988) …………………………………3

*Mead Johnson Pharm. Group v. Bowen*, 655 F. Supp. 53 (D.D.C. 1986) ………………………14

*Mercer v. Duke Univ.*, 401 F.3d 199 (4th Cir. 2005) …………………………………………...3

*Missouri v. Jenkins*, 495 U.S. 33 (1990) ………………………………………………………5

*Mova Pharm. Corp. v. Shalala*, 955 F. Supp. 128 (D.D.C. 1997),
    *aff'd*, 140 F.3d 1060 (D.D.C. 1998) ……………………………………………8, 15-16

*Mylan Laboratories, Inc. v. Thompson*,
    389 F.3d 1272 (D.C. Cir. 2004) ……………………………….……………………...10

*Mylan Labs, Inc. v. Thompson*, 332 F. Supp. 2d 106 (D.D.C.),
    *aff'd*, 389 F.3d 1272 (2004) ……………………………………………………………..10

*Mylan Pharms. Inc. v. Shalala*,
    81 F. Supp. 2d 30 (D.D.C. 2000) ……………………………………………………16-17

*Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharms. Co.*,
    290 F.3d 578 (3d Cir. 2002) …………………………………………………………………14

*Pfizer Inc. v. Apotex, Inc.*,
    No. 2006-1261, 2007 U.S. App. LEXIS 6623 (Fed. Cir. March 22, 2007)………….1, 2, 4

*Pfizer Inc. v. Apotex, Inc.*,
    No. 03-5289, 2006 U.S. Dist LEXIS 95778 (N.D. Ill. Jan. 24, 2006) …………………...7

*Power Mobility Coalition v. Leavitt*, 404 F. Supp. 2d 190 (D.D.C. 2005) ………………………...14

*Purepac Pharm. Co. v. TorPharm, Inc.*, 354 F.3d 877 (D.C. Cir. 2004) …………………………..8

*Sandoz, Inc. v. Food & Drug Admin.*, 439 F. Supp. 2d 26 (D.D.C. 2006),
    *aff'd*, 2006 U.S. App. LEXIS 22343 (D.C. Cir. Aug. 30, 2006) …………………………..13

*Stewart Park & Reserve Coalition Inc. v. Slater*,
    374 F. Supp. 2d 243 (N.D.N.Y. 2005) …………………………………………………………3

*The Fund for Animals v. Clark*, 27 F. Supp. 2d 8 (D.D.C. 1998) …………………………………17

*The Fund for Animals, Inc. v. Espy*, 814 F. Supp. 142 (D.D.C. 1993) …………………………17

*United States v. Foumai*, 910 F.2d 617 (9th Cir. 1990) …………………………………………….3

*United States v. Simmons*, 923 F.2d 934 (2d Cir. 1991) …………………………………………….3

*United States v. Swan*, 327 F. Supp. 2d 1068 (D. Neb. 2004) …………………………………….3

*Wisconsin Gas Co. v. Federal Energy Regulatory Com.*, 758 F.2d 669 (D.C. Cir. 1985) ……...14

## Federal Statutes

21 U.S.C. § 355a(c)(2) ……………………………………………………………6

21 U.S.C. § 355a(c)(2)(A) ………………………………………………………1, 7

21 U.S.C. § 355a(c)(2)(B) ……………………………………………………*passim*

28 U.S.C. § 2101(c) ………………………………………………………………5

35 U.S.C. § 271(e)(4)(A) ……………………………………………………..*passim*

## Federal Regulations

21 C.F.R. § 314.3(b) ……………………………………………………………11

## Federal Rules

Federal Circuit Rule 36 …………………………………………………………...6

Federal Rule of Appellate Procedure 41(c) …………………………………………3, 4

Federal Rule of Appellate Procedure 35 ……………………………………….....4, 5

Federal Rule of Appellate Procedure 36 …………………………………………….4

Federal Rule of Appellate Procedure 40 ………………………………………….4, 5

Federal Rule of Appellate Procedure 41(d) ……………………………………….4, 5

## Court Rules

Supreme Court Rule 13(3) ………………………………………………………..5

## Other References

Best Pharmaceuticals for Children Act, Pub. L. No. 107-109, 115 Stat. 1408 (2002)……....1, 2, 6

## INTRODUCTION

Apotex, the second paragraph IV filer, challenges the FDA's ruling that it is blocked from entering the market for amlodipine besylate tablets by pediatric exclusivity until the Federal Circuit issues its mandate in *Pfizer v. Apotex*.[1]  In the first prong of its application for preliminary injunctive relief, Apotex maintains that the FDA's refusal to give final effect to *Pfizer v. Apotex* until the mandate issues is "not consistent with the statutory language" of the Best Pharmaceuticals for Children Act ("BPCA")[2], and is therefore arbitrary and capricious. Mem.[3] at 5.  As we show in Part I, however, the relevant statutory provisions are ambiguous.  It is not at all clear when "the court determines that a patent is valid and would be infringed" under the relevant BPCA pediatric exclusivity provision.  21 U.S.C. § 355a(c)(2)(B).  Nor is it apparent when that determination is superseded by appellate action.  The FDA's decision in this case to await a mandate before terminating pediatric exclusivity is, at the very least, a reasonable construction of the statutory language and is supported by substantial legal and policy considerations.

In the second prong of its application, Apotex asks the Court to require the FDA "to recognize that Mylan's ANDA for amlodipine has not had final approval since Mylan lost in the district court, and send a letter to that effect."  Mem. at 14.  Putting aside the issue of this Court's power to force the FDA to "recognize" things and send letters, Apotex relegates to a footnote the Federal Circuit's *stay* of the very district court judgment upon which it relies.  As we show in

---

[1] *Pfizer Inc. v. Apotex, Inc.*, No. 2006-1261, 2007 U.S. App. LEXIS 6623 (Fed. Cir. March 22, 2007).

[2] Pub. L. No. 107-109, 115 Stat. 1408 (2002).

[3] *Apotex's Motion for a Preliminary Injunction* [Dkt. No. 47].

Part II, the Federal Circuit's stay of the district court's judgment legally prevented the FDA from

doing what Apotex now claims it was required to do "by operation of law."

Apotex has no reasonable likelihood of prevailing on either prong of its motion.  And as

we show in Part III, the equitable factors for preliminary injunctive relief, particularly the

balance of harms, weigh heavily against Apotex's application.

For all of these reasons, Apotex's application for a preliminary injunction should be

denied in its entirety.

## ARGUMENT

I.    **APOTEX HAS NO REASONABLE LIKELIHOOD OF SUCCEEDING ON THE MERITS OF ITS CHALLENGE TO THE FDA'S DECISION TO AWAIT A MANDATE BEFORE TERMINATING PEDIATRIC EXCLUSIVITY.**

In its April 18 decision letter, the FDA considered the question whether the pediatric

exclusivity provisions of the BPCA, 21 U.S.C. § 355a(c)(2)(B), govern *when* the *Pfizer v. Apotex*

decision should be given effect for purposes of pediatric exclusivity.  Ltr.[4] at 5-7.  Section

355a(c)(2)(B) provides:

> If the drug is the subject of a listed patent for which a certification has been
> submitted under [paragraph IV], and in the patent infringement litigation resulting
> from the certification the court determines that the patent is valid and would be
> infringed, the period during which an application may not be approved . . . shall
> be extended by a period of six months after the date the patent expires (including
> any patent extensions).

