## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MYLAN LABORATORIES INC. and MYLAN PHARMACEUTICALS INC., | ) ) ) |
| Plaintiffs, | ) ) ) |
| and | ) ) |
| MUTUAL PHARMACEUTICAL CO., INC., | ) ) |
| Intervenor-Plaintiff, | ) ) ) |
| v. | ) ) |
| MICHAEL O. LEAVITT, in his official capacity as SECRETARY OF HEALTH AND HUMAN SERVICES, | ) ) ) ) ) | Civil Action No. 07-CV-579 (RMU) |
| ANDREW C. VON ESCHENBACH, M.D., in his official capacity as COMMISSIONER OF FOOD AND DRUGS, | ) ) ) ) |
| and | ) ) |
| UNITED STATES FOOD AND DRUG ADMINISTRATION, | ) ) ) |
| Defendants, | ) ) |
| and | ) ) |
| TEVA PHARMACEUTICALS USA, INC., | ) ) ) |
| and | ) ) |
| APOTEX INC., | ) ) |
| Intervenor-Defendants. | ) ) |

## PLAINTIFFS' MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT

Pursuant to Fed. R. Civ. P. 15(d) and LCvR 15.1, Plaintiffs Mylan Laboratories Inc. and Mylan Pharmaceuticals Inc. (collectively "Mylan") respectfully move the court for leave to file a Second Amended Complaint in order to update the Statement of Facts and Prayer for Relief set forth in Mylan's *Amended Complaint*, filed April 11, 2007.  Subsequent to filing of Mylan's Amended Complaint, the United States Food and Drug Administration ("FDA") issued a letter decision on April 18, 2007, finding that Mylan's 180-day marketing exclusivity terminated when U.S. Patent No. 4,879,303 ("the '303 patent") expired.  The FDA also has indicated that, upon request, it will delist Pfizer's patent from the Orange Book.  Mylan seeks leave to amend its Amended Complaint in order to address the FDA's letter decision and threatened delisting.

Once a party has been served with a responsive pleading it may amend a pleading "only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires."  Fed. R. Civ. P. 15(a).  Additionally, where occurrences have happened after the date of the original pleading, the Court may allow a party to supplement its pleading.  *See* Fed. R. Civ. P. 15(d); *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996) (stating that a motion for leave to amend a pleading should be denied only if "there is sufficient reason, such as 'undue delay, bad faith or dilatory motive.'" (citation omitted)); *YWCA of the Nat'l Capital Area, Inc. v. Allstate Ins. Co.*, No. 94-0741, 2003 U.S. Dist. LEXIS 4373, at *7 (D.D.C. 2003) (allowing a party "to serve a supplemental pleading setting forth events which have happened since the date of the original complaint."); *City of Moundridge v. Exxon Mobil Corp.*, 471 F. Supp. 2d 20, 30 (D.D.C. 2007) (granting a motion for leave to file a second amended complaint where the amended pleading did not "unfairly prejudice the defendants or unduly delay the proceedings.").  Moreover, the standard is a liberal one favoring the amendment and supplemental amendment of pleadings.  *See Johnson v. Capital City Mortgage Corp.*, 723 A.2d

852, 858 (D.C. Cir. 1999) ("Although the decision is a matter of trial court discretion, the policy favoring resolution of cases on the merits creates 'a virtual presumption' that a court should grant leave where no good reason appears to the contrary.") (internal citations and quotations omitted)); *Aftergood v. CIA*, 225 F. Supp. 2d 27, 30 (D.D.C. 2002) ("[L]eave to file a supplemental pleading should be freely permitted when the supplemental facts connect it to the original pleading[.]") (quoting *Quaratino v. Tiffany & Co.*, 71 F.3d 58, 66 (2d Cir. 1995)). Here, justice requires that Plaintiff be allowed to supplement and amend its pleadings because the interceding event of the FDA's April 18 letter decision.[1]

Shortly after the filing of Mylan's original Complaint, the FDA sent a letter to interested parties seeking comment on questions regarding whether ANDAs in addition to Mylan's could be approved in light of either Mylan's 180-day period of generic exclusivity or the six-month period of pediatric exclusivity. By April 4, 2007, the FDA had received written comments from at least 13 pharmaceutical companies, branded and generic, including Mylan, Pfizer, and intervenors Apotex Inc., Teva Pharmaceuticals USA, Inc. and Mutual Pharmaceuticals. A number of these companies contended in their comments that neither 180-day generic exclusivity nor pediatric exclusivity should apply and that the FDA should immediately begin approving additional ANDAs. Mylan commented that both 180-day generic exclusivity and pediatric exclusivity apply.

On April 11, 2007, Mylan filed its Amended Complaint as of right, pursuant to Fed. R. Civ. P. 15. Mylan did so for two reasons: (1) to address the FDA's inclusion of pediatric

---

[1] The clean copy of the Second Amended Complaint, attached to this motion as Exhibit A, restates all of the allegations of the Amended Complaint, and makes some updates thereto. The additional copy of the Second Amended Complaint, attached to this motion as Exhibit B, has been redlined to show the changes to the text of the Amended Complaint that have been affected by the Second Amended Complaint.

exclusivity in its solicitation for comments to interested parties; and (2) to ensure that the FDA would not treat the later filers' applications differently with regard to the two exclusivities.

On April 18, 2007, the FDA issued a letter decision ruling that (1) Mylan's 180-day marketing exclusivity terminated when the patent expired; and (2) all of the unapproved ANDAs are currently blocked by the six-month period of pediatric exclusivity, except for Apotex's whose ANDA would be not blocked by pediatric exclusivity and approved if and when the mandate issues in the *Apotex* case. The letter decision also stated that the FDA could not determine on the current record whether other ANDAs will continue to be blocked by pediatric exclusivity until its expiration on September 25, 2007.

