**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| MYLAN LABORATORIES INC. and <br> MYLAN PHARMACEUTICALS INC., <br><br> Plaintiffs, <br><br> and <br><br> MUTUAL PHARMACEUTICAL CO., INC., <br><br> Intervenor-Plaintiff, <br><br> v. <br><br> MICHAEL O. LEAVITT, <br> in his official capacity as <br> SECRETARY OF HEALTH AND <br> HUMAN SERVICES, <br><br> ANDREW C. VON ESCHENBACH, M.D., <br> in his official capacity as <br> COMMISSIONER OF FOOD AND DRUGS, <br><br> UNITED STATES FOOD AND DRUG <br> ADMINISTRATION, <br><br> Defendants, <br><br> and <br><br> TEVA PHARMACEUTICALS USA, INC., <br><br> and <br><br> APOTEX INC., <br><br> Intervenor-Defendants. | Civil Action No. 07-cv-579 (RMU) |

**PLAINTIFFS' COMBINED REPLY IN SUPPORT OF ITS
EMERGENCY APPLICATION TO TEMPORARILY RESTRAIN THE FDA FROM
APPROVING ANY ADDITIONAL AMLODIPINE ANDAS IN
<u>DEROGATION OF MYLAN'S RIGHT TO 180-DAY MARKET EXCLUSIVITY</u>**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ...............................................................................................................1

ARGUMENT .......................................................................................................................1

I. THIS COURT HAS JURISDICTION TO PRESERVE THE *STATUS QUO* PENDING APPEAL............................................................................................1

II. THE FDA MAY NOT DELIST THE '303 PATENT IN DEROGATION OF MYLAN'S RIGHT TO 180 DAY EXCLUSIVITY............................................3

III. MYLAN IS LIKELY TO SUCCEED ON ITS CLAIM TO 180-DAY EXCLUSIVITY BECAUSE THERE IS NO SUPPORT FOR THE FDA's DEVIATION FROM THE PLAIN STATUTORY LANGUAGE............................................................4

IV. THE EQUITIES FAVOR ISSUANCE OF AN INJUNCTION PENDING THE COURT OF APPEALS DECISION ..................................................................8

CONCLUSION...................................................................................................................10

# TABLE OF AUTHORITIES

**Federal Cases**

*Apotex, Inc. v. Food and Drug Administration*,
    No. 06-0627, 2006 U.S. Dist. LEXIS 20894 (D.D.C. Apr. 19, 2006),
    *aff'd*, 449 F.3d 1249 (D.C. Cir. 2006) .............................................................................. 8-9

*Barrow v. Graham,*
    124 F. Supp. 2d 714 (D.D.C. 2000) ..................................................................................... 8

*Ced's Inc. v. U.S. E.P.A.,*
    745 F.2d 1092 (7th Cir. 1984) .............................................................................................. 3

*Engine Mfrs. Ass'n, ex rel. Certain of its Members v. EPA*,
    88 F.3d 1075 (D.C. Cir. 1996) ............................................................................................. 5

*Fernandez-Vargas v. Gonzales*,
    126 S. Ct. 2422 (2006) ........................................................................................................ 6

*Human Resources Mgmt., Inc. v. Weaver*,
    442 F. Supp. 241 (D.D.C. 1977) ...................................................................................... 1-2

*Mova Pharmaceutical Corp. v. Shalala*,
    955 F. Supp. 128 (D.D.C. 1997), *aff'd*, 140 F.3d 1060 (D.C. Cir. 1998) ........................... 9

*Mylan Pharms. Inc. v. Shalala*,
    81 F. Supp. 2d 30 (D.D.C. 2000) ....................................................................................... 10

*Pro Sales, Inc. v. Texaco, U.S.A., Div. of Texaco, Inc.*,
    792 F.2d 1394 (9th Cir. 1986) ............................................................................................. 3

*Ranbaxy Laboratories Ltd. v. Leavitt*,
    469 F.3d 120 (D.C. Cir. 2006) ..................................................................................... 3-4, 5