21 U.S.C. § 355a(c)(2)(B).  According to Apotex, this "statutory language is unambiguous"

and requires the FDA in this case to declare an immediate end to pediatric exclusivity, without

waiting for the Federal Circuit's mandate.  Mem. at 4.  The problem, of course, is that calling the

statutory language unambiguous does not make it so, and the quoted language above says

---

[4] Letter from Gary Buehler to ANDA Applicant/Holder for Amlodipine Besylate Tablets, dated April 18, 2007 [Dkt. No. 40-2].

nothing about when the FDA should give effect to an appellate panel decision *reversing* a "court

determin[ation] that the patent is valid and would not be infringed."

> A.  **THE AUTHORITIES RELIED ON BY APOTEX DO NOT RENDER THE FDA'S MANDATE POLICY ARBITRARY AND CAPRICIOUS**

The FDA's decision not to terminate pediatric exclusivity until a court of appeals

decision is final necessarily makes the issuance of the appeals court mandate the operative date,

for until then the decision is not final.  "A court of appeals' judgment or order is not final until

issuance of the mandate; at that time the parties' obligations become fixed."  Fed. R. App. P.

41(c) note; *see Mercer v. Duke Univ.*, 401 F.3d 199, 212 n.7 (4th Cir. 2005) (quoting with

approval the advisory committee note); *United States v. Simmons*, 923 F.2d 934, 956 (2d Cir.

1991) ("A Court of Appeals decision does not become effective until its mandate issues.");

*United States v. Foumai*, 910 F.2d 617, 620 (9th Cir. 1990) ("[F]inality of an appellate order

hinges on the mandate, as does a defendant's expectation of finality."); *Mary Ann Pensiero, Inc.

v. Lingle*, 847 F.2d 90, 97 (3d Cir. 1988) ("An appellate court" decision is not final until its

mandate issues."); *Stewart Park & Reserve Coalition Inc. v. Slater*, 374 F. Supp. 2d 243, 248 n.5

(N.D.N.Y. 2005) (quoting with approval the advisory committee note); *United States v. Swan*,

327 F. Supp. 2d 1068, 1071 (D. Neb. 2004).

Until mandate, the court of appeals retains jurisdiction to amend or otherwise change its

decision.  *Charpentier v. Ortco Contrs.*, No. 06-60217, 2007 U.S. App. LEXIS 4583, at *7 (5th

Cir. Feb. 28, 2007) ("This court retains control over an appeal until we issue a mandate.  Before

our mandate issues, we have the power to alter or modify our judgment.  Accordingly, our

decision is not final until we issue a mandate.") (footnotes omitted); *Mariscal-Sandoval v.

*Ashcroft*, 370 F.3d 851, 856 (9th Cir. 2004) ("Until the mandate issues, we retain jurisdiction. . . .").[5]

Federal Rule of Appellate Procedure 36, cited by Apotex, does not provide that an appellate "judgment" is final.  Mem. at 5-6.  To the contrary, the rule permits a party to seek rehearing  before the decision is final (i.e., before a mandate issues).  Rule 36 governs when "[a] judgment is entered."  The time to petition the court of appeals for rehearing (either by the panel or en banc) is calculated from entry of judgment.  *See* Fed. R. App. P. 35, 40.

Federal Rule of Appellate Procedure Rule 41(d) prevents a mandate from issuing while a petition for rehearing is pending.  Rules 35, 36, 40, and 41(d) work together to ensure that the decision is not final and the court of appeals retains jurisdiction until all appellate rights are exhausted.  For that very reason, the FDA chose to wait for the mandate to issue.  The FDA acted well within its authority in adopting a rule that "reduces the possibility that an appellate opinion will be relied on and then overturned (through an adverse opinion after rehearing or rehearing en banc) in very short order."  Ltr. at 7.

Apotex argues that the FDA should not have relied on the advisory committee notes to Fed. R. App. R. 41(c) – to the effect that a court of appeals judgment or order is not final until issuance of the mandate – without considering the advisory committee notes to Rule 41(d).  But the note to Rule 41(d) provides Apotex with no support either:  "The Committee's objective is to treat a request for a rehearing en banc like a petition for panel rehearing so that a request for a rehearing en banc *will suspend the finality of the court of appeals' judgment* and delay the running of the period for filing a petition for writ of certiorari[.]" Fed. R. App. P. 41(d) note

---

[5] The Federal Circuit is currently considering whether to take further action in *Pfizer v. Apotex*; and during last week's status conference Apotex's counsel represented that the court has ordered Apotex to respond to Pfizer's petition by May 1, 2007.

(emphasis added). The note only confirms that a court of appeals' decision is not final until the mandate issues.

In *Hibbs v. Winn*, 542 U.S. 88, 97-98 (2004), the Supreme Court interpreted 28 U.S.C. § 2101(c), which instructs that a petition for certiorari must be filed "within ninety days after the entry of . . . judgment." Supreme Court Rule 13(3) similarly provides that "[t]he time to file a petition for a writ of certiorari runs from the date of entry of the judgment or order sought to be reviewed, and not from the issuance date of the mandate (or its equivalent under local practice)." These provisions are parallel to Federal Rules of Appellate Procedure 35 and 40, which calculate the time to seek rehearing from entry of judgment, not mandate. Like Rules 35 and 40, Rule 41(d) prevents the mandate from issuing while a petition for certiorari is pending, again ensuring that the court of appeals retains jurisdiction until all appellate rights are exhausted.

*Hibbs* most assuredly does not stand for the proposition that "[t]he Supreme Court recognizes that the entry of judgment is 'an appellate court's final adjudication.'" Mem. at 6. The language quoted by Apotex reads in full: "An appellate court's final adjudication, Congress indicated, makes the time from which the period allowed for a certiorari petition begins to run."[6] In *Hibbs*, the Supreme Court rejected the argument that the period for bringing a petition for certiorari began to run from the entry of judgment, because the court of appeals ordered briefing on whether the case should be reheard en banc. That order "suspended the judgment's finality under § 2101(c) . . . ." 542 U.S. at 97. "In other words, 'while [a] petition for rehearing is pending' or while the court is considering, on its own initiative, whether rehearing should be ordered, '*there is no judgment to be reviewed*.'" *Id.* at 98 (quoting *Missouri v. Jenkins*, 495 U.S. 33, 46 (1990)) (emphasis added).

---

[6] *See Hibbs*, 542 U.S. at 99-100, not at 96-97, as cited by Apotex.

5

So too here.  Under the Federal Rules of Appellate Procedure, Pfizer's petition for rehearing suspended the finality of the Federal Circuit's Rule 36 judgment and, until that petition is decided, "there is no judgment to be reviewed."

Finally, Apotex appeals to one of the recognized Congressional purposes of the Hatch-Waxman Act, the desire to get "generic drugs to consumers as soon as possible."  Mem. at 9-10. But by passing the BPCA, the law the FDA is charged with interpreting in this case, Congress evinced an intent to encourage pharmaceutical companies to conduct pediatric testing of patented drugs. Surely a rule that prematurely terminates pediatric exclusivity would be contrary to that intent.  The bottom line is that vague statements of general Congressional purposes are of little or no use in interpreting § 355a(c)(2)(B).