The items discussed and the decisions reached in FDA's April 18, 2007 letter directly relate to the issues raised in Mylan's *Complaint* and *Amended Complaint*, and also set "forth transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented." Fed. R. Civ. P. 15(d). The FDA's decision that Mylan's 180-day marketing exclusivity terminated when the '303 patent expired is unlawful and directly contrary to 21 U.S.C. § 355(j)(5)(B)(ii), (iv). As such, Mylan respectfully requests that the *Motion for Leave to File Second Amended Complaint* be granted.

Dated:  May 22, 2007                    Respectfully submitted,

                                                    /s/ David J. Harth

David J. Harth (#474632)
HELLER EHRMAN LLP
One East Main Street, Suite 201
Madison, Wisconsin 53703
(608) 663-7460

Shannon M. Bloodworth (#474925)
Joseph P. Whitlock (#484247)
HELLER EHRMAN LLP
1717 Rhode Island Avenue, N.W.
Washington, D.C. 20036
(202) 912-2000

E. Anthony Figg (#345124)
Minaksi Bhatt (#434448)
ROTHWELL, FIGG, ERNST & MANBECK PC
1425 K Street, N.W.
Suite 800
Washington, D.C. 20005
(202) 783-6040

Stuart A. Williams
Jill Ondos
MYLAN LABORATORIES INC.
1500 Corporate Drive
Suite 400
Canonsburg, Pennsylvania 15317
(724) 514-1840

Attorneys for Plaintiffs
*Mylan Laboratories Inc. and*
*Mylan Pharmaceuticals Inc.*

# Exhibit A

*Plaintiffs' Motion for Leave to File Second Amended Complaint*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| MYLAN LABORATORIES INC. and<br>MYLAN PHARMACEUTICALS INC.,<br><br>Plaintiffs,<br><br>and<br><br>MUTUAL PHARMACEUTICAL CO., INC.,<br><br>Intervenor-Plaintiff,<br><br>v.<br><br>MICHAEL O. LEAVITT,<br>in his official capacity as<br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>ANDREW C. VON ESCHENBACH, M.D.,<br>in his official capacity as<br>COMMISSIONER OF FOOD AND DRUGS,<br><br>UNITED STATES FOOD AND DRUG<br>ADMINISTRATION,<br><br>Defendants,<br><br>and<br><br>TEVA PHARMACEUTICALS USA, INC.,<br><br>and<br><br>APOTEX INC.,<br><br>Intervenor-Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) Civil Action No. 07-cv-579 (RMU)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## SECOND AMENDED COMPLAINT

Plaintiffs Mylan Laboratories Inc. and Mylan Pharmaceuticals Inc. (collectively

"Mylan"), by and through counsel, respectfully submit this Second Amended Complaint against

Michael O. Leavitt, in his official capacity as Secretary of Health and Human Services, Andrew C. von Eschenbach, in his official capacity as Commissioner of Food and Drugs, the United States Food and Drug Administration ("FDA"), and Pfizer Inc. ("Pfizer").  In support thereof, Plaintiffs allege as follows:

## THE PARTIES

1.      Plaintiff, Mylan Laboratories Inc., is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania and has a principal place of business at 1500 Corporate Drive, Canonsburg, Pennsylvania 15317.   Mylan Laboratories Inc. is the parent company of Mylan Pharmaceuticals Inc.

2.      Plaintiff, Mylan Pharmaceuticals Inc., is a corporation organized and existing under the laws of the State of West Virginia and has its principal place of business at 781 Chestnut Ridge Road, Morgantown, West Virginia 26505.   Mylan Pharmaceuticals Inc is engaged in the research, development, manufacture and distribution of generic pharmaceutical products.

3.      Defendant, Michael O. Leavitt, is Secretary of Health and Human Services ("HHS"), having offices at 200 Independence Avenue, S.W., Washington, DC 20204. Defendant Leavitt is responsible for supervising the activities of HHS and is being sued in his official capacity.

4.      Defendant, Andrew C. von Eschenbach, is Commissioner of the FDA, having offices at 200 C Street, S.W., Washington, DC 20204 and 5600 Fishers Lane, Rockville, MD 20857.   Upon information and belief, Defendant Eschenbach, is responsible for supervising FDA's activities, and is being sued in his official capacity.

5.      Defendant FDA is an agency within the Public Health Service, which is part of HHS.  The FDA has offices at 5600 Fishers Lane, Rockville, MD 20857.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over this action pursuant to the Administrative Procedure Act, 5 U.S.C. §§ 555, 701 *et seq.*; and 28 U.S.C. § 1331 (federal question).  The relief requested is also authorized pursuant to 28 U.S.C. § 2201 (declaratory relief); and 28 U.S.C. § 2202 (further relief).

7.      Venue is proper in this district pursuant to 28 U.S.C. § 1391.

## STATEMENT OF FACTS

8.      Amlodipine besylate is a drug approved by the FDA for treating hypertension and chronic stable and vasospastic angina.  The large pharmaceutical company Pfizer held two patents that it contended covered different aspects of amlodipine besylate, U.S. Patent No. 4,572,909 ("the '909 patent") and U.S. Patent No. 4,879,303 ("the '303 patent").  The '909 patent expired on July 31, 2002; the '303 patent expired on March 25, 2007.

9.      Since 1992, Pfizer has commercially marketed amlodipine besylate under the brand name Norvasc®.

10.     In May of 2002, Mylan filed with the FDA an Abbreviated New Drug Application ("ANDA") on generic 2.5 mg, 5 mg and 10 mg amlodipine besylate tablets.  Mylan's ANDA was and is governed by the provisions of the Hatch-Waxman Act.[1]

11.     By letter dated July 23, 2002, Mylan certified pursuant to § 505(j)(2)(A)(vii)(IV) of the Hatch-Waxman Act that the manufacture, use and sale of Mylan's 2.5 mg, 5 mg and 10

---

[1] *Drug Price Competition and Patent Term Restoration Act of 1984*, P.L. 98-417, 98 Stat. 1585 (Sept. 24, 1984) (amending the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 501 *et seq.*).