*Ranbaxy Laboratories, Ltd. v. Leavitt*,
    459 F. Supp. 2d 1 (D.D.C.), *aff'd*, 469 F.3d 120 (D.C. Cir. 2006) ..................................... 5

*Sansom Committee v. Lynn*,
    735 F.2d 1552 (3d Cir. 1984) ............................................................................................... 2

*Students Challenging Regulatory Agency Procedures (S.C.R.A.P.) v. United States*,
    353 F. Supp. 317 (D.D.C. 1973), *vacated on other grounds by* 414 U.S. 1035 (1973) ..... 2

*United States v. DeFries*,
    129 F.3d 1293 (D.C. Cir. 1997) .................................................................................... 2

*Waterman Steamship Corp. v. Burnley*,
    691 F. Supp. 1524 (D.C. Cir. 1988) ............................................................................... 6

**Federal Statutes**

21 U.S.C. § 355(j)(5)(B)(iii) ................................................................................................. 7, 8

21 U.S.C. § 355(j)(5)(B)(iv) ............................................................................................ 4, 5, 6, 7

**Other Authorities**

16A Wright, Miller & Cooper, Fed. Prac. & Proc. § 3949.1 (2007) ............................................. 2

Federal Rule of Civil Procedure 62(c) ................................................................................. 2, 3

Hatch-Waxman Act ............................................................................................... *passim*

## INTRODUCTION

The FDA and Teva would prefer that this Court avoid the merits of Mylan's motion for injunctive relief pending appeal by ruling that it does not have jurisdiction now that the Court's denial of Mylan's earlier motion for a preliminary injunction is on appeal. But both the Federal Rules of Civil Procedure and case law from this Circuit make clear that the Court may maintain the *status quo* while the case is on appeal. That is exactly what Mylan seeks here—no more and no less. On the merits, the FDA relies on cases holding that *eligibility* for 180-day exclusivity does not survive patent expiration, ignoring the fact that here Mylan's 180-day exclusivity had *vested* before the '303 patent expired. As we discuss below, under the Hatch-Waxman Act, this distinction makes all the difference in the world, and for that reason, Mylan is likely to succeed on the merits of its appeal. Success on appeal, however, will be meaningless, unless this Court grants the requested injunctive relief.

## ARGUMENT

### I. THIS COURT HAS JURISDICTION TO PRESERVE THE *STATUS QUO* PENDING APPEAL

This Court unquestionably has jurisdiction over Mylan's motion to preserve the *status quo* until the court of appeals can decide Mylan's claim to 180-day exclusivity. The FDA's position that this Court lacks jurisdiction to entertain the motion because Mylan has appealed this Court's interlocutory order denying its motion for preliminary injunction, is incorrect as a matter of law:

> As a preliminary matter, the government contends that the noting of the appeal divests this Court of jurisdiction to consider the instant motion. The Court cannot agree. Although an appeal from a final judgment may have such an effect, the appeal in this action is from an interlocutory order, the denial of an application for a preliminary injunction. In such circumstances, a federal district court is not divested of power to take continuing action in the underlying case.

*Human Resources Mgmt., Inc. v. Weaver*, 442 F. Supp. 241, 250 (D.D.C. 1977); *see also Students Challenging Regulatory Agency Procedures (S.C.R.A.P.) v. United States*, 353 F. Supp. 317, 320 n.2 (D.D.C. 1973) (holding that the settled rule that filing of an appeal vests jurisdiction over the cause of action in the appellate court and denies the lower court jurisdiction to take any further action in the case "is subject to well recognized exceptions, including the principle that an appeal from a lower court order granting a preliminary injunction does not divest the lower court of jurisdiction."), *vacated on other grounds by* 414 U.S. 1035.