### B.    THE PLAIN LANGUAGE OF § 355a(c)(2)(B) DOES NOT REQUIRE THE FDA TO DECLARE AN END TO PEDIATRIC EXCLUSIVITY BEFORE THE MANDATE ISSUES

Pediatric exclusivity under § 355a(c)(2) of the BPCA operates by delaying the approval of unapproved ANDAs for six months after a patent expires.[7]  Ltr. at 5.  The operative subsection of § 355a(c)(2) varies according to the certification issued by the ANDA applicant.  *Id*. at 5-6. When the applicant submits a paragraph IV certification, "if . . .  in the patent infringement litigation resulting from the certification *the court determines that the patent is valid and would be infringed*, the period during which an application may not be approved . . . shall be extended by a period of six months . . ."  *See* 21 U.S.C. § 355a(c)(2)(B)(emphasis added).[8]

---

[7] Pediatric exclusivity does not apply to Mylan's ANDA because it received final approval in October of 2005, and "therefore, under the literal terms of the statute, [Mylan's] ANDA cannot be delayed."  Ltr. at 5 n.4.

[8] As explained in Plaintiff's April 23, 2007, Motion for Preliminary Injunction, based on its rules and longstanding practice, the FDA should have converted Apotex's unapproved paragraph IV ANDA to a paragraph II certification upon patent expiration.  *Memorandum of Points and Authorities in Support of Plaintiffs' Application for a Preliminary Injunction* [Dkt.

*(Footnote continued)*

Applying the language of § 355a(c)(2)(B) to this case, **"in the patent litigation resulting from the certification,"** i.e., the Northern District of Illinois action brought by Pfizer against Apotex, **"the court"** i.e., the district court for the Northern District of Illinois, **"determin[ed],"** i.e., entered a final judgment, **"that the ['303] patent is valid and infringed."**  Under the plain language of the statute, the FDA is, at a minimum, prohibited from approving Apotex's ANDA during the six-month pediatric period.  Indeed, this is precisely the relief that Northern District of Illinois entered against Apotex.  *See Pfizer Inc. v. Apotex Inc.*, No. 03-5289, 2006 U.S. Dist LEXIS 95778 (N.D. Ill. Jan. 24, 2006) (ordering that "the effective date of any approval of Apotex's Abbreviated New Drug Application No. 76-719 shall be [delayed] … with attached six months of pediatric exclusivity … ending on September 25, 2007.").

As to what happens after that, the statute is silent.  Section 355a(c)(2)(B) says nothing about whether, once awarded, pediatric exclusivity is lost as soon as the panel decision overturning the district court's finding of validity and infringement is announced or if it is lost after the mandate issues, or even if it is never lost.  Because the statute is silent, the FDA correctly concluded, "that the operative phrase – 'the court determines' – is ambiguous as to the action it describes," and that it was therefore required to consider authority outside the statutory language.  Ltr. at 6.

---

No. 44-2], at 5 ("Under longstanding FDA policy and practice, 'upon patent expiry, all ANDA applicants are presumed to have paragraph II certifications, [and] the paragraph II provision of the pediatric exclusivity statute, 21 U.S.C. § 355a(c)(2)(A)(i) [] control[s]." (quoting Ltr. at 8)); *see generally id.* at 5-11.  In that case § 355(a)(c)(2)(**A**) would block Apotex's application without regard to the "court's determin[ation]."  For purposes of this opposition only, Mylan assumes that § 355(a)(c)(2)(**B**) applies.

### C.    THE FDA'S DECISION TO AWAIT THE MANDATE WAS REASONABLE AND SUPPORTED BY SUBSTANTIAL LEGAL AND POLICY CONSIDERATIONS

All that is required of an agency faced with statutory ambiguity is that it make a considered and reasonable judgment under the circumstances.  *See Mova Pharm. Corp. v. Shalala*, 955 F. Supp. 128, 130 (D.D.C. 1997), *aff'd*, 140 F.3d 1060 (1998) (stating that deference is applied if Congress has not "'directly spoken to the precise question at issue' and if the agency interpretation is reasonable'") (quoting *Chevron U.S.A., Inc. v. Natural Resources Defense Council*, 467 U.S. 837, 842-43 (1984)); *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971) (court to review whether the agency's decision was based on, *e.g.*, a clear error of judgment).  The Court must accord substantial deference to the agency's decision, and, if reasonable, approve it.  *See Purepac Pharm. Co. v. TorPharm, Inc.*, 354 F.3d 877, 883 (D.C. Cir. 2004) ("FDA interpretations of the FDCA receive deference[.]").

Here, the FDA found that the word "determines" in § 355a(c)(2)(B) reasonably can be read to mean "the fixing or settling of rights," thus requiring it to wait until the appellate decision is "final" before acting.  Ltr. at 6.  But the FDA went well beyond dictionary definitions, and the April 18 decision provides the FDA other substantial reasons why the statute should be read in this manner:

- The Federal Rules of Civil Procedure and the commentary to the rules support the FDA's reading of the statute.  Ltr. at 6-7.  As discussed in the following section, the FDA was correct that under the rules of appellate procedure, finality does not occur until the mandate issues.

- As a matter of policy, parties to paragraph IV litigation are best served by a rule that "errs on the side of greater finality."  Such a rule "reduces the possibility that an appellate court opinion will be relied on and then overturned . . . ."  Ltr. at 7.

- When the patent holder prevails in the district court, the FDA "applies [the district court] decision, unless it is stayed, in determining issues related to ANDA approval."  Ltr. at 7.  Thus, a district court order under 35 U.S.C. § 271(e)(4)(A) directing that an unsuccessful paragraph IV challenger's approval date be set "not earlier than the expiration of the patent," unless it is stayed, will be given effect

8

once final judgment is entered in the district court, even if that judgment is appealed. If the generic challenger prevails on appeal, the FDA will not grant the required "immediate approval" until the mandate issues.

Each of these reasons is eminently reasonable. Though there may be counter-arguments, the FDA's decision to establish an even-handed, bright line, mandate-based rule that "errs on the side of finality" is at the very least a permissible reading of the statue. That is all that is required. *See Chevron*, 467 U.S. at 843 and n.11 ("The court need not conclude that the agency construction was the only one it permissibly could have adopted to uphold the construction, or even the reading the court would have reached if the question initially had arisen in a judicial proceeding.").

## II.    APOTEX HAS NO REASONABLE LIKELIHOOD OF SUCCEEDING ON ITS CLAIM THAT MYLAN DOES NOT HAVE FINAL APPROVAL

Mylan's October 3, 2005 final approval letter from the FDA is unequivocal: "the ANDA is approved." *Declaration of Shannon M. Bloodworth In Support of Plaintiffs' Application for a Preliminary Injunction*, Exhibit A [Dkt. No. 44-4]. The FDA has never revoked that approval or "converted" it to tentative. Nonetheless, Apotex contends that when the district court in the Pennsylvania action entered a final judgment that included a § 271(e)(4)(A) order that "approval of Mylan's [ANDA] . . . shall be a date which is not earlier than the date of expiration of the '303 patent," Mylan's final approval "became tentative by operation of law" and has remained "tentative" since then. Mem. at 14. Because Mylan only has tentative approval, Apotex argues, the FDA should "order Mylan to immediately cease interstate distribution of amlodipine besylate tablets." Mem. at 16. Apotex is wrong for at least two reasons.