3

mg amlodipine besylate tablets would not infringe any valid or enforceable claim of the '909 patent and '303 patents. Mylan was the first to file a Paragraph IV certification with respect to amlodipine besylate.

12.     On September 20, 2002, Pfizer sued Mylan for patent infringement in the United States District Court for the Western District of Pennsylvania (the "Pennsylvania action").

13.     By letter dated October 3, 2005, the FDA notified Mylan that its amlodipine besylate ANDA was approved.

14.     In that same letter, the FDA provided the following notice:

> With respect to 180-day generic drug exclusivity, we note that Mylan was the first ANDA applicant to submit a substantially complete ANDA with a paragraph IV certification for Amlodipine Besylate Tablets . . . Therefore, with this approval, Mylan is eligible for 180-days of market exclusivity. This exclusivity, which is provided for under section 505(j)(5)(B)(iv) of the Act will begin to run from the earlier of the commercial marketing or court decision dates identified in section 505(j)(5)(B)(iv) of the Act.

15.     The FDA approved Mylan's amlodipine besylate ANDA despite the fact that in November, 2001 the FDA granted Pfizer pediatric exclusivity pursuant to 21 U.S.C. § 355a.

16.     In approximately May 2003, generic pharmaceutical company, Apotex Inc. ("Apotex"), filed an ANDA with the FDA seeking approval to sell amlodipine besylate tablets prior to the expiration of Pfizer's '303 patent and certifying pursuant to § 505(j)(2)(A)(vii)(IV) of the Hatch-Waxman Act that the manufacture, use and sale of Apotex's amlodipine besylate tablets would not infringe any valid or unenforceable claims of the '303 patent.

17.     On July 30, 2003, Pfizer sued Apotex for patent infringement in the United States District Court for the Northern District of Illinois (the "Illinois action"). The FDA has not to date approved Apotex's amlodipine besylate ANDA.

18.     Following a bench trial in the Illinois action, on January 29, 2006, the district court entered judgment dismissing Apotex's invalidity and unenforceability defenses and

declaring that Apotex's amlodipine besylate tablets infringed the '303 patent. In addition, the district court ordered that the effective date of Apotex's ANDA be no earlier than September 25, 2007 (patent expiration plus six months pediatric exclusivity) and enjoined Apotex from engaging in commercial activities with respect to amlodipine besylate. Apotex appealed the district court judgment to the Federal Circuit.

19.     On February 27, 2007, following a bench trial in the Pennsylvania action, the district court entered judgment dismissing Mylan's invalidity and unenforceability defenses and declaring that Mylan's amlodipine besylate tablets infringed the '303 patent. In addition, the district court ordered that the effective date of Mylan's ANDA be no earlier than March 25, 2007 and enjoined Mylan from engaging in commercial activities with respect to amlodipine besylate until patent expiration on March 25, 2007. Mylan appealed the district court judgment to the Federal Circuit.

20.     On March 22, 2007, the Federal Circuit issued its decision in the Illinois action, holding claims 1-3 of the '303 patent invalid for obviousness under 35 U.S.C. § 103. *See Pfizer, Inc. v. Apotex, Inc.,* No. 2006-1262, 2007 U.S. App. LEXIS 6623 (Fed. Cir. 2007). Pfizer subsequently filed a petition for rehearing and rehearing *en banc*.

21.     On March 23, 2007, the Federal Circuit issued a stay of the district court's order in the Pennsylvania action. Later that same day Mylan began commercial marketing of amlodipine besylate tablets, thereby triggering the 180 days of exclusivity pursuant to § 505(j)(5)(B)(iv) of the Hatch-Waxman Act and the FDA's approval letter.

22.    Under the terms of the Best Pharmaceuticals for Children Act ("BPCA"),[2] Pfizer's six-month period of pediatric exclusivity commenced the day following the '303 patent's expiration on March 25, 2007.  Because Mylan had final approval at the commencement of Pfizer's pediatric exclusivity, that exclusivity does not apply to Mylan.

23.    In addition to Mylan and Apotex, there are at least six other generic pharmaceutical companies who have filed ANDAs on amlodipine besylate.  All filed after Mylan.  None have received final FDA approval.

24.    On March 26, 2007, Mylan commenced this action and sought a temporary restraining order to enjoin the FDA from issuing approvals for any ANDAs for amlodipine besylate, claiming that Mylan is entitled by statute to a 180-day period of exclusive marketing and sale of the drug's generic version.  On that same day, based on the FDA's stated wish to solicit the views of other interested parties on the matter by April 4, 2007, and to render an agency decision on April 11, 2007, the Court ordered that the FDA notify the Court of its decision no later than April 11, 2007, and enjoined the FDA from taking any final agency action (i.e., granting any ANDAs at issue in this matter) from April 11, 2007 until April 13, 2007 at 5:00 pm to enable the Court to rule formally on Mylan's application for a temporary restraining order.  On April 10, 2007, upon the FDA's motion, the Court altered the schedule by ordering the FDA to notify the Court of its decision no later than April 18, 2007 and enjoining the FDA from taking any final agency action from April 18, 2007 until April 20, 2007 at 5:00 pm.

25.    On April 18, 2007, the FDA issued a letter decision ruling *inter alia*, a) that if and when the mandate effectuating the panel's March 22 decision issues in the *Apotex* case, Apotex's

---

[2] *Best Pharmaceuticals for Children Act of 2002*, Pub. L. No. 107-09, 115 Stat. 1408 (codified as amended in 21 U.S.C. and 42 U.S.C.).

ANDA will not be blocked by Pfizer's pediatric exclusivity; and b) that Mylan's 180-day marketing exclusivity terminated when the patent expired.