Not only does the case continue during the interlocutory appeal of the denial of the preliminary injunction, the Federal Rules specifically provides that this Court can do exactly what Mylan has asked it to do. "When an appeal is taken from an interlocutory or final judgment . . . denying an injunction, the court in its discretion may suspend, modify, restore, or grant an injunction during the pendency of the appeal. . . ." Fed. R. Civ. P. 62(c). Indeed, the very treatise upon which Teva relies—Section 3949.1 of Wright, Miller, and Cooper— supports the power of this Court to enter the preliminary injunction requested by Mylan: "And in a variety of circumstances, 'a district court possesses residual jurisdiction to enter orders to assist in maintaining the status quo pending disposition of an appeal.'" 16A Wright, Miller & Cooper, Fed. Prac. & Proc. § 3949.1 (2007), quoting *Sansom Committee v. Lynn*, 735 F.2d 1552, 1554 (3d Cir. 1984).

The other cases cited by the FDA and Teva are inapposite because they do not concern appeals from the denial of a preliminary injunction, *see United States v. DeFries*, 129 F.3d 1293, 1302-1303 (D.C. Cir. 1997) (holding that a mail fraud trial could not proceed until the Court of Appeals issued its mandate that reversed the district court's dismissal of the mail fraud count). Two of the cases deal with a district courts that sought to amend the very opinion being

appealled.  *Pro Sales, Inc. v. Texaco, U.S.A., Div. of Texaco, Inc.*, 792 F.2d 1394, 1396 n.1 (9th Cir. 1986) ("We note that the district court purported to amend its opinion after Pro Sales had filed its notice of appeal from the order of dismissal.  Because the filing of a notice of appeal generally divests the district court of jurisdiction over the matters appealed, the district court here had no power to amend its opinion at the time it attempted to do so.  We therefore address the district court's reasoning as set forth in its original opinion."); *Ced's Inc. v. U.S. E.P.A.,* 745 F.2d 1092, 1095 (7th Cir. 1984) (holding that the district court exceeded its jurisdiction in issuing the supplemental memorandum opinion, nearly four months after judgment was entered and two months after the notice of appeal).

Mylan is not asking this Court to amend or supplement its Memorandum Opinion, which is currently on appeal.  Rather Mylan only asks, as permitted by Fed. R. Civ. P. 62(c), that this Court maintain the *status quo* until the court of appeals rules on Mylan's claim to 180-day exclusivity.  This the Court has jurisdiction to do.

## II.    THE FDA MAY NOT DELIST THE '303 PATENT IN DEROGATION OF MYLAN'S RIGHT TO 180 DAY EXCLUSIVITY

In *Ranbaxy Labs. Ltd. v. Leavitt*, 469 F.3d 120 (D.C. Cir. 2006), the D.C. Circuit held "unlawful the FDA's policy requiring that the first filer of a paragraph IV certification be sued in order to preserve its statutory exclusivity when the NDA holder seeks to delist the patent rather than to litigate."  *Id.* at 126.  That policy would "allow[] an NDA holder, by delisting its patent, to deprive the generic applicant of a period of marketing exclusivity."  *Id.*   In particular, the Court held that the FDA's delisting policy could not survive *Chevron* review because "[b]y thus reducing the certainty of receiving a period of marketing exclusivity, the FDA's delisting policy diminishes the incentive for a manufacturer of generic drugs to challenge a patent listed in the

Orange Book in the hope of bringing to market a generic competitor for an approved drug without waiting for the patent to expire." *Id.*

So here.  By permitting Pfizer to delist the '303 patent before Mylan's 180-day exclusivity has run, the FDA has greatly reduced the incentive for generics to challenge invalid pharmaceutical patents.  Perversely, the FDA's policy actually encourages patent holders to delay and prolong Hatch-Waxman litigation until patent expiration in order to deny a first filer the 180-day exclusivity to which it would otherwise be entitled.

In *Ranbaxy,* the FDA argued that the first filer had no expectation of exclusivity because "the generic applicant's right to a period of marketing exclusivity does not vest upon its filing a paragraph IV certification."  *Id.* at 125.  Here, as we show in the following section, Mylan's 180-day exclusivity *had* vested, making the FDA's decision to delist that much more egregious.