## A.    THE DISTRICT COURT JUDGMENT DID NOT "CONVERT" MYLAN'S FINAL APPROVAL TO TENTATIVE BY "OPERATION OF LAW"

Apotex insists that no FDA action was needed to rescind Mylan's final approval because Mylan's final approval became tentative by "operation of law." Mem. at 15. What "law" Apotex is referring to remains unclear. The only support cited by Apotex for its "operation of law" argument is *Mylan Laboratories, Inc. v. Thompson*, 389 F.3d 1272 (D.C. Cir. 2004). But *Thompson* did not hold that a final effective FDA approval is rescinded as a matter of law by a patent court's entry of a § 271(e)(4)(A) order, and is in fact inapposite. In *Thompson*, the D.C. Circuit upheld the FDA's decision to attach pediatric exclusivity upon the patent's expiration to Mylan's ANDA, which had been converted by the FDA to tentatively approved due to a district court's § 271(e)(4)(A) order. *Id*. at 1284.

Although Apotex asserts that "[t]here are no meaningful distinctions between the current amlodipine matter and [*Mylan v. Thompson*]," *Id*. at 1278, there are many major factual distinctions that *Thompson* inapposite, not the least of which is that the conversion to a tentative approval in *Thompson* did not occur by "operation of law," but rather by FDA action. In fact, in *Thompson*, after the Vermont district court's § 271(e)(4)(A) order:

> The FDA corresponded and met personally with representatives of both companies to discuss the matter. In a letter dated June 22, 2004, the FDA issued its administrative decision concluding that, as a result of the change in the effective approval date of Mylan's ANDA in the Vermont Court's order, the final approval of Mylan's ANDA had been reclassified and Mylan's prior, finally approved ANDA, was now a "tentative approval."

*Mylan Labs, Inc. v. Thompson*, 332 F. Supp. 2d 106, 114 (D.D.C.), *aff'd*, 389 F.3d 1272 (2004). In the letter to Mylan, the FDA explicitly stated that "in light of [the Vermont district court's] decision, the Agency hereby rescinds the final approval of ANDA 76-258 issued on November 21, 2003, and regards ANDA 76-258 as tentatively approved." *Thompson*, 389 F.3d at 1278; *Declaration of Shannon M. Bloodworth in Support of Plaintiffs' Opposition to Apotex's Motion*

10

*for Preliminary Injunction* (hereinafter "Bloodworth Decl."), Exh. A, Letter from FDA to Mylan rescinding final approval and issuing tentative approval. Here, the FDA has taken no such action.[9]

Apotex's reliance on *Thompson* is particularly misplaced given that *Thompson* is dispositive of why Apotex – an ANDA filer that never received final FDA approval – is barred from marketing its amlodipine besylate products by the six-month period of pediatric exclusivity. As in the case *Thompson*, Apotex had a tentatively approved ANDA at the time of the patent's expiration. Under the holding in *Thompson*, "at the time the applicable patent expired" Apotex's tentatively approved ANDA with its "paragraph IV certification was automatically converted to a paragraph II certification (patent expired)." Mem. at 15. As Apotex "then had a tentatively approved paragraph II ANDA on the date of patent expiration, final approval was blocked for an additional six months after patent expiration by 21 U.S.C. § 355a(c)(2)(A)(i)." *Id.* It is Apotex, not Mylan, that is therefore barred by the six-month period of pediatric exclusivity.

### B.   APOTEX IGNORES THAT THE DISTRICT COURT'S § 271(e)(4)(A) ORDER WAS STAYED BY THE FEDERAL CIRCUIT

Within a week of issuance, the district court's § 271(e)(4)(A) order was stayed by the Federal Circuit. Upon the entry of the stay, the FDA properly refused to act to reset the effective date of Mylan's approval. As the FDA explained in its April 18th letter decision,

_____

[9] *Thompson* aside, Apotex's arguments would render several FDA regulations superfluous. For example, the FDA defines a "listed drug" as "*evidenced* by the drug product's identification as a drug with an effective approval in the current edition of FDA's "Approved Drug Products with Therapeutic Equivalence Evaluations" [also commonly called the "Orange Book"]. . . as a drug with an effective approval." 21 C.F.R. § 314.3(b) (emphasis added). It would be impossible for the effective approvals to be deemed meaningless by operation of law, as some action by the FDA must be taken in order for the product to be delisted from the Orange Book. Here, Mylan's amlodipine besylate products were never delisted from the Orange Book. *See* Bloodworth Decl., Exh. B., excerpts from the Orange Book listing Mylan's products, dated March 21, 2007 (five days after the District Court's amendment judgment).

> [B]efore FDA took such action [to convert Mylan's final approval to tentative approval], the Federal Circuit stayed the district court injunction in that litigation. After that stay, *FDA had no basis* to convert the approval status of Mylan's ANDA from approved to tentatively approved.

Ltr. at 5-6 n.4 (emphasis added); *see also id.* at 7 ("When the district court decides a patent issue, FDA applies that decision, unless it is stayed, in determining issues related to ANDA approval.").

The FDA is charged with the fair and just administration of the nation's food and drug laws. *See Environmental Defense Fund, Inc. v. Costle*, 657 F.2d 275, 283 (D.C. Cir. 1981) ("While we are admonished from "rubber stamping" agency decisions as correct, our task is complete when 'we find that the agency has engaged in reasoned decisionmaking within the scope of its Congressional mandate.'") (quoting *American Radio Relay League, Inc. v. FCC*, 617 F.2d 875, 879 (1980)) (internal citations omitted)).  Improvident action by the FDA would have rendered the Federal Circuit's stay meaningless, indeed it would have deprived the Federal Circuit of the ability to review the district court's judgment.  Such an outcome would eviscerate the stay, whose very purpose is to protect a party from losing rights that cannot be regained should the party be successful on appeal.  *See, e.g.*, *In re Combined Metals Reduction Co.*, 557 F.2d 179, 188 (9th Cir. 1977) ("[A] party who chooses to appeal but who fails to obtain a stay or injunction pending appeal, risks losing its ability to realize the benefits of the successful appeal.") (internal quotation and citation omitted).

Far from being arbitrary and capricious, the FDA's decision to not reset Mylan's approval date in the face of the Federal Circuit stay was reasonable and prudent.[10]  Apotex has

---

[10] The FDA's decision to treat Apotex, an unapproved ANDA holder at the time the patent expired, differently from all the other unapproved ANDA filers, whose paragraph IV certifications were "deemed" to be converted to paragraph II certifications upon the patent's expiration, is particularly arbitrary and capricious.  *See Bracco Diagnostics, Inc. v. Shalala*, 963

*(Footnote continued)*

provided no reason why this Court should not accord deference to the FDA's recognition of the Federal Circuit's stay.

## III. THE EQUITABLE FACTORS FAVOR MYLAN.

Because Apotex has failed to show a substantial likelihood of success on the merits, it must make a "very strong" showing of irreparable harm to obtain a preliminary injunction. *Sandoz, Inc. v. Food & Drug Admin.*, 439 F. Supp. 2d 26, 32 (D.D.C. 2006), *aff'd*, 2006 U.S. App. LEXIS 22343 (D.C. Cir. Aug. 30, 2006) (quoting *Apotex, Inc., v. Food & Drug Admin.*, 2006 U.S. Dist. LEXIS 20894, at *16 (D.D.C. April 19, 2006)). Because its allegations of economic losses are overstated, speculative, and remote at best, Apotex has failed to make the requisite showing. Moreover, the balance of harms weighs strongly in Mylan's favor and the public interest favors maintaining the status quo.