26.    On April 27, 2007, Mylan filed a Citizen Petition asking the FDA not to approve the ANDAs of any other generic drug manufacturer until after the expiration of Mylan's 180-day exclusivity period, or in the alternative, not to approve such ANDAs until the courts have finally resolved the expiration date of Mylan's 180-day exclusivity period.  The FDA has not responded to Mylan's Citizen Petition.

27.    On April 30, 2007, the Court denied Mylan's motion for a preliminary injunction. Mylan has appealed the Court's decision to the United States Court of Appeals for the District of Columbia Circuit.

28.    On May 21, 2007, the Court of Appeals for the Federal Circuit denied Pfizer's Petition for Rehearing and Rehearing *En Banc* in *Pfizer v. Apotex* and issued as a mandate its Order denying the petition.

## FIRST CAUSE OF ACTION

29.    The FDA's decision that once the mandate in *Pfizer v. Apotex* issues Apotex's ANDA will not be blocked by pediatric exclusivity is unlawful in that it directly conflicts with 21 U.S.C. § 355a(c)(2)(A) which provides that "if the drug is the subject of a listed patent for which certification has been submitted under [paragraph II] . . . and for which pediatric studies were submitted prior to the expiration of the patent . . . the period during which [a paragraph II] application may not be approved . . . *shall be* extended by a period of six months . . ." (emphasis added).

30.    The FDA's decision that Mylan's 180-day marketing exclusivity terminated when the '303 patent expired is unlawful and directly contrary to 21 U.S.C. § 355(j)(5)(B)(iv), which provides that paragraph IV applications from all but the first paragraph IV filer "*shall* be made

effective on the date that is 180 days after the date of the first commercial marketing of the drug . . ." (emphasis added).

31.    Mylan will be irreparably harmed if the FDA grants additional approvals during its 180-day period of exclusivity or during the six-month period of pediatric exclusivity.  Generic exclusivity is a valuable right that the Hatch-Waxman Act provides as an incentive for generic manufacturers to challenge invalid patents, such as Pfizer's '303 patent.  Pediatric exclusivity is a valuable right that the BPCA provides as an incentive to encourage testing of prescription drugs on children under two years old.  If the FDA permits other generics into the market during either exclusivity period, Mylan will incur substantial losses, losses which it will never be able to recoup, even if the FDA's actions are later overturned.

32.    There exists an actual and continuing justiciable case or controversy between Mylan and defendants sufficient to warrant the issuance of a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.  Thus, Mylan is entitled to a declaratory judgment, temporary restraining order, and permanent injunction to enjoin the FDA defendants from taking any action to issue an approval of any ANDA for amlodipine besylate products until the expiration of Mylan's 180-day generic exclusivity and the six-month period of pediatric exclusivity.

## SECOND CAUSE OF ACTION

33.    Mylan incorporates by reference paragraphs 1 through 32.

34.    Upon information and belief, Pfizer will ask the FDA to delist the '303 patent from the Orange Book now that the mandate has issued.  Based on the FDA's April 18, 2007 letter, Mylan believes that the FDA will accede to Pfizer's request and delist the '303 patent.  If the FDA delists the '303 patent, other generic companies will be free to enter the market immediately, thus depriving Mylan of its 180-day exclusivity.

8

35.     The FDA's refusal to maintain the *status quo* until the courts have resolved the expiration date of Mylan's 180-day exclusivity is arbitrary and capricious and contrary to law.

36.     Mylan will be irreparably harmed unless the FDA is enjoined from delisting the '303 patent.  Generic exclusivity is a highly valuable right and, once lost, can never be regained.

37.     There exists an actual and continuing justiciable case or controversy between Mylan and defendants sufficient to warrant the issuance of a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.   Thus, Mylan is entitled to a declaratory judgment, temporary restraining order, and permanent injunction to enjoin the FDA defendants from taking any action to delist the '303 patent.

## PRAYER FOR RELIEF

Wherefore, Mylan respectfully prays that this honorable Court:

1.     Issue a temporary restraining order and/or a preliminary injunction to enjoin the FDA defendants from taking any action to issue an approval of any Abbreviated New Drug Application for amlodipine besylate products pending the determination of the scope and duration of Mylan's 180-day generic exclusivity and Pfizer's six-month pediatric exclusivity.

2.     Issue a declaratory judgment and permanent injunction to enjoin the FDA defendants from taking any action to issue an approval of any Abbreviated New Drug Application for amlodipine besylate products until the expiration of Mylan's 180-day generic exclusivity and the six-month period of pediatric exclusivity.

3.     Issue a temporary restraining order and/or a preliminary injunction to enjoin the FDA defendants from delisting the '303 patent until all issues relating to Mylan's claimed 180-day exclusivity have been resolved, including a final determination by an appellate court.

4.     Issue a declaratory and permanent injunction declaring that Mylan has 180-day exclusivity and enjoining the FDA from delisting the '303 patent until that exclusivity has expired.

5.     Grant such other relief as may be just and appropriate.

Dated: May 22, 2007                              Respectfully submitted,


                                                      /s/ David J. Harth
                                                 David J. Harth (#474632)
                                                 HELLER EHRMAN LLP
                                                 One East Main Street, Suite 201
                                                 Madison, Wisconsin 53703
                                                 (608) 663-7460

                                                 Shannon M. Bloodworth (#474925)
                                                 Joseph P. Whitlock (#484247)
                                                 HELLER EHRMAN LLP
                                                 1717 Rhode Island Avenue, NW
                                                 Washington, D.C. 20036
                                                 (202) 912-2000

                                                 E. Anthony Figg (#345124)
                                                 Minaksi Bhatt (#434448)
                                                 ROTHWELL, FIGG, ERNST & MANBECK PC
                                                 1425 K Street, NW
                                                 Suite 800
                                                 Washington, DC 20005
                                                 (202) 783-6040

                                                 Stuart A. Williams
                                                 Jill Ondos
                                                 MYLAN LABORATORIES INC.
                                                 1500 Corporate Drive
                                                 Suite 400
                                                 Canonsburg, Pennsylvania 15317
                                                 (724) 514-1840

                                                 Attorneys for Plaintiffs
                                                 MYLAN LABORATORIES INC. and
                                                 MYLAN PHARMACEUTICALS INC.