### III.  MYLAN IS LIKELY TO SUCCEED ON ITS CLAIM TO 180-DAY EXCLUSIVITY BECAUSE THERE IS NO SUPPORT FOR THE FDA'S DEVIATION FROM THE PLAIN STATUTORY LANGUAGE

None of the cases relied on by the FDA address a claim to 180-day exclusivity that has vested before patent expiration.  Here no one disputes that Mylan's statutory right to 180-day exclusivity *did* vest before the '303 patent expired.  The 1984 Hatch-Waxman amendments to the FDCA provide that the 180-day exclusivity period for the first generic drug applicant to challenge an innovator's patent is triggered upon the earlier of (1) the beginning of commercial marketing by the first applicant or (2) a judicial determination of patent invalidity or noninfringement. 21 U.S.C. § 355(j)(5)(B)(iv). Congress instructed that, once the exclusivity period has been triggered, any other approved ANDA "shall be made effective not earlier than one hundred and eighty days after" the beginning of the exclusivity period.  *Id.*  Congress said nothing about a potential loss of this exclusivity period in the event that the underlying

4

challenged patent expired during the period of exclusivity.  Because the plain language of Hatch-Waxman authorizes no such loss, it would be impermissible for the FDA to impose one here, even if the statute were otherwise silent on this issue.  *See, e.g.*, *Ranbaxy Laboratories*, 469 F.3d at 125 (noting D.C. Circuit decisions "reject[ing] at *Chevron* step one the FDA's attempt to add to the statutory requirements for exclusivity").

Yet that is exactly what the FDA is again attempting to do here: add a limitation that Congress did not.  The statute does not say that a subsequent applicant shall not receive approval 180- days after "(I) … first commercial marketing…or (II) the date of a decision of a court…; *or (III) the patent's expiration*, whichever is earlier."  21 U.S.C. § 355(j)(5)(B)(iv) (2002).  If Congress had intended for the 180-day exclusivity period to be extinguished whenever the underlying patent expired, it would so stated.  Indeed, as Teva explained, the statute specifies when a first-filer can be divested of its exclusivity rights – on the 181st day after a subsequent filers court decision.  Teva Br.[1] at 9.  "The first canon of statutory construction is that courts" – and administrative agencies – "must presume that the legislature meant what it said in a statute." *Ranbaxy Laboratories, Ltd. v. Leavitt*, 459 F. Supp. 2d 1, 8 (D.D.C.), *aff'd*, 469 F.3d 120 (D.C. Cir. 2006).  The FDA has no authority to do what Congress explicitly decided not to do.  *See Engine Mfrs. Ass'n, ex rel. Certain of its Members v. EPA*, 88 F.3d 1075, 1088-89 (D.C. Cir. 1996) ("[T]here must be evidence that Congress meant something other than what it literally said before a court can depart from plain meaning…  [T]he court's role is not to 'correct' the text so that it better serves the statute's purposes, for it is the function of the political branches not only to define the goals but also to choose the means for reaching them.") (citations omitted);

---

[1] *Brief of Teva Pharmaceuticals USA, Inc. in Opposition to Mylan's Renewed Motion for Temporary Injunctive Relief* [Dkt. No. 80].

*Waterman Steamship Corp. v. Burnley*, 691 F. Supp. 1524, 1537 (D.C. Cir. 1988) ("Had Congress sought to make available a ready and continuing supply of section 615 authorizations, it certainly could have done so. All it need have done was to enact section 615 without any expiration date.").