### A. APOTEX'S CLAIMED HARM IS OVERSTATED AND SPECULATIVE

Apotex argues that, but for the FDA's decision letter denying it final approval, it would be able "to fight for a leadership position in the marketplace as an early entrant" and would enjoy up to a 30 percent share of the amlodipine besylate market. Mem. at 10-11. Those claims are hardly credible, however, given that Apotex currently has *no* share of the amlodipine besylate market, and is currently legally precluded from entering the market under any legal theory. Moreover, even if Apotex *could* enter the amlodipine besylate market in the near future, it would take no more than a tertiary position to the current market leaders (Pfizer and Mylan), thereby rendering its own ultimate market share far from certain. The speculative and theoretical harms

---

F. Supp. 20, 27-28 (D.D.C. 1997) (FDA "must treat similar cases in a similar manner unless it can provide a legitimate reason for failing to do so. Government is at its most arbitrary when it treats similarly situated people differently." (internal quotations and citations omitted)).

alleged by Apotex are insufficient to constitute irreparable harm. *See Power Mobility Coalition v. Leavitt*, 404 F. Supp. 2d 190, 205 (D.D.C. 2005) (finding no irreparable injury where harm is speculative); *Wisconsin Gas Co. v. Federal Energy Regulatory Com.*, 758 F.2d 669, 674 (D.C. Cir. 1985) (In order to qualify as irreparable injury, "injury must be both certain and great; it must be actual and not theoretical.").

More fundamentally, any asserted harm is purely economic in nature, and – as the D.C. Circuit has repeatedly held – such a harm would not give rise to the level of irreparable harm – especially where the plaintiff has other legal recourse. *See Wisconsin Gas*, 758 F.2d at 674 (D.C. Cir. 1985) (per curiam) ("It is also well settled that economic loss does not, in and of itself, constitute irreparable harm."). Apotex cites no authority from this Circuit to justify its broad-based allegations of harm. Indeed, its primary legal basis is a Third Circuit case stating that "loss of market share constitutes irreparable harm." *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharms. Co.,* 290 F.3d 578, 595-96 (3d Cir. 2002). Quite apart from the issue of whether Apotex has actually "lost" market share, it is highly unlikely that the articulation of harm in *Novartis* coincides with the prevailing law of this Circuit. *Compare id. with Bristol-Myers Squibb Co. v. Shalala*, 923 F. Supp. 212, 221 (D.D.C. 1996) (concluding that the plaintiff's unsupported claim that it would lose between 50 and 70 percent of its market was insufficient to allege irreparable harm) (citing *Mead Johnson Pharm. Group v. Bowen*, 655 F. Supp. 53 (D.D.C. 1986))).

Finally, Apotex's claim that is has "no legal redress" for its alleged harms rings particularly hollow in light of its recent assertion of a legal claim against Mylan for a bond valued at over $70 million. Apotex cites to no legal authority to support its contention that it lacks any means of legal recourse for its alleged harms. Indeed, it is impossible to reconcile

14

Apotex's claim that it is helpless and without any possible legal redress, when the company so recently filed claims before this very court for precisely the legal redress that it now claims not to have.

### B.    THE BALANCE OF HARMS WEIGHS HEAVILY IN FAVOR OF MYLAN

In contrast to the speculative harms that Apotex alleges, Mylan faces real, irreparable harm from the FDA's threatened actions that are imminent, certain and grave.  Mylan's harms – unlike Apotex's – are not merely economic in nature; at their core they are legal harms.

Mylan is faced with a sudden deprivation of its statutorily guaranteed legal rights without any advance notice or procedural protections.  If Apotex's demand for immediate final approval is granted – either now or after the mandate issues, Mylan would lose its 180-day exclusivity rights without any prior notice or due process of law.  This Circuit has acknowledged that preliminary injunctive relief is particularly appropriate as a means of insulating parties from imminent harm when another party (such as Apotex here) threatens to suddenly alter the *status quo* in a manner that would deprive another of its rights.  *See Barrow v. Graham,* 124 F. Supp. 2d 714, 716 (D.D.C. 2000) ("In the absence of facts that would enable a court fully to assess the merits of the parties' respective positions, a TRO may issue to preserve the *status quo* and to prevent imminent harm until a hearing on the request for a preliminary injunction may be held.").

If Apotex has its way, Mylan would also suffer a complete deprivation of its 180-day exclusivity rights.  Courts have repeatedly recognized that a generic drug manufacturer is irreparably harmed when it is wrongfully deprived of its 180-day period of marketing exclusivity *vis-à-vis* other generic manufacturers.  *See Mova Pharm. Corp.,* 955 F. Supp. at 131 (finding irreparable harm where the FDA deprived a party of its "180-day statutory grant of exclusivity"),

(confirming that Mova's loss of its "'officially sanctioned head start' … suffices to show a severe economic impact to Mova," for purposes of satisfying the irreparable harm standard).

As reflected above, on balance, the harm to Mylan from a grant of the relief sought by Apotex greatly outweighs the harm that Apotex would suffer in the absence of such relief. On the other hand, denial of the relief requested by Apotex would – ultimately – benefit all parties. Judicial restraint in this case would avoid a sudden change to the *status quo*, and would ensure that all interested parties (FDA, Apotex, Pfizer, Mylan and others) could be heard by the court before the *status quo* is altered. Issuance of a mandatory injunction requiring the FDA to approve Apotex's ANDA immediately would be disruptive, and, should such an injunction ultimately be reversed upon appeal, it would necessitate the *post-hoc* rescission of any such forced approval. No party's interests would be served by the uncertainty and confusion that would result from such reversals in policy. Apotex – like the FDA and Mylan – all share an interest in preserving the *status quo* pending judicial consideration of the issues raised by this motion.

### C.    THE PUBLIC INTEREST IS SERVED BY MAINTAINING THE *STATUS QUO*

The public interest will be served by maintaining the *status quo* and denying Apotex's request for a mandatory injunction that would require the FDA to approve its ANDA immediately. Judicial restraint here would also avoid a situation in which the court intervenes too aggressively and forces the FDA to take actions that are at odds not only with applicable statutory authorities, but also with the FDA's regulations and its longstanding practices (such as the FDA's "deeming policy"). Judicial restraint would thus promote the well-recognized public interest in ensuring that federal agencies faithfully comply with their statutory mandates as prescribed by Congress. *See, e.g.*, *Mylan Pharms. Inc. v. Shalala*, 81 F. Supp. 2d 30, 45 (D.D.C. 2000) ("It is in the public interest for courts to carry out the will of Congress and for an agency

16

to implement properly the statute it administers."); *see also Jacksonville Port Authority v. Adams*, 556 F.2d 52, 59 (D.C. Cir. 1977) ("[T]here is an overriding public interest . . . in the general importance of an agency's faithful adherence to its statutory mandate."); *The Fund for Animals v. Clark*, 27 F. Supp. 2d 8, 15 (D.D.C. 1998) ("[T]he public has a general interest in 'the meticulous compliance with the law by public officials.'")(quoting *The Fund for Animals, Inc. v. Espy*, 814 F. Supp. 142, 152 (D.D.C. 1993)).