10

# Exhibit B

*Plaintiffs' Motion for Leave to File Second Amended Complaint*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MYLAN LABORATORIES INC. and<br>MYLAN PHARMACEUTICALS INC., | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| and | )<br>) |
| MUTUAL PHARMACEUTICAL CO., INC., | )<br>) |
| Intervenor-Plaintiff, | )<br>) |
| v. | )<br>) |
| MICHAEL O. LEAVITT,<br>in his official capacity as<br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES, | )<br>)    Civil Action No.  07-cv-579 (RMU)<br>)<br>)<br>) |
| ANDREW C. VON ESCHENBACH, M.D.,<br>in his official capacity as<br>COMMISSIONER OF FOOD AND DRUGS, | )<br>)<br>)<br>) |
| ~~and~~ | ~~)~~<br>) |
| UNITED STATES FOOD AND DRUG<br>ADMINISTRATION,    ~~et al.,~~ | )<br>) |
| Defendants, | )<br>) |
| and | )<br>) |
| TEVA PHARMACEUTICALS USA, INC., | )<br>) |
| and | )<br>) |
| APOTEX INC., | )<br>) |
| Intervenor-Defendants. | ) |

### SECOND AMENDED COMPLAINT

Plaintiffs Mylan Laboratories Inc. and Mylan Pharmaceuticals Inc. (collectively "Mylan"), by and through counsel, respectfully submit this Second Amended Complaint against Michael O. Leavitt, in his official capacity as Secretary of Health and Human Services, Andrew C. von Eschenbach, in his official capacity as Commissioner of Food and Drugs, and the United States Food and Drug Administration ("FDA"). In support thereof, Plaintiffs allege as follows:

## THE PARTIES

1.  Plaintiff, Mylan Laboratories Inc., is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania and has a principal place of business at 1500 Corporate Drive, Canonsburg, Pennsylvania 15317. Mylan Laboratories Inc. is the parent company of Mylan Pharmaceuticals Inc.

2.  Plaintiff, Mylan Pharmaceuticals Inc., is a corporation organized and existing under the laws of the State of West Virginia and has its principal place of business at 781 Chestnut Ridge Road, Morgantown, West Virginia 26505. Mylan Pharmaceuticals Inc is engaged in the research, development, manufacture and distribution of generic pharmaceutical products.

3.  Defendant, Michael O. Leavitt, is Secretary of Health and Human Services ("HHS"), having offices at 200 Independence Avenue, S.W., Washington, DC 20204. Defendant Leavitt is responsible for supervising the activities of HHS and is being sued in his official capacity.

4.  Defendant, Andrew C. von Eschenbach, is Commissioner of the FDA, having offices at 200 C Street, S.W., Washington, DC 20204 and 5600 Fishers Lane, Rockville, MD 20857. Upon information and belief, Defendant Eschenbach, is responsible for supervising FDA's activities, and is being sued in his official capacity.

5.      Defendant FDA is an agency within the Public Health Service, which is part of HHS. The FDA has offices at 5600 Fishers Lane, Rockville, MD 20857.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over this action pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 555, 701 *et seq.*; and 28 U.S.C. § 1331 (federal question). The relief requested is also authorized pursuant to 28 U.S.C. § 2201 (declaratory relief); and 28 U.S.C. § 2202 (further relief).

7.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(e).1391.

## STATEMENT OF FACTS

8.      Amlodipine besylate is a drug approved by the FDA for treating hypertension and chronic stable and vasospastic angina. The large pharmaceutical company, Pfizer Inc. ("Pfizer"), held two patents that it contended covered different aspects of amlodipine besylate, U.S. Patent No. 4,572,909 ("the '909 patent") and U.S. Patent No. 4,879,303 ("the '303 patent"). The '909 patent expired on July 31, 2002; the '303 patent expired on March 25, 2007.

9.      Since 1992, Pfizer has commercially marketed amlodipine besylate under the brand name Norvasc®.

10.     In May of 2002, Mylan filed with the FDA an Abbreviated New Drug Application ("ANDA") on generic 2.5 mg, 5 mg and 10 mg amlodipine besylate tablets. Mylan's ANDA was and is governed by the provisions of the Hatch-Waxman Act.[1]

11.     By letter dated July 23, 2002, Mylan certified pursuant to § 505 (j)(2)(A)(vii)(IV) of the Hatch-Waxman Act that the manufacture, use and sale of Mylan's 2.5 mg, 5 mg and 10

---

[1] *Drug Price Competition and Patent Term Restoration Act of 1984*, P.L. 98-417, 98 Stat. 1585 (Sept. 24, 1984) (amending the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 501 *et seq.*).

mg amlodipine besylate tablets would not ~~violate~~infringe any valid or enforceable claim of the '909 patent and ~~the '303 patent because they were invalid, unenforceable, or not infringed~~'303 patents.  Mylan was the first to file a Paragraph IV certification with respect to amlodipine besylate.

12.    On September 20, 2002, Pfizer sued Mylan for patent infringement in the United States District Court for the Western District of Pennsylvania (the "Pennsylvania action").

13.    By letter dated October 3, 2005, the FDA notified Mylan that its amlodipine besylate ANDA was approved.

14.    In that same letter, the FDA provided the following notice:

With respect to 180-day generic drug exclusivity, we note that Mylan was the first ANDA applicant to submit a substantially complete ANDA with a paragraph IV certification for Amlodipine Besylate Tablets . . . Therefore, with this approval, Mylan is eligible for 180-days of market exclusivity.  This exclusivity, which is provided for under section 505(j)(5)(B)(iv) of the Act will begin to run from the earlier of the commercial marketing or court decision dates identified in section 505(j)(5)(B)(iv) of the Act.