Here, there is no dispute that (1) Mylan was awarded 180-days of marketing exclusivity by the FDA; (2) Mylan submitted its notice of "first commercial marketing" to the FDA on March 23, 2007; (3) at the time that Mylan submitted its certification at least both Apotex and Teva's ANDAs were subsequent applications containing a paragraph IV certification; and (4) those ANDAs "shall be made effective not earlier than 180 days" after March 23rd. The FDA ignores the applications of these facts to the plain language of the statute, instead, asserting that the vesting of Mylan's 180-day exclusivity rights is a "distinction without a difference." FDA Br.[2] at 10 n.2. But vested rights *are* legally different from unvested rights. *See, e.g., Fernandez-Vargas v. Gonzales*, 126 S. Ct. 2422, 2427-28 (2006) (providing that statutes are disfavored as retroactive when their application would impair vested rights). More importantly, the FDA's argument is belied by the statute itself – if Mylan's 180-day rights are vested by either (I) commercial marketing or (II) a decision of a court, then the FDA "shall" not approve other ANDAs for 180 days. 21 U.S.C. § 355(j)(5)(B)(iv) (2002). By its terms, the statute does not apply until 180-day exclusivity has been triggered. Thus, whether or not 180-day exclusivity has vested prior to patent expiration is a key distinction and leads to very different consequences. Indeed, no court has ever held that the FDA has the authority to revoke exclusivity once begun. As Teva correctly points out, "[I]n *Dr. Reddy's*, the court specifically upheld FDA's

---

[2] *Government Defendants' Opposition to Mylan's Application for Temporary Restraining Order Filed June 26, 2007* [Dkt. No. 81].

determination that the expiration of a patent divests the first-filer of its *eligibility* for exclusivity as a reasonable interpretation of the statute." Teva Br. at 7 (emphasis added).

The FDA's interpretation also improperly views Mylan's 180-day exclusivity as if it were to begin today, instead of March 23. The 180-day exclusivity statute should be prospectively interpreted as it is written prospectively. *See* § 355(j)(5)(B)(iv) ("…the application *shall* be made effective not earlier than 180 days after – (I) the date the Secretary receives notice[.]") (emphasis added). Incongruously, this is exactly the approach taken by FDA in creating the "Apotex exception" to pediatric exclusivity. To create its "exception," the FDA evaluated Apotex's ANDA from the vantage point of the day the Federal Circuit decision invalidating the '303 patent issued. *See* FDA Ltr. at 8-9. Here, however, the FDA would not have to create an "exception" to the statute but simply follow the statutory language.[3]

Finally, there is nothing limiting in Congress's specification of "paragraph IV" in the statute. Because the FDA is directed that it "shall" make all paragraph IV ANDAs "effective immediately," 21 U.S.C. § 355(j)(5)(B)(iii), Congress also directed circumstances under which the FDA shall *not* make subsequent paragraph IV applications effective where the first filer is entitled to 180-day exclusivity. It is the immediate approval of paragraph IV filers – those who sought legitimate challenges to listed patents – that was part of the balance struck by Congress when it passed the Hatch-Waxman Act. There is no statutory duty incumbent upon the FDA to

---

[3] The FDA accuses Mylan of "misrepresenting" the FDA's interpretation of its "Apotex exception." FDA Br. at 10-11. But Mylan made no such representation. Mylan relied upon this Court's determination that Apotex's paragraph IV certification survived the patent's expiration. *See* Br. at 4-5 (citing Mem. at 18-19). If Apotex, the second filer, can maintain its certification after the patent's expiration, Mylan's 180-day exclusivity should also survive the patent's expiration.

7

"immediately approve" those applicants who were perfectly content with waiting until September 2007 to market their products.[4]

## IV. THE EQUITIES FAVOR ISSUANCE OF AN INJUNCTION PENDING THE COURT OF APPEALS DECISION

Preliminary injunctive relief is appropriate in light of the real danger that FDA will approve as many as eight other ANDAs while Mylan's appeal on the merits is pending. Should that occur, those approvals would become a *fait accompli* and Mylan would be denied the opportunity to be heard before the *status quo* is altered – a result that would cause Mylan irreparable harm and render the FDA's action effectively unreviewable.

Preliminary injunctive relief is proper to protect a movant from imminent harm when another party threatens to suddenly alter the *status quo* in a manner that would deprive the movant of its rights. *See Barrow v. Graham,* 124 F. Supp. 2d 714, 716 (D.D.C. 2000) ("In the absence of facts that would enable a court fully to assess the merits of the parties' respective positions, a TRO may issue to preserve the *status quo* and to prevent imminent harm until a hearing on the request for a preliminary injunction may be held.").