Denial of the mandatory injunctive relief requested by Apotex would likewise enable this Court to avoid the wasted resources and the potential for public confusion that would result if the court required the FDA to approve Apotex's ANDA, only to rescind its approval (and force Apotex to pull its products off the shelves) thereafter if the appellate court chose to reverse the mandatory injunction.

## CONCLUSION

For all of these reasons, Apotex's motion for a preliminary injunction should be denied in its entirety.

Dated:  April 26, 2007                    Respectfully submitted,


  /s/ David J. Harth
David J. Harth (#474632)
HELLER EHRMAN LLP
One East Main Street, Suite 201
Madison, Wisconsin 53703
(608) 663-7460

Shannon M. Bloodworth (#474925)
Joseph P. Whitlock (#484247)
HELLER EHRMAN LLP
1717 Rhode Island Avenue, N.W.
Washington, D.C.  20036
(202) 912-2000

E. Anthony Figg (#345124)
Steven Lieberman (#439783)
Minaksi Bhatt (#434448)
ROTHWELL, FIGG, ERNST & MANBECK PC
1425 K Street, N.W.
Suite 800
Washington, D.C. 20005
(202) 783-6040

Stuart A. Williams
Jill Ondos
MYLAN LABORATORIES INC.
1500 Corporate Drive
Suite 400
Canonsburg, Pennsylvania 15317
(724) 514-1840

Attorneys for Plaintiffs
MYLAN LABORATORIES INC. and
MYLAN PHARMACEUTICALS INC.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MYLAN LABORATORIES INC. and<br>MYLAN PHARMACEUTICALS INC.,<br><br>           Plaintiffs,<br><br>and<br><br>MUTUAL PHARMACEUTICAL CO., INC.,<br><br>           Intervenor-Plaintiff,<br><br>           v.<br><br>MICHAEL O. LEAVITT,<br>in his official capacity as<br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>ANDREW C. VON ESCHENBACH, M.D.,<br>in his official capacity as<br>COMMISSIONER OF FOOD AND DRUGS,<br><br>and<br><br>UNITED STATES FOOD AND DRUG<br>ADMINISTRATION, *et al.*,<br><br>           Defendants,<br><br>and<br><br>TEVA PHARMACEUTICALS USA, INC.,<br><br>and<br><br>APOTEX INC.,<br><br>           Intervenor-Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br><br><br><br><br>Civil Action No.  07-cv-579 (RMU) |

**DECLARATION OF SHANNON M. BLOODWORTH IN
SUPPORT OF  PLAINTIFFS' OPPOSITION TO APOTEX'S
MOTION FOR A PRELIMINARY INJUNCTION**

I, Shannon M. Bloodworth, declare and state as follows:

1.     I am an attorney with the law form of Heller Ehrman LLP, counsel to Mylan Laboratories Inc. and Mylan Pharmaceuticals Inc. (collectively "Mylan"), in the above-captioned proceeding. I submit this declaration in support of Mylan's opposition to Apotex's Motion for a Preliminary Injunction.

2.     Annexed hereto as Exhibit A is a true and correct copy of correspondence from Gary J. Buehler to Mylan Technologies Inc., dated June 22, 2004.

3.     Annexed hereto as Exhibit B is a true and correct copy of documents from FDA's Electronic Orange Book regarding amlodipine besylate, located on the FDA's website at http://www.fda.gov/cder/ob/docs/queryai.htm.


I declare under penalty of perjury that the foregoing is true and correct of my own knowledge. Executed this 26th day of April, 2007 in Washington, D.C.

Shannon M. Bloodworth

# Exhibit A

*Declaration of Shannon M. Bloodworth in Support of Plaintiffs'
Opposition to Apotex's Motion for a Preliminary Injunction*



**DEPARTMENT OF HEALTH & HUMAN SERVICES**

ANDA 76-258

Food and Drug Administration
Rockville MD 20857

JUN 22 2004

Mylan Technologies Inc.
Attention: William E. Brochu, Ph.D.
10 Lake Street
St. Albans, VT 05478

Sent by Facsimile and U.S. Mail

Dear Dr. Brochu:

This letter is in reference to your Abbreviated New Drug Application (ANDA) for Fentanyl Transdermal System, 25 mcg/hr, 50 mcg/hr, 75 mcg/hr and 100 mcg/hr, dated October 12, 2001, submitted pursuant to Section 505(j) of the Federal Food, Drug, and Cosmetic Act (Act).[1] As you know, a decision was entered in *Alza Corporation and Jansen Pharmaceuticals, Inc. v. Mylan Laboratories, Inc., Mylan Technologies, Inc., and Mylan Pharmaceuticals Inc.*, 2004 U.S. Dist. LEXIS 4914 (D.Vt. March 25, 2004). We are writing to inform you that, in light of this decision, the Agency hereby rescinds the final approval of ANDA 76-258 issued on November 21, 2003, and regards ANDA 76-258 as tentatively approved.

The Agency notes that the court's order states that "[b]ecause infringement has occurred, the effective date of any approval of Mylan's ANDA product shall be no earlier than the date of the expiration of the '580 patent family." Because under FDA's regulations (21 C.F.R. 314.105), caselaw, and longstanding practice, an approval with a delayed effective date is tentative, after consideration of the court's order the Agency has determined that final approval for this application is rescinded.

Based upon the information you have presented to date, the drug is safe and effective for use as recommended in the submitted labeling. Therefore, the application is **tentatively approved**. This determination is based upon information available to the Agency at this time, i.e., information in your application and the status of current good manufacturing practices (CGMPs) of the facilities used in the manufacture and testing of the drug products, and is subject to change on the basis of new information that may come to our attention. Final approval cannot be granted earlier than the date of a court decision

---

[1] The listed drug product referenced in your application (NDA 19-813, Duragesic (Fentanyl Transdermal System), held by Alza Corporation) is subject to a period of patent protection that expires on July 23, 2004. The relevant patent is U.S. Patent No. 4,588,580 (the '580 patent). The '580 patent is also subject to a period of pediatric exclusivity that expires on January 23, 2005. Your application contains patent certifications under Section 505(j)(2)(A)(vii)(IV) of the Act stating that your manufacture, use, or sale of the Fentanyl Transdermal System will not infringe on the '580 patent or that the patents are otherwise invalid.

finding the patents invalid, not infringed or unenforceable, or the expiration date of the patent and any period of pediatric exclusivity granted to the NDA holder.[2]

Because the Agency is granting a tentative approval for this application, when you believe that your application may be considered for final approval, you must amend your application to notify the Agency regarding whether circumstances have or have not arisen that may affect the effective date of final approval. To reactivate your application, please submit an amendment at least 60 days (but not more than 90 days) prior to the date you believe your application will be eligible for final approval. This amendment should identify changes, if any, in the conditions under which the product was tentatively approved, and should include updated information such as final printed labeling, chemistry, manufacturing, and controls data as appropriate. Please note that this amendment should be submitted even if none of these changes were made. The amendment should be designated clearly in your cover letter as a MINOR AMENDMENT. In addition to this amendment, the Agency may request at any time prior to the final date of approval that you submit an additional amendment containing the information described above. Any changes in the conditions outlined in this abbreviated application as well as changes in the status of the manufacturing and testing facilities' compliance with current good manufacturing procedures are subject to Agency review before final approval of the application will be made.