15.    The FDA approved Mylan's amlodipine besylate ANDA despite the fact that in November, 2001 the FDA granted Pfizer ~~so-called~~ pediatric exclusivity pursuant to 21 U.S.C. § 355a.

16.    In approximately May 2003, generic pharmaceutical company, Apotex Inc. ("Apotex"), filed an ANDA with the FDA seeking approval to sell amlodipine besylate tablets prior to the expiration of Pfizer's '303 patent and certifying pursuant to § 505(j)(2)(A)(vii)(IV) of the Hatch-Waxman Act that the manufacture, use and sale of Apotex's amlodipine besylate tablets would not ~~violate~~infringe any valid or unenforceable claims of the '303 patent.

17.    On July 30, 2003, Pfizer sued Apotex for patent infringement in the United States District Court for the Northern District of Illinois (the "Illinois action").  The FDA has not to date approved Apotex's amlodipine besylate ANDA.

18.     Following a bench trial in the Illinois action, on January 29, 2006, the district court entered judgment dismissing Apotex's invalidity and unenforceability defenses and declaring that Apotex's amlodipine besylate tablets infringed the '303 patent.  In addition, the district court ordered that the effective date of Apotex's ANDA be no earlier than September 25, 2007 (patent expiration plus six months pediatric exclusivity) and enjoined Apotex from engaging in commercial activities with respect to amlodipine besylate.  Apotex appealed the district court judgment to the Federal Circuit.

19.     On February 27, 2007, following a bench trial in the Pennsylvania action, the district court entered judgment dismissing Mylan's invalidity and unenforceability defenses and declaring that Mylan's amlodipine besylate tablets infringed the '303 patent.  In addition, the district court ordered that the effective date of Mylan's ANDA be no earlier than March 25, 2007 and enjoined Mylan from engaging in commercial activities with respect to amlodipine besylate until patent expiration on March 25, 2007.  Mylan appealed the district court judgment to the Federal Circuit.

20.     On March 22, 2007, the Federal Circuit issued its decision in the Illinois action, holding claims 1-3 of the '303 patent invalid for obviousness under 35 U.S.C. § 103.  *See Pfizer, Inc. v. Apotex, Inc.,* No. 2006-1262, 2007 U.S. App. LEXIS 6623 (Fed. Cir. 2007).  Pfizer subsequently filed a petition for rehearing and rehearing *en banc*.  ~~As of this date, the Federal Circuit has not acted on Pfizer's petition and no mandate has been issued.~~

21.     On March 23, 2007, the Federal Circuit issued a stay of the district court's order in the Pennsylvania action.  Later that same day Mylan began commercial marketing of amlodipine besylate tablets, thereby triggering the 180 days of exclusivity pursuant to § 505(j)(5)(B)(iv) of the Hatch-Waxman Act and the FDA's approval letter.

22.     Under the terms of the Best Pharmaceuticals for Children Act ("BPCA"),[2] Pfizer's six-month period of pediatric exclusivity commenced the day following the '303 patent's expiration on March 25, 2007.  Because Mylan had final approval at the commencement of Pfizer's pediatric exclusivity, that exclusivity does not apply to Mylan.

23.     In addition to Mylan and Apotex, there are at least six other generic pharmaceutical companies who have filed ANDAs on amlodipine besylate.  All filed after Mylan.  None have received final FDA approval.

24.     On March 26, 2007, Mylan commenced this action and sought a temporary restraining order to enjoin the FDA from issuing approvals for any ANDAs for amlodipine besylate, claiming that Mylan is entitled by statute to a 180-day period of exclusive marketing and sale of the drug's generic version.  On that same day, based on the FDA's stated wish to solicit the views of other interested parties on the matter by April 4, 2007, and to render an agency decision on April 11, 2007, the Court ordered that the FDA notify the Court of its decision no later than April 11, 2007, and enjoined the FDA from taking any final agency action (i.e., granting any ANDAs at issue in this matter) from April 11, 2007 until April 13, 2007 at 5:00 pm to enable the Court to rule formally on Mylan's application for a temporary restraining order.  On April 10, 2007, upon the FDA's motion, the Court altered the schedule by ordering the FDA to notify the Court of its decision no later than April 18, 2007 and enjoining the FDA from taking any final agency action from April 18, 2007 until April 20, 2007 at 5:00 pm.

25.     ~~On March 29, 2007, the FDA sent a letter to certain interested parties seeking comment on the following five questions:~~On April 18, 2007, the FDA issued a letter decision ruling *inter alia*, a) that if and when the mandate effectuating the panel's March 22 decision

---

[2] *Best Pharmaceuticals for Children Act of 2002*, Pub. L. No. 107-09, 115 Stat. 1408 (codified as amended in 21 U.S.C. and 42 U.S.C.).

issues in the *Apotex* case, Apotex's ANDA will not be blocked by Pfizer's pediatric exclusivity; and b) that Mylan's 180-day marketing exclusivity terminated when the patent expired.

1. What date controls FDA's giving effect to the decision in *Pfizer Inc. v. Apotex*, Inc., No. 2006-1261 (Fed. Cir. March 22, 2007) ("*Apotex* decision") holding that Pfizer's patent 4,879,303 ("the '303 patent") is invalid? Can FDA treat the '303 patent as invalid as of March 22, 2007, or must FDA await the issuance of the mandate? Is the answer the same for all purposes, that is, for determining the applicability of pediatric exclusivity, the triggering of 180-day exclusivity, and the eligibility of other ANDA applicants for final approval?

2. If FDA must await the issuance of the mandate, does pediatric exclusivity bar approval of all unapproved ANDAs in the meantime?