Neither the FDA nor Teva contests this Court's recognition that the loss of the 180-day exclusivity period constitutes irreparable harm. *Apotex, Inc. v. Food and Drug Administration*, No. 06-0627, 2006 U.S. Dist. LEXIS 20894, at *58 (D.D.C. Apr. 19, 2006) (finding that the first

---

[4] Teva's reliance on the *dicta* in *Dr. Reddy's* does not alter the reality of the FDA's taking of Mylan's exclusivity. *See* Teva Br. at 7-8. Indeed, the scenario, that an ANDA filer can vest its 180-day exclusivity by filing a paragraph IV certification immediately before the patent's expiration, is a red herring as it has no chance of ever occurring in real life. *See* 21 U.S.C. § 355(j)(5)(B)(iii) (setting forth a 30-month stay of FDA approval after litigation is brought by a paragraph IV certification). Of course, if the patent holder does not bring suit in response to a paragraph IV challenge, then that challenge, even if days before the patent's expiration, still satisfied Congress' goal of obtaining earlier generic market entry. In any event, red herring scenarios cannot create a statutory ambiguity and the FDA's "cure" is not entitled to deference.

to file companies "stand to lose a statutory entitlement, which is a harm that has been recognized as sufficiently irreparable[]" and that "[o]nce the statutory entitlement has been lost, it cannot be recaptured" (internal citation omitted)), *aff'd*, 449 F.3d 1249 (D.C. Cir. 2006).  This case and others from this Circuit have held that the loss of 180-day exclusivity rights constitutes irreparable harm, and that it is not necessary for the movant to demonstrate that its very existence would be imperiled absent preliminary injunctive relief.  *See e.g., Mova Pharmaceutical Corp. v. Shalala*, 955 F. Supp. 128, 131 (D.D.C. 1997) ("depriving Mova of a 180-day statutory grant of exclusivity and giving Mylan an officially sanctioned head start in the market for generic micronized glyburide products will cause injury to Mova"), *aff'd*, 140 F.3d 1060, 1067, n.6 (D.C. Cir. 1998) (loss of 180-day exclusivity "suffices to show a severe economic impact…").

Teva tries to argue that this Court's April order constitutes law of the case.  Teva Br. at 10-11.  But this is not "the same issue presented a second time in the same case in the same court," as Teva claims; the irreparable injury that faces Mylan now is considerably greater than it previously was.  Where the April order only addressed the irreparable injury to Mylan if Apotex alone were to enter the market, now eight other generics are poised to flood the market during the pendency of Mylan's appeal.  Mylan's 180-day exclusivity rights will become an utter nullity if the FDA is permitted to begin approving ANDAs for the various companies seeking to enter the amlodipine besylate market.

In considering Mylan's request for injunctive relief, the Court should consider not only the irreparable harm that Mylan will suffer as a result of its loss of 180-day exclusivity rights, but also the balance of harms and the public interest.  The balance of harms favors issuance of a preliminary injunction in Mylan's favor.  Indeed, unlike Mylan, Teva has no vested rights – or any right at all – to enter the amlodipine besylate market.  The earliest date on which Teva could

enter this market will be in late September – once Mylan's 180-day exclusivity period ends. Any harms that Teva would allege as a result of its market exclusion are speculative at best.

Furthermore, the public interest depends upon the faithful compliance of federal agencies with their statutory mandates. *See, e.g.*, *Mylan Pharms. Inc. v. Shalala*, 81 F. Supp. 2d 30, 45 (D.D.C. 2000) ("It is in the public interest for courts to carry out the will of Congress and for an agency to implement properly the statute it administers."). The importance of abiding by statutory requirements and the will of Congress cannot be understated. The FDA – which bears responsibility for the administration of the Hatch-Waxman Act – must ensure that it administers the laws in a manner that supports the Act's underlying incentive structure. If the Court were to accept Teva's invitation not to ignore Mylan's 180-day exclusivity, it would undermine this carefully balanced incentive structure and undercut Congress' stated goal of encouraging the filing of ANDAs and increasing the availability of generic drugs pursuant to the Hatch-Waxman framework.