The drug products that are the subject of this abbreviated application may not be marketed without final Agency approval under Section 505 of the Act. The introduction or delivery or introduction into interstate commerce of this drug before the effective final approval date is prohibited under Section 301(d) of the Act. Also, until the Agency issues the final approval letter, these drug products will not be listed in the Agency's "Approved Drug Products with Therapeutic Equivalence Evaluations" list (the "Orange Book").

For further information regarding this issue, please contact Cecelia Parise, R.Ph., Regulatory Policy Advisor to the Director, Office of Generic Drugs, at (301) 827-5845.

Sincerely yours,

Gary J. Buehler
Director
Office of Generic Drugs
Center for Drug Evaluation and Research

---

[2] ANDA 76-258 will be subject to ALZA's pediatric exclusivity for fentanyl transdermal system as explained in the June 22, 2004 letter from Gary J. Buehler to E. Anthony Figg and Peter O. Safir.

cc:    Dan Troy, Office of the Chief Counsel
E. Anthony Figg, Rothwell, Figg, Ernst & Manbeck
Peter O. Safir, Covington & Burling

# Exhibit B

*Declaration of Shannon M. Bloodworth in Support of Plaintiffs'*
*Opposition to Apotex's Motion for a Preliminary Injunction*

# Electronic Orange Book

## Approved Drug Products
### with
### Therapeutic Equivalence Evaluations

**Current through February 2007\*\***

\*\* In order to provide timely consumer
information on generic drugs, the Electronic
Orange Book will be updated daily as new
generic approvals occur.
Refer to FAQ for additional information. New!!

#### Annual Edition

#### FAQ

**Search by Active Ingredient**    **Search by Applicant Holder**

**Search by Proprietary Name**    **Search by Application Number**

**Search by Patent**

**The products in this list have been approved under section 505 of the Federal Food, Drug, and Cosmetic Act.**

Drug questions email: DRUGINFO@CDER.FDA.GOV

**U.S. Department of Health and Human Services
Food and Drug Administration
Center for Drug Evaluation and Research
Office of Pharmaceutical Science
Office of Generic Drugs**

# Electronic Orange Book Query

**Search by Active Ingredient:**

amlodipine besylate          (Type in part or all of name)

Select the list you would like to search:

◉ Rx (Prescription Drug Products)
◯ OTC (Over-the-Counter Drug Products)
◯ Disc (Discontinued Drug Products)

[ Submit ]  [ Clear ]

Return to the Electronic Orange Book Home Page

**Active Ingredient Search Results from "OB_Rx" table for query on "amlodipine besylate."**

| Appl No | TE Code | RLD | Active Ingredient | Dosage Form; Route | Strength | Proprietary Name | Applicant |
|---|---|---|---|---|---|---|---|
| 076418 | AB | No | AMLODIPINE BESYLATE | TABLET; ORAL | EQ 10MG BASE | AMLODIPINE BESYLATE | MYLAN |
| 076418 | AB | No | AMLODIPINE BESYLATE | TABLET; ORAL | EQ 2.5MG BASE | AMLODIPINE BESYLATE | MYLAN |
| 076418 | AB | No | AMLODIPINE BESYLATE | TABLET; ORAL | EQ 5MG BASE | AMLODIPINE BESYLATE | MYLAN |
| 019787 | AB | Yes | AMLODIPINE BESYLATE | TABLET; ORAL | EQ 10MG BASE | NORVASC | PFIZER |
| 019787 | AB | No | AMLODIPINE BESYLATE | TABLET; ORAL | EQ 2.5MG BASE | NORVASC | PFIZER |
| 019787 | AB | No | AMLODIPINE BESYLATE | TABLET; ORAL | EQ 5MG BASE | NORVASC | PFIZER |
| 021540 | | No | AMLODIPINE BESYLATE; ATORVASTATIN CALCIUM | TABLET; ORAL | EQ 10MG BASE;EQ 10MG BASE | CADUET | PFIZER |
| 021540 | | No | AMLODIPINE BESYLATE; ATORVASTATIN CALCIUM | TABLET; ORAL | EQ 10MG BASE;EQ 20MG BASE | CADUET | PFIZER |
| 021540 | | No | AMLODIPINE BESYLATE; ATORVASTATIN CALCIUM | TABLET; ORAL | EQ 10MG BASE;EQ 40MG BASE | CADUET | PFIZER |
| 021540 | | Yes | AMLODIPINE BESYLATE; ATORVASTATIN CALCIUM | TABLET; ORAL | EQ 10MG BASE;EQ 80MG BASE | CADUET | PFIZER |
| 021540 | | No | AMLODIPINE BESYLATE; ATORVASTATIN CALCIUM | TABLET; ORAL | EQ 2.5MG BASE;EQ 10MG BASE | CADUET | PFIZER |
| 021540 | | No | AMLODIPINE BESYLATE; ATORVASTATIN CALCIUM | TABLET; ORAL | EQ 2.5MG BASE;EQ 20MG BASE | CADUET | PFIZER |
| 021540 | | No | AMLODIPINE BESYLATE; ATORVASTATIN CALCIUM | TABLET; ORAL | EQ 2.5MG BASE;EQ 40MG BASE | CADUET | PFIZER |

| 021540 | No | AMLODIPINE BESYLATE; ATORVASTATIN CALCIUM | TABLET; ORAL | EQ 5MG BASE;EQ 10MG BASE | CADUET | PFIZER |
| 021540 | No | AMLODIPINE BESYLATE; ATORVASTATIN CALCIUM | TABLET; ORAL | EQ 5MG BASE;EQ 20MG BASE | CADUET | PFIZER |
| 021540 | No | AMLODIPINE BESYLATE; ATORVASTATIN CALCIUM | TABLET; ORAL | EQ 5MG BASE;EQ 40MG BASE | CADUET | PFIZER |
| 021540 | No | AMLODIPINE BESYLATE; ATORVASTATIN CALCIUM | TABLET; ORAL | EQ 5MG BASE;EQ 80MG BASE | CADUET | PFIZER |
| 020364 | No | AMLODIPINE BESYLATE; BENAZEPRIL HYDROCHLORIDE | CAPSULE; ORAL | EQ 10MG BASE;20MG | LOTREL | NOVARTIS |
| 020364 | Yes | AMLODIPINE BESYLATE; BENAZEPRIL HYDROCHLORIDE | CAPSULE; ORAL | EQ 10MG BASE;40MG | LOTREL | NOVARTIS |
| 020364 | No | AMLODIPINE BESYLATE; BENAZEPRIL HYDROCHLORIDE | CAPSULE; ORAL | EQ 2.5MG BASE;10MG | LOTREL | NOVARTIS |
| 020364 | No | AMLODIPINE BESYLATE; BENAZEPRIL HYDROCHLORIDE | CAPSULE; ORAL | EQ 5MG BASE;10MG | LOTREL | NOVARTIS |
| 020364 | No | AMLODIPINE BESYLATE; BENAZEPRIL HYDROCHLORIDE | CAPSULE; ORAL | EQ 5MG BASE;20MG | LOTREL | NOVARTIS |
| 020364 | No | AMLODIPINE BESYLATE; BENAZEPRIL HYDROCHLORIDE | CAPSULE; ORAL | EQ 5MG BASE;40MG | LOTREL | NOVARTIS |