3. If and when the *Apotex* decision is implemented, what is the effect of the decision that the '303 patent is invalid on the obligation of an ANDA applicant to change its certification? Must Pfizer delist its patent, so that certifications can be withdrawn? Or can FDA treat an invalid patent as delisted as a matter of law, and presume the withdrawal of the certifications? Or must the ANDA applicants file paragraph II certifications stating that the '303 patent has expired?

4. If and when the *Apotex* decision is implemented and the patent is treated as invalid, does pediatric exclusivity attach to the '303 patent with respect to any unapproved ANDAs? Does it matter whether the ANDA applicant filed a paragraph III or IV certification before patent expiration?

5. Does 180-day exclusivity triggered before a patent expires continue to bar approvals of other ANDAs after the patent expires, even if other ANDA applicants change their certifications to paragraph II or withdraw their certifications altogether?

The questions posed by the FDA not only address whether the FDA is prevented from approving additional ANDAs on the basis of Mylan's claimed 180-day generic exclusivity, but also whether Pfizer's pediatric exclusivity provides an separate basis for not approving additional ANDAs, at least until pediatric exclusivity expires.

26.    By April 4, 2007, the FDA had received written comments from at least 13 pharmaceutical companies, branded and generic, including Mylan, Pfizer, and intervenors Apotex Inc., Teva Pharmaceuticals USA, Inc. and Mutual Pharmaceuticals. A number of these

companies contend in their comments that neither 180-day generic exclusivity nor pediatric exclusivity apply under the facts of this case and that the FDA should immediately begin approving additional ANDAs. Mylan and others contend in their comments that both 180-day generic exclusivity and pediatric exclusivity apply. On April 27, 2007, Mylan filed a Citizen Petition asking the FDA not to approve the ANDAs of any other generic drug manufacturer until after the expiration of Mylan's 180-day exclusivity period, or in the alternative, not to approve such ANDAs until the courts have finally resolved the expiration date of Mylan's 180-day exclusivity period. The FDA has not responded to Mylan's Citizen Petition.

27.     On April 30, 2007, the Court denied Mylan's motion for a preliminary injunction. Mylan has appealed the Court's decision to the United States Court of Appeals for the District of Columbia Circuit.

28.     On May 21, 2007, the Court of Appeals for the Federal Circuit denied Pfizer's Petition for Rehearing and Rehearing *En Banc* in *Pfizer v. Apotex* and issued as a mandate its Order denying the petition.

## FIRST CAUSE OF ACTION

29.     The FDA's decision that once the mandate in *Pfizer v. Apotex* issues Apotex's ANDA will not be blocked by pediatric exclusivity is unlawful in that it directly conflicts with 21 U.S.C. § 355a(c)(2)(A) which provides that "if the drug is the subject of a listed patent for which certification has been submitted under [paragraph II] . . . and for which pediatric studies were submitted prior to the expiration of the patent . . . the period during which [a paragraph II] application may not be approved . . . *shall be* extended by a period of six months . . ." (emphasis added).

8

30.    The FDA's decision that Mylan's 180-day marketing exclusivity terminated when the '303 patent expired is unlawful and directly contrary to 21 U.S.C. § 355(j)(5)(B)(iv), which provides that paragraph IV applications from all but the first paragraph IV filer "*shall* be made effective on the date that is 180 days after the date of the first commercial marketing of the drug . . ." (emphasis added).

31.    27. Mylan will be irreparably harmed if the FDA grants additional approvals during its 180-day period of exclusivity or during Pfizer'sthe six-month period of pediatric exclusivity.  Generic exclusivity is a valuable right that the Hatch-Waxman Act provides as an incentive for generic manufacturers to challenge invalid patents, such as Pfizer's '303 patent. Pediatric exclusivity is a valuable right that the BPCA provides as an incentive to encourage testing of prescription drugs on children under two years old.  If the FDA permits other generics into the market during either exclusivity period, Mylan will incur substantial losses, losses which it will never be able to recoup, even if the FDA's actions are later overturned.

32.    There exists an actual and continuing justiciable case or controversy between Mylan and defendants sufficient to warrant the issuance of a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.  Thus, Mylan is entitled to a declaratory judgment, temporary restraining order, and permanent injunction to enjoin the FDA defendants from taking any action to issue an approval of any ANDA for amlodipine besylate products until the expiration of Mylan's 180-day generic exclusivity and the six-month period of pediatric exclusivity.

## SECOND CAUSE OF ACTION

33.    Mylan incorporates by reference paragraphs 1 through 32.

34.    Upon information and belief, Pfizer will ask the FDA to delist the '303 patent from the Orange Book now that the mandate has issued.  Based on the FDA's April 18, 2007

letter, Mylan believes that the FDA will accede to Pfizer's request and delist the '303 patent.  If the FDA delists the '303 patent, other generic companies will be free to enter the market immediately, thus depriving Mylan of its 180-day exclusivity.

35.    The FDA's refusal to maintain the *status quo* until the courts have resolved the expiration date of Mylan's 180-day exclusivity is arbitrary and capricious and contrary to law.

36.    Mylan will be irreparably harmed unless the FDA is enjoined from delisting the '303 patent.  Generic exclusivity is a highly valuable right and, once lost, can never be regained.

37.    There exists an actual and continuing justiciable case or controversy between Mylan and defendants sufficient to warrant the issuance of a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.  Thus, Mylan is entitled to a declaratory judgment, temporary restraining order, and permanent injunction to enjoin the FDA defendants from taking any action to delist the '303 patent.

## PRAYER FOR RELIEF

Wherefore, Mylan respectfully prays that this honorable Court:

1.    Issue a temporary restraining order and/or a preliminary injunction to enjoin the FDA defendants from taking any action to issue an approval of any Abbreviated New Drug Application for amlodipine besylate products pending the determination of the scope and duration of Mylan's 180-day generic exclusivity and Pfizer's six-month pediatric exclusivity.