## CONCLUSION

Mylan respectfully asks this Court enter a temporary restraining order enjoining the FDA from approving any additional ANDAs on amlodipine in derogation of Mylan's right to 180-day exclusivity until Mylan's appeal from the denial of preliminary injunctive relief has been decided.

Dated: June 28, 2007                             Respectfully submitted,


    /s/ David J. Harth
David J. Harth (#474632)
HELLER EHRMAN LLP
One East Main Street, Suite 201
Madison, Wisconsin 53703
(608) 663-7460

Shannon M. Bloodworth (#474925)
HELLER EHRMAN LLP
1717 Rhode Island Avenue, NW
Washington, D.C. 20036
(202) 912-2000

E. Anthony Figg (#345124)
Minaksi Bhatt (#434448)
ROTHWELL, FIGG, ERNST & MANBECK PC
1425 K Street, NW
Suite 800
Washington, DC 20005
(202) 783-6040

Stuart A. Williams
Jill Ondos
MYLAN LABORATORIES INC.
1500 Corporate Drive
Suite 400
Canonsburg, Pennsylvania 15317
(724) 514-1840

Attorneys for Plaintiffs
MYLAN LABORATORIES INC. and
MYLAN PHARMACEUTICALS INC.

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| MYLAN LABORATORIES INC. and<br>MYLAN PHARMACEUTICALS INC., | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| and | )<br>) |
| MUTUAL PHARMACEUTICAL CO., INC., | )<br>) |
| Intervenor-Plaintiff, | )<br>) |
| v. | )<br>) |
| MICHAEL O. LEAVITT,<br>in his official capacity as<br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES, | )<br>)    Civil Action No.  07-cv-579 (RMU)<br>)<br>)<br>) |
| ANDREW C. VON ESCHENBACH, M.D.,<br>in his official capacity as<br>COMMISSIONER OF FOOD AND DRUGS, | )<br>)<br>)<br>) |
| and | )<br>) |
| UNITED STATES FOOD AND DRUG<br>ADMINISTRATION, *et al.*, | )<br>)<br>) |
| Defendants, | )<br>) |
| and | )<br>) |
| TEVA PHARMACEUTICALS USA, INC., | )<br>) |
| and | )<br>) |
| APOTEX INC., | )<br>) |
| Intervenor-Defendants. | ) |

**CERTIFICATE OF SERVICE**

I hereby certify that on the 28th day of June, 2007, Mylan Laboratories Inc. and Mylan Pharmaceuticals Inc.'s **PLAINTIFFS' COMBINED REPLY IN SUPPORT OF ITS EMERGENCY APPLICATION TO TEMPORARILY RESTRAIN THE FDA FROM APPROVING ANY ADDITIONAL AMLODIPINE ANDAS IN DEROGATION OF MYLAN'S RIGHT TO 180-DAY MARKET EXCLUSIVITY** was filed with the Clerk of the Court via the Court's CM/ECF system, which will automatically send electronic mail notification of such filing to the attorneys of record listed below:

Drake S. Cutini
DEPARTMENT OF JUSTICE
Office of Consumer Litigation
950 Pennsylvania Avenue, NW
Washington, DC 20530-001

Jay Lefkowitz
Michael Shumsky
KIRKLAND & ELLIS LLP
655 Fifteenth Street, N.W.
Washington, DC 20005-5793

Arthur Y. Tsien
OLSSON, FRANK AND WEEDA, PC
1400 16th Street, NW
Suite 400
Washington, DC 20036-2220

John Will Ongman
AXINN, VELTROP & HARKRIDER LLP
1801 K Street W, N.W., Suite 411
Washington, DC 20006

Jo-Anne Kokoski
Chad Landmon
AXINN, VELTROP & HARKRIDER, LLP
90 State House Square
Hartford, CT 06103

Robert Briesblatt
WELSH & KATZ, LTD.
120 South Riverside Plaza
Chicago, IL 60606

/s/ David J. Harth
David J. Harth