Return to Electronic Orange Book Home Page

FDA/Center for Drug Evaluation and Research
Office of Generic Drugs
Division of Labeling and Program Support
Update Frequency:
   Orange Book Data - **Monthly**
   Generic Drug Product Information & Patent Information - **Daily**
   Orange Book Data Updated Through February, 2007

Patent and Generic Drug Product Data Last Updated: March 20, 2007

**Search results from the "OB_Rx" table for query on "019787."**

| | |
|---|---|
| Active Ingredient: | AMLODIPINE BESYLATE |
| Dosage Form;Route: | TABLET; ORAL |
| Proprietary Name: | NORVASC |
| Applicant: | PFIZER |
| Strength: | EQ 2.5MG BASE |
| Application Number: | 019787 |
| Product Number: | 001 |
| Approval Date: | Jul 31, 1992 |
| Reference Listed Drug | No |
| RX/OTC/DISCN: | RX |
| TE Code: | **AB** |
| Patent and Exclusivity Info for this product: View |

| | |
|---|---|
| Active Ingredient: | AMLODIPINE BESYLATE |
| Dosage Form;Route: | TABLET; ORAL |
| Proprietary Name: | NORVASC |
| Applicant: | PFIZER |
| Strength: | EQ 5MG BASE |
| Application Number: | 019787 |
| Product Number: | 002 |
| Approval Date: | Jul 31, 1992 |
| Reference Listed Drug | No |
| RX/OTC/DISCN: | RX |
| TE Code: | **AB** |
| Patent and Exclusivity Info for this product: View |

| | |
|---|---|
| Active Ingredient: | AMLODIPINE BESYLATE |
| Dosage Form;Route: | TABLET; ORAL |
| Proprietary Name: | NORVASC |
| Applicant: | PFIZER |
| Strength: | EQ 10MG BASE |
| Application Number: | 019787 |
| Product Number: | 003 |
| Approval Date: | Jul 31, 1992 |
| Reference Listed Drug | Yes |
| RX/OTC/DISCN: | RX |
| TE Code: | **AB** |
| Patent and Exclusivity Info for this product: View |

Return to Electronic Orange Book Home Page

FDA/Center for Drug Evaluation and Research

Office of Generic Drugs
Division of Labeling and Program Support
Update Frequency:

    Orange Book Data - **Monthly**

    Generic Drug Product Information & Patent Information - **Daily**

    Orange Book Data Updated Through February, 2007

    Patent and Generic Drug Product Data Last Updated: March 20, 2007

Patent and Exclusivity Search Results from query on Appl No 019787 Product 001 in the OB_Rx list.

## Patent Data

| Appl No | Prod No | Patent No | Patent Expiration | Drug Substance Claim | Drug Product Claim | Patent Use Code |
|---------|---------|-----------|-------------------|----------------------|--------------------|-----------------|
| 019787 | 001 | 4572909 | JUL 31,2006 | Y | Y | U-683 |
| 019787 | 001 | 4572909*PED | JAN 31,2007 | | | |
| 019787 | 001 | 4879303 | MAR 25,2007 | Y | Y | |
| 019787 | 001 | 4879303*PED | SEP 25,2007 | | | |

## Exclusivity Data

| Appl No | Prod No | Exclusivity Code | Exclusivity Expiration |
|---------|---------|------------------|------------------------|
| 019787 | 001 | NPP | JAN 08,2007 |
| 019787 | 001 | I-472 | SEP 28,2008 |
| 019787 | 001 | PED | JUL 08,2007 |

Additional information:

1. Patents are published upon receipt by the Orange Book Staff and may not reflect the official receipt date as described in 21 CFR 314.53(d)(5).
2. Patents submitted on FDA Form 3542 and listed after August 18, 2003 will have one to three patent codes indicating specific patent claims as submitted by the sponsor and are detailed in the above table.
3. Patents listed prior to August 18, 2003 are flagged with method of use claims only as applicable and submitted by the sponsor. These patents may not be flagged with respect to other claims which may apply
4. *PED and PED represent pediatric exclusivity. Patents with pediatric exclusivity granted after August 18, 2003 will be indicated with *PED as was done prior to August 18, 2003. Patents with *PED added after August 18, 2003 will not contain any information relative to the patent itself other than the *PED extension. Information related specifically to the patent will be conveyed on the original patent only.
5. U.S. Patent Nos. RE 36481 and RE 36520 were relisted for Zocor (NDA 19-766) pursuant to the decision and related order in Ranbaxy Labs. v.Leavitt, No. 05-1838 (D.D.C. April 30, 2006). The '481 and '520 patents remained listed in Approved Drug Products with Therapeutic Equivalence Evaluations until any applicable periods of exclusivity pursuant to section 505(j)(5)(B)(iv) of the Federal Food, Drug, and Cosmetic Act were triggered and run. For additional information on this matter, please refer to Docket Nos. 2005P-0008 and 2005P-0046. Patents were subsequently delisted in the December 2006 Orange Book update as the exclusivity periods have triggered and run to expiration.

View a list of all patent use codes
View a list of all exclusivity codes

Return to Electronic Orange Book Home Page

---

FDA/Center for Drug Evaluation and Research
Office of Generic Drugs
Division of Labeling and Program Support
Update Frequency:

Orange Book Data - **Monthly**

Generic Drug Product Information & Patent Information - **Daily**

Orange Book Data Updated Through February, 2007

Patent and Generic Drug Product Data Last Updated: March 20, 2007

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

| | |
|---|---|
| MYLAN LABORATORIES INC. and | ) |
| MYLAN PHARMACEUTICALS INC., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| and | ) |
| | ) |
| MUTUAL PHARMACEUTICAL CO., INC., | ) |
| | ) |
| Intervenor-Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| MICHAEL O. LEAVITT, | ) |
| in his official capacity as | )      Civil Action No.  07-cv-579 (RMU) |
| SECRETARY OF HEALTH AND | ) |
| HUMAN SERVICES, | ) |
| | ) |
| ANDREW C. VON ESCHENBACH, M.D., | ) |
| in his official capacity as | ) |
| COMMISSIONER OF FOOD AND DRUGS, | ) |
| | ) |
| and | ) |
| | ) |
| UNITED STATES FOOD AND DRUG | ) |
| ADMINISTRATION, _et al._, | ) |
| | ) |
| Defendants, | ) |
| | ) |
| and | ) |
| | ) |
| TEVA PHARMACEUTICALS USA, INC., | ) |
| | ) |
| and | ) |
| | ) |
| APOTEX INC., | ) |
| | ) |
| Intervenor-Defendants. | ) |

**[PROPOSED] ORDER**

This matter is before the Court on the application of Intervenor-Defendant *Apotex's Motion for a Preliminary Injunction* (Dkt. No. 47), and Plaintiffs Mylan Laboratories Inc. and Mylan Pharmaceuticals Inc.'s *Opposition to Apotex's Motion for a Preliminary Injunction.*

Having considered the submissions of the parties, IT IS SO ORDERED that *Apotex's Motion for a Preliminary Injunction* is DENIED.

Signed this _____ day of _____, 2007.

_____
Hon. Ricardo M. Urbina
United States District Court Judge