2.    Issue a declaratory judgment and permanent injunction to enjoin the FDA defendants from taking any action to issue an approval of any Abbreviated New Drug Application for amlodipine besylate products until the expiration of Mylan's 180-day generic exclusivity and ~~Pfizer's~~the six-month period of pediatric exclusivity.

3.    Issue a temporary restraining order and/or a preliminary injunction to enjoin the FDA defendants from delisting the '303 patent until all issues relating to Mylan's claimed 180-day exclusivity have been resolved, including a final determination by an appellate court.

4.    Issue a declaratory and permanent injunction declaring that Mylan has 180-day exclusivity and enjoining the FDA from delisting the '303 patent until that exclusivity has expired.

5.    Grant such other relief as may be just and appropriate.

11

Dated: ~~April 11,~~ May 22, 2007                         Respectfully submitted,

_____

David J. Harth (#474632)
HELLER EHRMAN LLP
One East Main Street, Suite 201
Madison, Wisconsin 53703
(608) 663-7460

Shannon M. Bloodworth (#474925)
Joseph P. Whitlock (#484247)
HELLER EHRMAN LLP
1717 Rhode Island Avenue, NW
Washington, D.C. 20036
(202) 912-2000

E. Anthony Figg (#345124)
~~Steven Lieberman (#439783)~~
Minaksi Bhatt (#434448)
ROTHWELL, FIGG, ERNST & MANBECK PC
1425 K Street, NW
Suite 800
Washington, DC 20005
(202) 783-6040

Stuart A. Williams
Jill Ondos
MYLAN LABORATORIES INC.
1500 Corporate Drive
Suite 400
Canonsburg, Pennsylvania 15317
(724) 514-1840

Attorneys for Plaintiffs
MYLAN LABORATORIES INC. and
MYLAN PHARMACEUTICALS INC.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

| | |
|---|---|
| MYLAN LABORATORIES INC. and | ) |
| MYLAN PHARMACEUTICALS INC., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| and | ) |
| | ) |
| MUTUAL PHARMACEUTICAL CO., INC., | ) |
| | ) |
| Intervenor-Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| MICHAEL O. LEAVITT, | ) |
| in his official capacity as | )   Civil Action No.  07-cv-579 (RMU) |
| SECRETARY OF HEALTH AND | ) |
| HUMAN SERVICES, | ) |
| | ) |
| ANDREW C. VON ESCHENBACH, M.D., | ) |
| in his official capacity as | ) |
| COMMISSIONER OF FOOD AND DRUGS, | ) |
| | ) |
| and | ) |
| | ) |
| UNITED STATES FOOD AND DRUG | ) |
| ADMINISTRATION, _et al._, | ) |
| | ) |
| Defendants, | ) |
| | ) |
| and | ) |
| | ) |
| TEVA PHARMACEUTICALS USA, INC., | ) |
| | ) |
| and | ) |
| | ) |
| APOTEX INC., | ) |
| | ) |
| Intervenor-Defendants. | ) |

**[PROPOSED] ORDER**

This matter is before the Court on the application of Plaintiffs, Mylan Laboratories Inc. and Mylan Pharmaceuticals Inc. (collectively "Mylan"), for Leave to File Second Amended Complaint.

Having considered those application papers, Mylan's motion for leave to file their Second Amended Complaint is GRANTED.

Signed this _____ day of _____, 2007.

_____
UNITED STATES DISTRICT JUDGE

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

| | |
|---|---|
| MYLAN LABORATORIES INC. and | ) |
| MYLAN PHARMACEUTICALS INC., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| and | ) |
| | ) |
| MUTUAL PHARMACEUTICAL CO., INC., | ) |
| | ) |
| Intervenor-Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| MICHAEL O. LEAVITT, | ) |
| in his official capacity as | ) |
| SECRETARY OF HEALTH AND | ) |
| HUMAN SERVICES, | ) |
| | ) |
| ANDREW C. VON ESCHENBACH, M.D., | ) |
| in his official capacity as | ) |
| COMMISSIONER OF FOOD AND DRUGS, | ) |
| | ) |
| and | ) |
| | ) |
| UNITED STATES FOOD AND DRUG | ) |
| ADMINISTRATION, _et al._, | ) |
| | ) |
| Defendants, | ) |
| | ) |
| and | ) |
| | ) |
| TEVA PHARMACEUTICALS USA, INC., | ) |
| | ) |
| and | ) |
| | ) |
| APOTEX INC., | ) |
| | ) |
| Intervenor-Defendants. | ) |

Civil Action No.  07-cv-579 (RMU)

**CERTIFICATE OF SERVICE**

I hereby certify that on the 22nd day of May, 2007, Mylan Laboratories Inc. and Mylan Pharmaceuticals Inc.'s **PLAINTIFFS' MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT, SECOND AMENDED COMPLAINT, and [PROPOSED] ORDER** were filed with the Clerk of the Court via electronic mail, who will send ECF notices via electronic mail to the attorneys of record listed below.

Drake S. Cutini
DEPARTMENT OF JUSTICE
Office of Consumer Litigation
950 Pennsylvania Avenue, NW
Washington, DC 20530-001

John Will Ongman
AXINN, VELTROP & HARKRIDER LLP
1801 K Street W, N.W., Suite 411
Washington, DC 20006

Jay Lefkowitz
Michael Shumsky
KIRKLAND & ELLIS LLP
655 Fifteenth Street, N.W.
Washington, DC 20005-5793

Jo-Anne Kokoski
Chad Landmon
AXINN, VELTROP & HARKRIDER, LLP
90 State House Square
Hartford, CT 06103

Arthur Y. Tsien
OLSSON, FRANK AND WEEDA, PC
1400 16th Street, NW
Suite 400
Washington, DC 20036-2220

Robert Briesblatt
WELSH & KATZ, LTD.
120 South Riverside Plaza
Chicago, IL 60606

_____
/s/ David J. Harth
David J. Harth